J. Owen Murrin (SBN 75329)
**Murrin Law Firm**
7040 E. Los Santos Drive
Long Beach, California 90815
Phone: 562-342-3011
Fax: 562-724-7007
**E-mail: jmurrin@murrinlawfirm.com**
Attorneys for PLAINTIFF INVESTORS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLAINTIFFS:<br>GWENDALYN DOUGLASS, as Trustee of RAYMOND E. DOUGLASS REVOCABLE TRUST, and on behalf of RAYMOND E. DOUGLASS, as successor-in-interest, pursuant to CCP §377.11 et. sq.;<br>ED BAEZA, an individual, and their companies GAMAN, LLC and YEYO, LLC;<br>CONCEPCION BAEZA, an individual;<br>BASSIR ANSARY, an individual;<br>PAUL BUGLER, an individual;<br>WALTER BUGLER, an individual;<br>JAMES CIRILE, an individual;<br>NATHAN COLEMAN, an individual;<br>GENE GOLDEN, an individual;<br>JOSEPH GOODALE, an individual;<br>RACHEL GILA, an individual;<br>TRUDY BELINDA JOHNSON, an individual;<br>CHARLES LAWRENCE, an individual;<br>ORSON K. LEONG, an individual;<br>PETER J. LOWE, an individual;<br>BARBARA THORSELL, an individual;<br>MARK THORSELL, an individual; | Case No. 2:23-cv-00460-SB-AGR<br>SECOND AMENDED COMPLAINT<br>1. VIOLATION OF CORPORATE CODE §§ 25401 & 25501<br>2. BREACH OF FIDUCIARY DUTY<br>3. CONVERSION<br>4. NEGLIGENCE/GROSS NEGLIGENCE<br>5. VIOLATION OF CORPORATE CODE § 25503<br>6. VIOLATIONS OF C.C.P. § 1029.8<br>7. FRAUD<br>8. VIOLATION OF CIVIL CODE §3372<br>9. ACCOUNTING<br>10. BREACH OF CONTRACT/RESCISSION<br>11. BREACH OF APPLIED COVENANT OF GOOD FAITH AND FAIR DEALING<br>12. UNFAIR COMPETITION AND VIOLATION OF CODE SECTION 17200 et seq.<br>13. FINANCIAL ELDER ABUSE (Welfare and Institutions Code § 15600 et seq.)<br>14. AIDING AND ABETTING BREACH OF FIDUCIARY DUTY |

1

**SECOND AMENDED COMPLAINT**

CLIFFORD RITZ, an individual;
STEVEN C. ROEMER, an individual;
GREG SCHMITT, an individual;
JOHN STOCKSDALE, an individual;
JENNIFER VANCE, an individual
BRIAN BONACUM, an individual;
GEORGETA MASSON, an individual;
as the surviving spouse and
Successor-in-interest pursuant to CCP
377.11 et seq. on behalf of her husband
Marc Weinstein;
EZEKIEL ORTIZ, an individual
        Plaintiffs,

    v.

RELIANT LIFE SHARES LLC aka
RELIANT CAPITAL, RLS
FINANCIAL SERVICES, INC.;
PRINCIPLE FINANCIAL SERVICES,
INC.;
SEAN MICHAELS;
DANIEL COOPER
SCOTT GRADY;
PAUL ROY;
ANDREW MURPHY;
DAVID UNDERWOOD;
SHAWN DAVENPORT;
LARRY BAGBY;
BRENT BORCHERT;
MARK SANSOUCY;
LARRY TUPLER;
JOEL KLEINFELD;
VINCENT BOVINO;
and DOES 1-10

        Defendants.

15. AIDING AND ABETTING FRAUD AND SECURITIES VIOLATION
16. CONSPIRACY TO COMMIT FRAUD
17. VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT
18. CONSTRUCTIVE FRAUD
19. VIOLATION OF CORPORATE CODE §25504.1
20. VIOLATION OF CORPORATE CODE § 25504
21. VIOLATION OF CORPORATE CODE §25403
22. TO DISREGARD THE CORPORATE (LLC) ENTITY AND IMPOSE PERSONAL LIABILITY ON SHAREHOLDERS AS PARTNERS AND/OR IMPOSE A CONSTRUCTIVE TRUST BECAUSE GRADY AND MICHAELS PILFERED RELIANT FOR PERSONAL USE AND BECAUSE RELIANT AND/OR PFSI/PRINCIPLE BECAME INSTRUMENTS OF FRAUD AGAINST THE INVESTORS
23. REQUEST FOR INJUNCTION AND EQUITABLE AND DECLARATORY RELIEF
24. VIOLATION OF CORP. CODE 25501.5 BY ACTING AS A BROKER-DEALER OR AGENT OR SAME WITHOUT REGISTRATION
25. VIOLATION OF SECTION 12(A)(1) OF THE 1933 SECURITIES

JURY TRIAL REQUESTED

PLAINTIFFS, referred to herein, as Plaintiffs Investors or customers allege the following for themselves but also for others similarly situated, based upon personal knowledge, and upon information and belief as to all other matters, inter alia, the investigation conducted by and through their attorneys, which included among other things, a review of the Defendants' records, public documents, announcements, United States Securities and Exchange Commission (S.E.C.) filings, wires and releases issued by Defendants, and information obtained on the Internet. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth hereinafter after reasonable discovery as follows:

## NATURE OF CASE

1.      Life settlement investments are an investment in a death benefit and/or an interest in a life insurance policy of another person. RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, also believed to be using the name RLS FINANCIAL SERVICES and associated with PRINCIPLE FINANCIAL SERVICES, INC., through various salespersons, BAGBY, SANSOUCY, MURPHY, DAVENPORT, TUPLER, BOVINO, UNDERWOOD, and ROY and others named in the caption of this complaint sold these life settlements to Plaintiff Investors. Reliant describes its business as "brokering fractional shares in life settlement policies to qualified customers."

2.      The only way DEFENDANTS can sell their flawed investment product, the ones that Plaintiff Investors bought, is if DEFENDANTS are deceptive or take advantage of potential investors by concealing the true nature of the investment and not disclosing essential facts about the persons associated with life settlements sold. As will be outlined below, the Plaintiff Investors became the victims of concealment and other deceptive sales practices perpetuated by all named DEFENDANTS* in one way or another, as will be discussed. *KLEINFELD and COOPER will be discussed separately, and are not included in the collective "DEFENDANTS".

3.      The only way Defendants RELIANT and PRINCIPLE FINANCIAL SERVICES, INC. (hereinafter PFSI) could sell their flawed investment products is if

3

**SECOND AMENDED COMPLAINT**

they were deceptive, twisted the truth, or tricked the investors. This consisted of Reliant exaggerating potential gains and underestimating potential risks, including the purposeful obscurement of the estimated reserves for future premiums. In addition, RELIANT and PFSI concealed the background history of each of their entities as well as their owners and operators. They concealed the fact that their sales force consisted only of licensed insurance agents.  They did not disclose that the sales force were unlicensed securities professionals, which securities license was required to sell these fractionalized shares of securities.

4.     Generally, when we use the term "Defendants", we are referring to the selling entities and persons (salespersons). When "Defendants" are referred to collectively, we are not referring to DANIEL COOPER, or JOEL KLEINFELD. It is believed that the Defendants, including SCOTT GRADY, ANDREW MURPHY, BRENT BORCHERT, and at times, SEAN MICHAELS participated in the selling of this life settlement products to Plaintiffs. This includes supervising salespersons, marketing and developing and conducting training for the sales process. Also, the Reliant or PFSI entities were sales organizations committed to selling the Life Settlement Products to Plaintiffs. After investing, Plaintiff Investors were given a Beneficial Interest Certificate (BIC) by RELIANT or PFSI. See Exhibit 200, Page 18, for a sample of Reliant's BIC. However, if the company is PFSI, the BIC would reflect PFSI not RELIANT. It is RELIANT or PFSI that are conveying the beneficial interest, which is the title. As such, the Reliant and PFSI entities, by which this investment passes, are sellers. So to repeat, if the term "Defendants" is used, it refers to RELIANT LIFE SHARES, LLC, or PFSI. It includes SCOTT GRADY, MARK SANSOUCY and SEAN MICHAELS as the supervisors and trainers, and also acting as the controllers of the selling entity and engaging in selling activities themselves.  For example they hired the salesforce, trained them, and produced and placed advertisements, and created the marketing strategy.  PAUL ROY, ANDREW MURPHY, DAVID UNDERWOOD, SHAWN DAVENPORT,  LARRY BAGBY, MARK SANSOUCY, LARRY TUPLER, and VINCENT BOVINO are sued in their

capacity as the salespersons. BRENT BORCHERT is sued as an executive managing officer and a compliance manager of all operations.   Again, DANIEL COOPER and JOEL KLEINFELD are sued in a different capacity.

5.     DANIEL COOPER's liability rests mainly as jointly and severally liable for the acts and transgressions of the co-owners.  Cooper was a co-owner and reaped the financial benefit of being a co-owner.  See the Twentieth and Twenty-Second Second Causes of Action. SEAN MICHAELS and SCOTT GRADY are alleged throughout this Complaint and particularly at the Twenty-Second Cause of Action to have made fraudulent transfers of RELIANT money to their own entities beyond what is allowed. They were found to have "used the corporate coffers of Reliant as their own personal piggy banks." This was done for the sole purpose of enriching themselves in violation of Corporate formalities.

6.     The facts show that the owner and controllers of Reliant and subsequently PFSI were not "minding the store" because they relied upon the perceived impenetrability of the corporate form to protect them from their wrongdoing. In Superior Court of Los Angeles Count, NO. BC604858, in findings by the Honorable Huey P. Cotton (affirmed on appeal known as *Reliant Life Shares, LLC v. Cooper*, No. B305544, 2023 Cal. App. LEXIS 260 (Ct. App. Apr. 4, 2023) entered their third amended Judgment (See Exhibit 203 incorporated herein as though fully set forth hereat) that disregarded the corporate shell that GRADY, MICHAELS and COOPER used to form the RELIANT LIFE SHARE LLC. The judgment exposes brazen activity by GRADY and MICHAELS  justifying  disregarding the RELIANT corporate shell. GRADY and MICHAELS  ignored corporate formalities, comingled money, and transferred assets to themselves or their companies, without consideration.  All this justifies disregarding the corporate form and disallowing the corporate or LLC protection for RELIANT. The ability to pull vast amounts of money out of a company like RELIANT or PFSI emboldens fraudulent activity. GRADY and MICHAELS secretly took money from RELIANT and PFSI which is indicative of their disregard for honesty and disregard for

**SECOND AMENDED COMPLAINT**

full and fair disclosure as required as a seller of security products to the public, the Plaintiffs herein. The investors reasonably relied on the representations and the integrity of GRADY and MICHAELS. Unfortunately, Plaintiff Investors were misled.

7.     The failure of Reliant to disclose the conflict of interests of the operators (GRADY, MICHAELS, COOPER, and KLEINFELD) put stress on the ability of investors to obtain a good product.

8.     When there is reference herein to corporate responsibility or anything to do with a corporation, it is interchangeable with an LLC. In other words, whatever is a corporate matter is also an LLC matter and vice versa.

9.     Reliant operates through its owners. Between 2013 and 2020, (the years that the plaintiff investors invested, See Exhibit B),  the owners are believed to be GRADY, MICHAELS, COOPER, and KLEINFELD. In addition, its managing agents include ANDREW MURPHY, operating as CEO and president, MARK SANSOUCY, operating as president of PFSI, KLEINFELD, operating as an owner, and BRENT BORCHERT, operating as a compliance officer. Defendants COOPER and KLEINFELD are dealt with separately in their own name. It makes sense that any and all of the allegations against RELIANT flow, over to and against PFSI, or both, because RELIANT  and PSFI  work together to share RELIANT staff members, RELIANT forms, RELIANT systems, RELIANT copyrighted and trademarked materials. RELIANT  and PSFI are virtually the same company, or at least PSFI is RELIANT's alter ego. PSFI's liability flows because it does the same things as RELIANT. PSFI is perpetuating the same activity and wrongful conduct as RELIANT. However, PSFI is also sued in its own individual capacity for its own wrongful conduct in agreeing to wrongfully assist RELIANT and continuing to commit the same deceit and wrongful conduct. .

10.     PSFI is sued for its own deceit,  fraud and negligence for selling products to the BAEZA's and their companies,  GAMAN, LLC and YEYO, LLC. The above-mentioned salesmen are liable individually as alleged herein for perpetuating the deceit about this

product and not doing their own due diligence to verify the truthfulness of the company line that they were fostering in their sales presentations.

## PRELIMINARY FACTS

11.     Plaintiff Investors are not the only disgruntled investors. There are many spurned investors raising similar issues, bad reviews and threatened lawsuits.

12.     It is alleged that GRADY used the LLC (RELIANT) and certain trusts and other entities that he and MICHAELS controlled as extensions of himself. The same can be said about  MICHAELS, that other entities and trusts were alter egos of MICHAELS. In *Reliant Life Shares, LLC v. Cooper*, No. BC604858 and B305544 on appeal, the court also found that GRADY and MICHAELS "used the corporate coffers of RELIANT as own personal piggy banks."  And "There was also substantial evidence, indeed admissions, that Michaels and  Grady created shell companies such as PB Consulting LLC (for Michaels) and LaForce Holdings LLC (for Grady) as conduits through which they could funnel money from Reliant to other entities, such as the Friwat policy, for their own benefit. These shell companies were part of the fraud determined by the jury."

13.     Also, it has been alleged or will be alleged that MARK SANSOUCY has become an agent by cooperating in starting a new company PFSI in the image of RELIANT, but with a different name using all the same systems, forms, staff, procedures, and processes, and with the blessing of RELIANT and GRADY.  Therefore Principal/PFSI is also an alter ego of RELIANT. Therefore it will be requested in Cause of Action Twenty-Two and Twenty-Three that PFSI be disregarded as a corporate entity. It is alleged that PFSI was created so that GRADY can move to it after the expected failure of Reliant due to the internal conflict of its owners and the enforcement of a multimillion-dollar judgment by Cooper in 2023 against Reliant, Grady and Michaels. PFSI has abused the corporate privilege for many reasons covered hereinafter, but also because it is being used and was created for fraudulent purposes.  That fraudulent activity  justifies disregarding the corporate form and disallowing the corporate or LLC

**SECOND AMENDED COMPLAINT**

protection. Therefore it will also be requested that the Court, in Cause of Action Twenty-Two and Twenty-Three, declare COOPER and SANSOUCY personally liable along with any other controllers and owners. SANSOUCY is an agent of GRADY and RELIANT and must be enjoined and declared personally liable along with COOPER, MICHAELS, and GRADY under the doctrine set forth in the case of *Minnesota Mining & Manufacturing Co. v. Superior Court* (1988) 206 Cal App 3rd 1025, where all shareholders are deemed joint and severally liable when the corporation is disregarded.

14. DEFENDANTS' violations include selling unregistered securities, which remedy is statutory and allows rescission plus interest.

15. On December 14, 2022, the State of California Business, Consumer Services and Housing Agency of the Department of Financial Protection and Innovation (DFPI) issued Desist and Refrain Order on Reliant Life Shares, LLC from offering or selling any security in California. A full copy of the order is attached as Exhibit 7. Judicial Notice is requested. According to the Department's order, Reliant Life Shares, LLC, "agents made untrue statements of material fact and material omissions to potential investors." According to the Order, some of the untrue statements include "that the risk of a premium call was close to zero or just about nil, that 97% of policies pay out on time, that policy payout periods would range anywhere from a few months to a maximum of five years and that very seldom did Reliant have someone living past the 5-year mark, and that the company was almost always right on life expectancy." The State order went on to quote Reliant Life Shares, LLC, sales' material, which stated "the history of actual maturities for life settlement policies shows that, like a bell curve, approximately half of all policies mature before the estimated life expectancy date, and [the other] half after." This quote is found in a RELIANT brochure, Exhibit 200, Page 9. The department went on to say, "This statement implied to investors that Reliant had the same performance when it did not." Also see Exhibits 16 and 103 for BAEZA and GOODALE's letters to DFPI in 2016 and 2019 respectively that upon information and belief are the letters that initiated the DFPI investigation which resulted in the 2022 Order.

16.     DEFENDANTS characterize their investments as better than mainstream investments or the stock market, as providing double-digit returns, and providing a guaranteed fixed rate of return. This caused Plaintiff Investors to believe there was no risk of loss and guaranteed profit. In fact, DEFENDANTS state that there is "no market risk." DEFENDANTS knew that customers would reasonably assume that to mean no risk. However, there is a substantial risk of loss of principal if the premium reserves are depleted and future premiums not paid.  This is not properly explained prior to Plaintiff investors investing.  Again, DEFENDANTS represented in their sales presentations that "the risk of a premium call was close to zero or just about nil." All these things are falsities. DEFENDANTS knew or should have known that these statements were false but allowed these falsities to be used by the sales force to induce Plaintiff Investors to invest. In fact, Defendants and others, buy back the policies when customers cannot afford the premium payments.  These are called tails. This is a profitable side business of GRADY and MICHAELS and something that is not disclosed to potential investors.

17.     Part of the sales presentation is DEFENDANTS claim that Warren Buffett  and Bill Gates invest in these kinds of investments. Buffett's picture is displayed prominently in the promotional materials. There is a video of Buffett speaking on the RELIANT website. His name is referenced in radio commercials all over the airwaves. This is deception because, first of all, Buffett does not invest in fractionalized life settlements investments like the DEFENDANTS sell, for reasons discussed hereinafter. DEFENDANTS caused Plaintiff Investors to believe otherwise. DEFENDANTS use Warren Buffett and also Bill Gates to bolster their credibility and the companies' credibility wrongfully and illegally. It is alleged upon information and belief that RELIANT has not received permission from Buffett or Gates to use their names and images. The way these high-profile people are used in RELIANT's sales materials is confusing and deceptive. See Exhibit 101, an example of sales material used to induce potential investors. Investors like Gates and Buffett would only invest in huge quantities of policies which is the only way to make these types of investments worthwhile, not the

fractionalized interests that Plaintiff Investors invested in. This fact is also concealed from Plaintiff investors.

18.    Defendants claim that their actuaries have 90% - 98% accuracy in predicting life span. It is believed this is false and deceptive, or not provable or verifiable by DEFENDANTS. See Exhibit 7 and Exhibit 110.

19.    This investment is not a good buy-and-hold investment suitable for retirement or a long-term investment for persons such as Plaintiff Investors who were either in retirement or planning for retirement. If an investor is holding the investment past the reserve period of prepaid premiums, the insured's premiums get more and more expensive as the insured gets older. No reputable company or securities salesperson could recommend an investment that saddles potential investors with this type of future obligation, which if not paid, subjects the potential investor to substantial losses. The premium obligation, in addition to not being accurately disclosed, becomes increasingly burdensome as the insured gets older. Retirees or soon to be retirees living on a fixed income are not suitable for these future, ever increasing premium calls.

20.    Most RELIANT investors are elderly or approaching retirement and are encouraged to use retirement monies to invest in RELIANT products. This results in a loss of liquidity, which is not in a customers' best interest nor is it suitable for retirement. The product RELIANT offers is not suitable to most anyone and certainly not these PLAINTIFFS, most of whom used their retirement money to make these investments either from their 401K (Plaintiffs Charles Lawrence and Bassir Ansary), their SEP IRA (Plaintiff Trudy Belinda Johnson), their ROTH IRA, (Plaintiffs Peter J. Lowe and Brian Bonacum), or their traditional IRA money, (Plaintiffs Gene Golden, Mark Thorsell, Ezequiel Ortiz and Georgeta Masson). Defendants selling or offering to sell these products to these Plaintiffs was below the standard of care for securities salespersons.

21.    There is a reason why Plaintiffs had money in protected IRA/401k programs and that was to ensure their money would be safeguarded and available for retirement. MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, DAVENPORT, and BAGBY,

through the Defendant companies, allowed, encouraged, or approved moving IRA/401k money from safe retirement accounts to IRA custodians that allowed risk. This was a disservice to Plaintiff Investors and negligence, a breach of fiduciary duties and an intent to deceive on the part of DEFENDANTS.

22.     Failure to disclose all material facts, especially the medical records of the insured persons, to a potential securities investor is a securities violation. DEFENDANTS assertion that the insured is entitled to privacy under the guise of HIPAA and privacy rights of the insured, does not justify violating security and other laws that oblige promoters of investments to make full disclosures. Failure to disclose material facts is a securities violation even if an insured is entitled to his privacy, under HIPAA. DEFENDANTS should not sell a security investment if DEFENDANTS cannot abide by security laws. Upon information and belief, when Buffett and Gates invested in these kinds of investments, the insured's name and health information was fully disclosed, and certainly more information was disclosed than what Plaintiff Investors received. If DEFENDANTS choose to sell these kinds of investments, then they must fully disclose, and properly comply with securities laws, which DEFENDANTS did not and do not do. DEFENDANTS prevent the investor from being able to do any independent inquiry of their own about the insured when the insured's health status is the sole basis of the investment. Plaintiff Investors were not given an opportunity to do their own due diligence, to see the premium invoices from the insurance companies, nor were they privy to the medical reports of the insured. All of this information is off limits to the potential investors in the RELIANT program which violates the full disclosure requirements of securities laws.

23.     Plaintiff Investors purchased life settlement investments, or interests in the death benefit of another person. They did not purchase a Viatical investment. Viatical investments came about during the AIDS crises, to help people with AIDS who were insured to sell the cash value of their life insurance policy (which is mainly the death benefit) so that they would have money for medical needs during their dying days (when

death was imminent or within the next year). Insurance agents conduct transactions such as this all the time and they are allowed to sell them as insurance products. That is not what Plaintiff Investors purchased. Instead, DEFENDANTS joined several policies together (and their multiple death benefits) to become a syndication (also referred to as fractionalization by DEFENDANTS). DEFENDANTS then sell "units" of the life settlement investments to various investors. The syndication of these life settlement investments qualifies these investments as a security because they operate like the issuance of stock. Once it is sold to the public, these security investments now have to be registered as a security, or be eligible and qualify for an exemption from registration. They were not exempt and they were not registered. If DEFENDANTS claim that they are exempt, DEFENDANTS forfeited the exemption by doing radio advertisements to the general public.

24.    As discussed, it takes more than an insurance license to sell these securities investments, it requires a state security license or a Securities and Exchange ("SEC") license or registration. DEFENDANTS RELIANT, GRADY, COOPER, MICHAELS, PFSI, and KLEINFELD, none of the other Defendants were licensed to sell securities. They were only licensed to sell insurance, which is not enough or the same.

25.    Another deception perpetrated by DEFENDANTS on their website and elsewhere is that investors can "withdraw their money any time without a penalty." See Reliant Website, Exhibit 1. This has turned out to be false. Plaintiff Investors indicated they would accept the return of principal in lieu of bringing the suit, but Defendants were not able to perform within a reasonable amount of time or commit to a satisfactory agreement to do so. If the statement on the website and elsewhere were true, this suit would have been averted. Months of negotiations happened between July and November 2022, but DEFENDANTS did not return Plaintiff Investors' principal in any timely or suitable basis, indicating the possibility that RELIANT and DEFENDANTS have a liquidity problem due to other pending litigation that was not disclosed to the investors. These liquidity issues were also not disclosed at the time of sale. This is an omission of a

material fact, which is a violation of the law and another area of deception. DEFENDANTS have a history of reneging on such payback promises to other investors, another material fact not properly disclosed.

26.     DEFENDANTS have a questionable reputation which Defendants RELIANT and PFSI do not disclose as required in securities law. DEFENDANTS hire reputational improvement companies to purge bad reviews. Anything deemed negative for sales is scrubbed from the internet by RELIANT through the reputational improvement company. This is designed to and does deprive investors of material information which a reasonable investor needs to know in order to make an informed decision on whether to invest. DEFENDANTS also manipulate or intimidate investors to change their mind about writing negative reviews. This is contrary to what is required when selling a security, salespersons must provide full balanced disclosure so the investors have access to all the facts. This is an anathema to what should be allowed and is an indicator of a purposeful intent by RELIANT/ PFSI and its associated persons and entities to deceive and manipulate the public about this investment by DEFENDANTS improperly controlling the information available to potential investors. Therefore, information available to Plaintiff Investors prior to investing was mischaracterized and not fully disclosed. DEFENDANTS did this on purpose and prevented Plaintiff Investors from receiving full and fair disclosure.

27.     The elephant in the room is that Plaintiff Investors do not have adequate assurances that the insurance policies are what DEFENDANTS represented them to be, or that the policies actually exist as noted and/or fully paid up, or that the premium reserves and invoices have not been manipulated by DEFENDANTS and the premiums are reasonable or legitimate. When additional premiums become due, Plaintiff Investors are entitled to additional full disclosure of material facts, but DEFENDANTS, mainly GRADY and SANSOUCY have not been responsive to Plaintiff Investors' emails, letters, or phone calls. DEFENDANTS are not forthcoming to Plaintiff Investors and/or are unable to give satisfactory answers about vital facts surrounding the investment.

RELIANT/ PFSI service to investors post investment is either incompetent or negligent. DEFENDANTS, mainly GRADY and SANSOUCY are either evasive or nonresponsive to Plaintiff Investors inquiries. GRADY and SANSOUCY acted as point people in failing to attend to these things. It is alleged upon information, as the alternative, that the non-responsiveness is purposeful because DEFENDANTS benefit if investors do not pay premiums and forfeit the investment.

28.    In fact, 18LS Holdings, LLC, an entity owned by Grady, and others was found by a Court of Law to hold the forfeited and unsold portions (the 'Tails') of life insurance policies sold by Reliant. Grady did not pay anything for the tails he received and 18LS Holdings, LLC paid $1,000 for the entirety of Tails it received." The tails were valued at $880,225.98.  *Reliant Life Shares v. Cooper* 2023 Cal. App. Lexis 260

29.    All of these Plaintiff Investors thought they were dealing with RELIANT. RELIANT is referred to throughout this complaint, but RELIANT can refer to any entity herein, including Reliant Life Shares, LLC aka Reliant Capital, RLS Financial Services, Inc., PFSI. The above-named companies all operate in the same fashion, use the same sales materials and marketing strategies, and interchanges staff amongst them. Throughout the Complaint, when RELIANT is used, and not otherwise qualified, it refers to Reliant Life Shares, LLC aka Reliant Capital, RLS Financial Services, Inc., and PFSI, DOES 1-10, and any other company it uses or used to conduct business as alleged herein, which generally constitutes the same program in which all these Plaintiff Investors became investors as set forth herein.

30.    When referring to officers, controllers, or operators of the defendant companies listed above, Plaintiff Investors are referring to GRADY, BORCHERT, SANSOUCY, KLEINFIELD, MURPHY, MICHAELS, and DOES 1-10 (upon information and belief). The salesmen who sold one or more policies are ROY, UNDERWOOD, DAVENPORT, BAGBY, BORCHERT, TUPLER, MURPHY, BOVINO, and Does 1-10. These people are collectively referred to as "salesmen" or "salespeople."

31.     DEFENDANTS, who were the operators or owners of Reliant and/or PFSI listed above, had a fiduciary duty to observe corporate formalities and to be sufficiently capitalized to carry out basic functions and to perform on their promises to investors. For example, each Plaintiff was promised that they would be provided top quality services by Reliant or PFSI. The promises were made continually and at each sales session between Plaintiffs and Reliant's or PFSI's representatives orally and in writing as further exemplified in Exhibit 200 incorporated by reference as fully set forth hereat, and which reads in relevant part as follows:

> "Reliant Life Shares places the client first [including providing] complete asset transparency for informed investment decisions.
>
> Reliant Life Shares focuses on providing top-quality service for investors. Reliant provides ongoing reports that include account details and transactions, relevant policy information, health status updates, policy premium status updates and comprehensive portfolio summaries."

32.     Unfortunately, due to mainly GRADY and MICHAELS using Reliant and its successor corporate entities as their own personal entities, they stopped following the necessary corporate formalities and used Reliant as a fraudulent operation tantamount to a scam. This has resulted in defendants Reliant and PFSI being gutted of enough money to provide top quality services and ongoing support as promised above. The gutting and disregard of the corporate formalities were committed initially by Grady and Michaels as documented by Superior Court of Los Angeles Count, NO. BC604858, in findings by Huey P. Cotton (affirmed on appeal known as *Reliant Life Shares, LLC v. Cooper*, No. B305544, 2023 Cal. App. LEXIS 260 (Ct. App. Apr. 4, 2023), which rulings supported on appeal are binding on Defendants (or capable of being proved at trial anew if necessary). The facts as adopted by the lower court taken from the appeal above cited are that:

> a.   …Michaels utilized Reliant and his entities PB Consulting [1], LLC, PB Consulting 2, LLC, the 2007 Irrevocable Octopus Trust, the 2007 MMA Trust, the RLM Trust, and 18LS [Holdings], LLC (the 'Michaels Entities')

as an extension of himself by disregarding corporate formalities, comingling money, and transferring assets without consideration, so much so that Reliant and the Michaels Entities are alter egos of Michaels.

b. … Grady utilized Reliant and his entities LaForce Holdings, LLC, Tristan Capital, Inc., the RLS Trust, and the SLG Trust (the 'Grady Entities') as an extension of himself, by disregarding corporate formalities, comingling money, and transferring assets without consideration; so much so that Reliant and the Grady Entities are alter egos of Grady.

c. They both did this by "Michaels [and Grady] exert[ing] such a unity of ownership over Reliant by dictating when payments would be made and how they would be classified without any methodology for doing so, such that there was essentially no separation between Michaels [Grady] and Reliant. Michaels [Grady] also made decisions regarding Reliant without input from Cooper, despite the fact that Cooper was and is a one-third member of Reliant. Payments to Michaels [and Grady] were casually made without the use of a payroll company. Further, Michaels [and Grady] artificially manipulated Reliant's books and records by (among other things) reclassifying historical data to negatively impact the perceived profitability of Reliant, to the detriment of Cooper. Additionally, Michaels [and Grady] authorized transfers from Reliant to [themselves and their Entities] without regard for whether Reliant was properly capitalized to conduct business on an ongoing basis."

d. ….Money from Reliant was used to invest in and pay the premiums on the Friwat Policy." The court further found that 18LS Holdings, "an entity owned by Michaels, Grady, and Luke Walker, own[ed] forfeited and unsold portions (the 'Tails') of life insurance policies sold by Reliant"; and 18LS Holdings LLC "paid $1,000 for the entirety of Tails it received."  Tails in 18LS Holding LLC were valued at $880,225.98.

**SECOND AMENDED COMPLAINT**

33.    The following is taken directly from the above-mentioned appeal, *Reliant Life Shares, LLC v. Cooper*, No. B305544, 2023 Cal. App. LEXIS 260, at *3 (Ct. App. Apr. 4, 2023):

> The trial court further found Michaels and Grady used the LLC (Reliant) and certain trusts and other entities they controlled as extensions of themselves, and concluded the LLC (Reliant) and the other entities and trusts were alter egos of Michaels and Grady. (The court later observed Michaels and Grady "used the corporate coffers of Reliant as their own personal piggy banks.")

> In addition, the above court affirmed the trial court saying:

> The jury heard evidence of millions of dollars Michaels and Grady funneled from Reliant to themselves and the entities they owned; evidence of Grady's extravagant lifestyle, with purchases of luxury cars, expensive jewelry, renting a mansion for $20,000 a month, and the like; evidence of Reliant's multimillion dollar net income for 2017 and 2018; and evidence of Michaels "withholding of essential accounting records of Reliant to reduce any chance of determining Michaels' total income and liabilities."

34.    Kleinfeld used his ownership in Reliant (which he shared with Grady) to buttress Grady's irresponsible conduct. Kleinfeld facilitated  or allowed Grady and Michaels to use  Reliant as a "personal piggy bank" and to allow Grady to continue to "disregard the corporate formalities." Kleinfeld facilitated their irresponsible use of corporate assets in a way described above by the appellate Court.

35.    It is alleged that the same factors that went into causing Grady, Kleinfeld and Michaels to engage in the above conduct was the same motivation behind the formation of PFSI, which itself it is alleged (upon information and belief) is owned and controlled by Grady, Michaels and or now Sansoucy.  PFSI is just an extension of RELIANT under a different name using the same RELIANT copyrighted and trademarked system, the same staff, forms, and modus operandi and with Reliant's consent. Even standing alone PFSI is liable for its conduct as a stand-alone entity to the extent it carried out a sale to the BAEZA's and their companies GAMAN and YEYO LLCs.  PFSI was created to do new business out of a new entity in case Grady lost the above-mentioned case and or to provide continuity in another entity because of inside strife among the owners.

**SECOND AMENDED COMPLAINT**

36.    Under the circumstances Grady and Michaels caused Reliant to be unable to operate properly, and not be able to complete its function of providing top quality services, transparency, and updated information. It became more concerned about generating personal wealth for themselves that minding the store and keeping its commitments and the promises made to the investors for long-term top-quality services, transparency and assist in the payment of proceeds at the end of the investment.  In addition this caused Reliant to divert the better policies for itself and its owners like the $10 million Friwat policy rather than use said policy for the syndication for the benefit of the general investors, like plaintiffs who relied upon Reliant to do what they claimed they would do.   The good policies like the Friwat were kept for the insiders and it, in fact, returned $5,428,666.65 to Michaels alone upon Friwat's death. That policy was funded with Reliant money for the owners' benefit, namely for Grady and Michaels and their companies.  They created companies to transfer Reliant assets to themselves secretly. Again, rank and file investors like Plaintiffs were only offered the less desirable policies.  In effect there was and is in effect a conflict of interest between the owners of Reliant and now its successors, and Plaintiffs or any investor, because the best policies were siphoned off and become a perk for the owners, namely Grady, Michaels, Kleinfeld, and Sansoucy. None of this is disclosed or was disclosed to the investors and is a violation of securities law and the duty to fully disclose all material facts.

37.    Defendants wrongfully took corporate money that was needed, and is still needed, to fulfill the promises that Reliant made to provide the necessary services when the insured died, in order to help the Plaintiffs obtain their money. In fact, Reliant's salespersons and its literature made oral promises during sales presentations and in its materials. For example, in Reliant's materials, it specifically states, "At maturity, Reliant Life Shares works with the trustee to file a formal death claim with the insurance carrier." If Grady and Michaels squandered the operations of Reliant, as they appear to have done, they will not be able to provide top-quality services or work with the trustee

to file a formal death claim with the insurance carrier, thus preventing the Plaintiffs from obtaining their money.

38.     Plaintiffs bought into Reliant's program and invested in their set of life shares based on oral and written email representations made by each salesman, assuring them that a purchase in Reliant's or PFSI life settlement product would be safe and prudent. Andrew Murphy, signing as CEO, even stated to investors in a general newsletter dated January 1, 2022 (Exhibit 202), that each of them "could sleep at night knowing your money is working for you and protected against market risks." However, this has been the opposite for Plaintiffs, despite consistent assurances made to them and other investors. Plaintiffs were also told during all sales presentations that Reliant had invested the necessary capital to acquire the inventory, and offered Qualified Investors an excellent product that passed a "rigorous" underwriting process. This information is paraphrased from Exhibit 200, pages 3, 6, and 7. During oral presentations, each Plaintiff was also told that the Principals of Reliant had extensive or broad experience, as stated in a Reliant Brochure at Exhibit 200, page 12. Plaintiffs were led to believe that this experience would translate into products that would deliver the promised returns, which returns were all above 8% according to Exhibit 199, with some implying returns as high as 18% based on page 1 of Exhibit 200. Exhibit 200, page 8, also shows almost 10 examples with none lower than a 10% return. None of the Plaintiffs expected losses or having to endure ever-rising premiums to arise from this investment. They were not properly prepared for the sacrifices required to pay ever-increasing and often randomly assessed premiums on the policies, especially considering that many of the Plaintiffs live on lower or fixed retirement incomes.

39.     Grady, Michaels, Kleinfeld, and Sansoucy knew that they were the owners or operators of an organization that was being mismanaged and used for personal greed, to the detriment of investors, and outside of any legal corporate formality. In fact, as a result of the *Reliant Life Shares, LLC v. Cooper*, affirmation on appeal against Reliant, Grady, Michaels, and others, there is a possibility that Reliant will not be able to deliver

what was promised and may not even be operational to provide top-quality services or assist in making claims for insurance proceeds upon death, as it now faces a multi-million-dollar judgment. All the personal misconduct highlighted by the court of appeals above was also not disclosed,  despite it being necessary information for investors to know that might affect their investment.  It also appears that it has been affecting this investment for a long time. All Plaintiffs have the same story - trying to contact Reliant, but no one answers or responds, and if an investor happens to corner someone, their questions remain unanswered. This lack of top-quality service is one of the main reasons why Plaintiffs want out. They have no confidence that there will be a payout for them based on the poor service provided to date, and this has happened because Grady and Michaels have deprived the firm of resources to perform their job. All the above-mentioned transgressions and misuse of corporate assets, as described above, have put Plaintiffs' investments in jeopardy, as it is likely that Reliant will not be able to fulfill the promised functions.

40.    It is alleged, upon information and belief, that PFSI is the successor of Reliant. Its ownership includes Grady, Michaels, Kleinfeld, and Sansoucy.  Even if not on paper, it is an under the table, unwritten arrangement between themselves.

41.    These are all breaches of breach of fiduciary duties, a violation of securities laws, and violation of Reliant and its successor's promises that they were transparent.

42.    The above is also indicative of a unity of interest and ownership between Grady, Michaels, Kleinfeld, Sansoucy, Reliant, and its successors on the other hand. The corporate entities should be pierced and the individuals found liable as partners as required by the leading cases including *Minnesota Mining & Manufacturing Co. v. Superior Court, supra*. Where the alter ego doctrine applies a corporation's shareholders are treated as "partners" and are jointly and severally liable for his debts, that means even Cooper who was being ignored by Michaels and Grady. Id. Even being ignored he remained a member and is therefore joint and severally liable with Michaels, Grady,

**SECOND AMENDED COMPLAINT**

Kleinfeld, and Sansoucy, or whoever was in fact a LLC member of Reliant at any time during this endeavor.

43.    It would be unfair not to hold all the above individuals liable under the doctrine of alter ego for the acts of Reliant and PFSI for the reasons described above.

44.    RELIANT/ PFSI and its enterprise used untrained and unqualified (or not adequately trained or supervised) salespeople who do not understand the product, did not understand securities law or the obligation to provide balanced information, and did not adequately endeavor to know one's customer before selling these RELIANT/ PFSI products. The RELIANT/ PFSI salespeople are bound by the obligation to conduct business with high standards of commercial honor and just and equitable principles of trade, and bound by securities rules and regulations set by the SEC and the Insurance Commissioner. Instead, this was a renegade sales operation that violated securities laws when selling these securities to Plaintiff Investors. If this sales force was legitimately and properly trained and registered, these sales would not and could not be made. None of this was explained to Plaintiff Investors. This constitutes unfair competition on the part of RELIANT.

45.    Plaintiff Investors sent via certified mail to key DEFENDANTS giving them the required 30 days to correct, repair or rescind, and or do any of the things allowed or required by California Civil Code §1770 et seq. DEFENDANTS have not done anything. A copy of this letter is attached hereto as Exhibit 121 and is incorporated by reference as though fully set forth hereat. DEFENDANTS still have the chance to make good as Plaintiff Investors will give any DEFENDANT served herewith 30 days from the date this complaint is served upon them to comply with California Civil Code §1770 et seq. Assuming this is not done, Plaintiff Investors, therefore, are entitled to the damages and remedies set forth in California Civil Code §1780 and related sections against all DEFENDANTS.

## **PARTIES**

**SECOND AMENDED COMPLAINT**

46.     At all times herein, PLAINTIFF GWENDALYN DOUGLASS is the daughter of RAYMOND E. DOUGLASS and Trustee of RAYMOND E. DOUGLASS REVOCABLE TRUST (now an irrevocable trust). She is also the executor of Mr. Douglass' estate. GWENDALYN DOUGLASS sues both as trustee and as successor in interest pursuant to CCP §377.11. A copy of her Declaration and RAYMOND E. DOUGLASS' Death Certificate are attached hereto. When the term "Plaintiffs" or "Plaintiff Investors" is utilized, it includes RAYMOND E. DOUGLASS as the purchaser, his actions, or doings even though his daughter technically is the actual Plaintiff, as the successor in interest now that RAYMOND E. DOUGLASS has passed away.

47.     At all times herein, PLAINTIFF INVESTOR ED BAEZA (hereinafter referred to as "INVESTOR ED BAEZA") was and is a resident of the City of Los Angeles, County of Los Angeles, State of California.

48.     At all times herein, PLAINTIFF INVESTOR GAMAN LLC (hereinafter referred to as "INVESTOR GAMAN LLC") is a company operating pursuant to the laws of the State of California doing business in Los Angeles, County of Los Angeles, State of California.

49.     At all times herein, PLAINTIFF INVESTOR YEYO LLC (hereinafter referred to as "INVESTOR YEYO LLC") is a company operating pursuant to the laws of the State of California doing business in Los Angeles, County of Los Angeles, State of California.

50.     At all times herein, PLAINTIFF INVESTOR CONCEPCION BAEZA (hereinafter referred to as "INVESTOR CONCEPCION BAEZA") was and is a resident of the City of Los Angeles, County of Los Angeles, State of California.

51.     At all times herein, PLAINTIFF INVESTOR BASSIR ANSARY (hereinafter referred to as "INVESTOR BASSIR ANSARY") was a resident of Union City, County of Alameda, State of California at the time of sale. Currently BASSIR ANSARY is a resident of the City of Fairfax, County of Fairfax, State of Virginia.

52.     At all times herein, PLAINTIFF INVESTOR PAUL BUGLER (hereinafter referred to as "INVESTOR PAUL BUGLER") was and is a resident of the City of South San Francisco, County of San Mateo, State of California.

53.     At all times herein, PLAINTIFF INVESTOR WALTER BUGLER (hereinafter referred to as "INVESTOR WALTER BUGLER") was and is a resident of the City of South San Francisco, County of San Mateo, State of California.

54.     At all times herein, PLAINTIFF INVESTOR JAMES CIRILE (hereinafter referred to as "INVESTOR JAMES CIRILE") was and is a resident of the City of Los Angeles, County of Los Angeles, State of California.

55.     At all times herein, PLAINTIFF INVESTOR NATHAN COLEMAN (hereinafter referred to as "INVESTOR NATHAN COLEMAN") was and is a resident of the City of Murrieta, County of Riverside, State of California.

56.     At all times herein, PLAINTIFF INVESTOR GENE GOLDEN (hereinafter referred to as "INVESTOR GENE GOLDEN") was and is a resident of the City of Winnetka, County of Los Angeles, State of California.

57.     At all times herein, PLAINTIFF INVESTOR JOSEPH GOODALE and RACHEL GILA (hereinafter referred to as "INVESTOR JOSEPH GOODALE and RACHEL GILA") were and are residents of the City of Rohnert Park, County of Sonoma, State of California.

58.     At all times herein, PLAINTIFF INVESTOR TRUDY BELINDA JOHNSON (hereinafter referred to as "INVESTOR TRUDY BELINDA JOHNSON") was and is a resident of the City of Carson, County of Los Angeles, State of California.

59.     At all times herein, PLAINTIFF INVESTOR CHARLES LAWRENCE (hereinafter referred to as "INVESTOR CHARLES LAWRENCE") was a resident of the City of San Pedro, County of Los Angeles, State of California. He currently lives in Orange County.

**SECOND AMENDED COMPLAINT**

60.     At all times herein, PLAINTIFF INVESTOR ORSON K. LEONG (hereinafter referred to as "INVESTOR ORSON K. LEONG") was and is a resident of the City of Pleasanton, County of Alameda, State of California.

61.     At all times herein, PLAINTIFF INVESTOR PETER J. LOWE (hereinafter referred to as "INVESTOR PETER J. LOWE") was and is a resident of the Union City, County of Alameda, State of California.

62.     At all times herein, PLAINTIFF INVESTOR MARK THORSELL and BARBARA THORSELL (hereinafter referred to as "INVESTOR MARK THORSELL and BARBARA THORSELL") were and are residents of the City of Sacramento, County of Sacramento, State of California. They currently live in Arizona.

63.     At all times herein, PLAINTIFF INVESTOR CLIFFORD RITZ (hereinafter referred to as "INVESTOR CLIFFORD RITZ") was and is a resident of the City of Richmond, County of Contra Costa, State of California.

64.     At all times herein, PLAINTIFF INVESTOR STEVEN C. ROEMER (hereinafter referred to as "INVESTOR STEVEN C. ROEMER") was and is a resident of the City of San Anselmo, County of Marin, State of California.

65.     At all times herein, PLAINTIFF INVESTOR GREGORY SCHMITT (hereinafter referred to as "INVESTOR GREGORY SCHMITT") was and is a resident of the City of San Rafael, County of Marin, State of California.

66.     At all times herein, PLAINTIFF INVESTOR JOHN STOCKSDALE (hereinafter referred to as "INVESTOR JOHN STOCKSDALE") was and is a resident of the City of Santa Rosa, County of Sonoma, State of California.

67.     At all times herein, PLAINTIFF INVESTOR JENNIFER VANCE (hereinafter referred to as "INVESTOR JENNIFER VANCE") was and is a resident of the City of Corte Madera, County of Marin, State of California.

68.     At all times herein, PLAINTIFF BRIAN BONACUM (hereinafter referred to as "INVESTOR BRIAN BONACUM") was and is a resident of the City of Hesperia, County of San Bernardino, State of California.

**SECOND AMENDED COMPLAINT**

69.    At all times herein, PLAINTIFF GEORGETA MASSON is the surviving spouse and successor in interest for Marc Weinstein, decedent, pursuant to Civil Code Section 377.11. et seq. (hereinafter referred to as "INVESTOR Marc Weinstein/ PLAINTIFF GEORGETA MASSON") See attached declaration. Marc Weinstein was a resident of the Lafayette, County of Contra Costa, State of California at the time of sale. (hereinafter referred to as "PLAINTIFF GEORGETA MASSON")

70.    At all times herein, PLAINTIFF INVESTOR EZEQUIEL ORTIZ (hereinafter referred to as "INVESTOR EZEQUIEL ORTIZ") was a resident of the Santa Rosa, County of Sonoma, State of California at the time of sale. Currently EZEQUIEL ORTIZ is a resident of the City of Emmet, County of Gem, State of Idaho.

71.    At all times herein, Defendant RELIANT LIFE SHARES LLC (herein referred to as "RELIANT") was a limited liability corporation operating pursuant to the laws of the State of California. Reliant Capital is a trade name or term RELIANT uses to market itself. It is not associated with the collection company.

72.    RLS FINANCIAL SERVICES, INC. is interrelated with RELIANT unless called by its name of "RLS." It is referred to as Reliant because it masquerades as Reliant. Reliant and/or RLS marketed life shares like the ones purchased herein together. It is alleged that RLS is the alter ego of RELIANT and behind the scenes ratifying or covering up the bad outcomes for investors. This entity is also referred to as a RELIANT associated company. When RELIANT is referred to hereinafter generally, it includes RLS FINANCIAL SERVICES, INC. unless otherwise noted.

73.    At all times herein, Defendant PRINCIPLE FINANCIAL SERVICES, INC.; (hereinafter referred to as "PFSI") was a corporation operating pursuant to the laws of the State of California. It is believed to be operating through or with Reliant and posing itself as Reliant. When RELIANT is referenced, it also refers to PFSI unless otherwise noted.

74.    At all times herein, Defendant SCOTT GRADY (hereinafter GRADY) was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent and

**SECOND AMENDED COMPLAINT**

controller of RELIANT or with/under JOEL KLEINFELD (hereinafter KLEINFELD) or his company, and/or together they controlled the investments described herein. He used RELIANT as his personal bank account and receptacle for personal matters. He is an alter ego of RELIANT. He is referred to as the president. In the alternative, GRADY is the decision-maker and chief salesperson, also referred to as the "President of Reliant Life Shares" when it comes to developing life settlement products which are the subject matter of this complaint. He controlled some of the events herein. GRADY has ratified or maintained all the wrongful conduct set forth in this Complaint. Although he was a seller of these products, he is not licensed to sell Life Settlement and his involvement to do so is believed illegal. He is also an owner of RELIANT with SEAN MICHAELS, DANIEL COOPER, and JOEL KLEINFELD, and believed to be a partner with MARK SANSOUCY and SEAN MICHAELS in PFSI. More about him below.

75.     At all times herein, Defendant SEAN MICHAELS was a high-level owner of RELIANT. He used RELIANT as his personal bank account and receptacle for personal matters. He is an alter ego of RELIANT.

76.     At all times herein, Defendant DANIEL COOPER was an owner of RELIANT. Although he may not have participated in any act, if the corporate veil is disregarded or pierced as alleged that it should, then all shareholders are treated as partners and they are jointly and severally liable. Therefore, COOPER is alleged as such and liable in this complaint.

77.     At all times herein, Defendant PAUL ROY, (hereinafter ROY) was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or KLEINFELD or his company above mentioned. ROY controlled some of the events herein. ROY was a decision-maker and assisted in selling these life settlements which is the subject matter of this complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set forth in this complaint.

**SECOND AMENDED COMPLAINT**

78.     At all times herein, Defendant ANDREW MURPHY (hereinafter MURPHY) was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent and controller of RELIANT or under KLEINFELD or his company, or together they controlled the investments described herein. In the alternative, MURPHY is the decision-maker and chief salesperson also referred to as the "Chief Executive Officer of Reliant Life Shares." MURPHY controlled some of the events herein. MURPHY has ratified or maintained all the wrongful conduct set forth in this Complaint. Although he was a seller of these products, he is not licensed to sell Life Settlement and his involvement to do so is believed illegal.

79.     At all times herein, Defendant DAVID UNDERWOOD (hereinafter UNDERWOOD) was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or KLEINFELD or his company above mentioned. UNDERWOOD controlled some of the events herein. He was a decision-maker and assisted in selling these life settlements which is the subject matter of this complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set forth in this complaint.

80.     At all times herein, Defendant SHAWN DAVENPORT (hereinafter DAVENPORT) was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or KLEINFELD or his company above mentioned. He controlled some of the events herein. He was a decision-maker and assisted in selling these life settlements which is the subject matter of this complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set forth in this complaint.

81.     At all times herein, Defendant LARRY BAGBY (hereinafter BAGBY) was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or KLEINFELD or his company above mentioned. BAGBY controlled some of the events herein. He was a decision-maker and assisted in selling these life settlements which is the subject matter

of this complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set forth in this complaint.

82.     At all times herein, Defendant BRENT BORCHERT (hereinafter BORCHERT) acted as a high-level employee/agent/manager and associate of RELIANT and/or KLEINFELD or his company above mentioned. BORCHERT controlled some of the events herein or acted as a compliance officer and chief executive officer. He was a decision-maker and assisted in selling these life settlements which is the subject matter of this complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set forth in this complaint. More about him below.

83.     At all times herein, Defendant MARK SANSOUCY (hereinafter SANSOUCY) acted as a high-level employee/agent/manager and associate of RELIANT, KLEINFELD, and/or GRADY or his company above mentioned. SANSOUCY controlled some of the events herein. He was a decision-maker and assisted in selling these life settlements which is the subject matter of this complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set forth in this complaint. SANSOUCY is also an owner in PFSI and cooperated with GRADY and others to continue RELIANT's business under PFSI. More about him below.

84.     At all times herein, Defendant LARRY TUPLER (hereinafter TUPLER) was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or KLEINFELD or his company above mentioned. TUPLER controlled some of the events herein. He was a decision-maker and assisted in selling these life settlements which is the subject matter of this complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set forth in this complaint.

85.     At all times herein, Defendant JOEL KLEINFELD (hereinafter KLEINFELD) has been and is the owner, operator, and controller of the enterprise known as RELIANT and either individually or through his company Doe 1 controlled or manipulated the outcomes affecting the investments contained and referenced in this complaint. He or his

**SECOND AMENDED COMPLAINT**

company are alleged to be a Reliant associated company and operator and controller of RELIANT, RELIANT associated companies, and Defendants herein when it comes to these life share investments. Although he may not have participated in any act, if the corporate veil is disregarded or pierced as alleged that it should, then all shareholders are treated as partners and they are jointly and severally liable. Therefore, KLEINFELD is alleged as such and liable in this complaint. More about KLEINFELD below.

86.    At all times herein, Defendant VINCENT BOVINO (hereinafter BOVINO) was a salesperson to one or more Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or KLEINFELD or his company above mentioned. BOVINO controlled some of the events herein. He was a decision-maker and assisted in selling these life settlements which is the subject matter of this complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set forth in this complaint.

87.    Doe 1 is KLEINFELD 's company used to manipulate, and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint. It is alleged upon information and belief that he is or was during relevant times the founder, operator, and controller of RELIANT or Reliant associated companies and Defendants herein when it comes to these life share investments. Kleinfeld's ownership interest was held on behalf of GRADY.

88.    Plaintiffs Investors are unaware of the true names and capacities of DOE Defendants sued herein as DOES 1-10, and therefore sue those Defendants by such fictitious names. Plaintiffs Investors will seek leave to amend this Complaint to alleges their true and accurate names and capacities when ascertained. Plaintiffs Investors are informed and believe, and upon such information and belief, alleges that each of the fictitiously named Defendants are responsible for the acts and/or omissions herein alleged, and that Plaintiffs Investors' injuries and damages as herein alleged were proximately caused by the acts and/or omissions of such fictitiously named Defendants.

**JURISDICTION**

89.     DEFENDANTS reside or do business in California, so California is the proper forum. Los Angeles County, California is where the most sales and transactions took place, and where the chief DEFENDANTS congregate, live, work and are headquartered.

## **ALTER EGO, AGENCY, AND SUCCESSOR IN INTEREST**

90.     Plaintiffs are informed and believe, and thereon allege that there exists such a unity of interest and ownership between DEFENDANTS and DOES 1-10, that the individuality and separateness of DEFENDANTS have ceased to exist.

91.     Plaintiffs are informed and believe, and thereon allege that the DEFENDANTS and/or DOES 1-10 conspired to break the laws alleged herein. This is part of a joint activity, joint endeavor, joint enterprise, and/or joint adventure, carried out by all DEFENDANTS and DOES 1-10.

92.     Plaintiffs are informed and believe, and based thereon allege that despite the formation of purported corporate existence, DEFENDANTS and/or DOES 1-10 are in reality, one and the same Defendant, because of, but not limited to, the following reasons:

a. DEFENDANTS are completely dominated and controlled by one another and DOES 1-10, who personally committed the frauds and violated the laws as set forth in this complaint, and who have hidden and currently hide behind DEFENDANTS to perpetrate frauds, circumvent statutes, or accomplish some other wrongful or inequitable purpose.

b. DEFENDANTS and DOES 1-10, derive actual and significant monetary benefits by and through one another's unlawful conduct, and by using one another as the funding source for their own personal expenditures.

c. DEFENDANTS and DOES 1-10, while really one and the same, were segregated to appear as though separate and distinct for purposes of perpetrating a fraud, circumventing a statute, or accomplishing some other wrongful or inequitable purpose.

d. DEFENDANTS do not comply with all requisite corporate formalities to maintain a legal and separate corporate existence.

e.  The business affairs of DEFENDANTS and DOES 1-10 are, and at all times relevant were, so mixed and intermingled that the same cannot reasonably be segregated, and the same are in inextricable confusion. DEFENDANTS are, and at all times relevant hereto were, used by DEFENDANTS, one and another, and DOES 1-10 as a mere shell and conduit for the conduct of certain of DEFENDANTS' affairs, and are, and were, the alter ego of DEFENDANTS, one and another and DOES 1-10. The recognition of the separate existence of DEFENDANTS would not promote justice, in that it would permit DEFENDANTS to insulate themselves from liability to PLAINTIFFS for violations of the Labor and Government Codes and other statutory regulations. The corporate existence of any Corporate DEFENDANTS and DOES 1-10 should be disregarded in equity and for the ends of justice because such disregard is necessary to avoid fraud and injustice to PLAINTIFFS herein.

93.  Accordingly, DEFENDANTS constitute the alter ego of other DEFENDANTS, one and another, DOES 1-10, and the fiction of their separate corporate existence must be disregarded.

94.  As a result of the aforementioned facts, Plaintiffs are informed and believe, and based thereon alleges, that DEFENDANTS and DOES 1-10 are joint employers by virtue of a joint enterprise, and that DEFENDANTS are employees of other DEFENDANTS and DOES 1-10. DEFENDANTS performed services for each other to the mutual benefit of all DEFENDANTS who shared control, either directly or indirectly, of the manner in which DEFENDANTS' business was and is conducted.

## **GENERAL ALLEGATIONS**

95.  Below will be a discussion of each Defendants' involvement in the investment. It is alleged that the communications, including emails, cited in this complaint were representative of emails or communications to all the Plaintiffs as far as the basic information is concerned. That saves substantial redundancies. In short, the communication sent to one Plaintiff is alleged to have been sent to all Plaintiff investors, since many of the salespersons used the same exact language in their emails to different

investors.  Roy, Tupler and Underwood's emails to many of the investors appear to be a copy and paste of each other's.

96.     Upon information and belief, RELIANT (including PFSI) is a conduit for getting rid of the least desirable life settlement investments in the business. DEFENDANTS take these "left over" life settlement investments, fractionalize and syndicate them. Upon information and belief, when there is a  high-quality potential policy,  they don't syndicate it. They keep it for themselves, which creates a conflict of interest between them and the investors. This leaves the investors with the least desirable policies.  This was not disclosed. The syndication and fractionalization creates a higher investment load compared to a lump sum purchase of a viatical or a lump sum purchase of multiple viatical life settlements such as what Warren Buffett or Bill Gates does. Yet DEFENDANTS not only do not disclose this, but they actively equate their product in their sales presentations, brochures, and web site to the viatical life settlements that Warren Buffett and Bill Gates have purchased and suggest that these high-profile people endorse this product. See Exhibit 1, 101, 110.

97.     Exhibit 110 is an email written by UNDERWOOD and ROY. As a selling point, the investments offered are likened to what Warren Buffett invests in. They give returns of 35%, 42%, 68%, and 93% respectively and say, "We only have satisfied customers" DEFENDANTS intentionally suggest that Warren Buffett and Bill Gates bought viatical life settlements and so should  Plaintiff "unless you are smarter than Warren Buffet, (then) delete this.  He has been investing in this since 2001… because he has seen the returns firsthand and has to report to shareholders." See Exhibit 112, page 1 and 2 an email written by ROY, which, again, is representative of all sales presentations to all Plaintiffs. These statements present the false impression that what RELIANT offers is equivalent to what Warrant Buffett and Bill Gates bought and that if it is good for Buffett and Gates, it is good for RELIANT investors. Again, Buffett and Gates buy great quantities of viatical life settlements without as many middlemen or the load that RELIANT products carry. Buffett and Gates did not purchase fractionalized or syndicated life settlement investments like

the kind RELIANT sold to these investors when many investors participate in sharing premiums. PLAINTIFF INVESTORS were sold are life settlements fractionalized as a pool and syndicated. Examples where other fractionalized and syndicated investments lead to poor outcomes, failures and previous government regulatory actions include the Oxford Financial and Pacific West Group programs that Reliant/RLS knew or should have known about and not continued in the same vein. This material information about other failures and regulatory action in the industry was not disclosed to PLAINTIFF INVESTORS. DEFENDANTS did not make a full, complete, fair, and balanced disclosure of what was known about its industry. Defendants deceptively  and falsely only portrayed all the possible upside. Buffett and Gates are portrayed in marketing materials as if they are sponsors or spokespersons for RELIANT, which they are not. This is a material deception that caused an investor to buy in when they normally would not have.

98.    In 2017, RAYMOND E. DOUGLASS was 83 years old, in the throes of serious health difficulties and not of sound mind. He suffered from dementia, diabetes, and other health issues and was vulnerable and susceptible to suggestions because he was living alone and lacked companionship. He had long since retired. RAYMOND E. DOUGLASS, hereinafter "Mr. Douglass," was not a suitable candidate being elderly himself to purchase over a million dollars in "life settlement" investments in approximately 21 separate transactions mostly between 2017 and 2018. See Exhibit 118 and for a list of policies Mr. Douglass invested in. Mr. Douglass died in 2020, just two years after his last purchase of these investments.

99.    Defendants knew Mr. Douglass was ill before and during his sales. MURPHY is seen in a photo taken in November 2018, at Mr. Douglass' home, surrounded by filth. See Exhibit 6. MURPHY also signed an Agent of Record Certification, See Exhibit 116, page 1, that MURPHY certified that he explained all the risks to Mr. Douglass and that Mr. Douglass was a suitable candidate to invest $600,000 on March 1, 2018. MURPHY signed and initialed his name several times on this form that he "made sure the investor understood" the terms, and that "I have acted in the best interest of the client making this

purchase recommendation and have not made any misleading statements to the client." In addition, MURPHY signed that he "fully explained the potential impact to the client of any premium calls should the insured live past the premium reserve escrow period."

100.   After Mr. Douglass died, one of the policies matured and Mr. Douglass' payout was supposed to be $34,000. Plaintiff GWENDALYN DOUGLASS, as Trustee of RAYMOND E. DOUGLASS REVOCABLE TRUST, never received the check. Defendant MARK SANSOUCY ("SANSOUCY") instead stated that the money would be used for premium calls on the other policies that Mr. Douglass purchased. Between January 2021 and January 2022, Plaintiff GWENDALYN DOUGLASS, as Trustee of RAYMOND E. DOUGLASS REVOCABLE TRUST (hereinafter the Plaintiff Trustee G. Douglass) was unable to obtain the necessary documents to transfer her deceased father's investment policies to the heirs, nor was she able to get a clear picture of how many policies her father had invested, and what premiums were due. GRADY, SANSOUCY, and others named did not cooperate in the transfer of assets for over a year. See Exhibit 119 for an email trail of unfulfilled requests for documents lasting one year from the Plaintiff Trustee G. Douglass and SANSOUCY and GRADY.

101.   The information contained in the sales pitch was false. The investment is not guaranteed to vest if the future and ever-increasing premiums are not paid. The rate of return is not fixed, but completely dependent on how long the insured lives and what the undisclosed future premiums will be. There is no "exact payout" known until the when the policy matures. That date of maturity is not known when the investor invests. The asset is not safe and secure because the safety of the investment depends on the future undisclosed ever-increasing premiums being paid.

102.   The above is an example of the same deceit that Mr. Douglass and the PLAINTIFF INVESTORS relied upon that caused him to invest in approximately twenty-one transactions. Mr. Douglass relied on these false statements. Had Mr. Douglass known the truth, had he been of sound mind and capable of understanding the truth, he would not have invested. These false statements, along with other substantial

deceit used by RELIANT and/or RLS FINANCIAL SERVICES were employed regularly on Mr. Douglass as well as all the other sales during this period. It is alleged this deceit is a substantial reason for Mr. Douglass and Plaintiff Trustee's suffering investment losses set forth herein as Exhibit 120 showing over a million dollars.

103.   Reputable securities dealers would not sell these investments to Mr. Douglass for many reasons. Mr. Douglass was not suitable for these investments. Mr. Douglass was over 20 years older than one of the insured, and he was approximately the same age as the other insured. The chances of an 83-year-old diabetic Mr. Douglass outliving the insured, especially the 62-year-old insured, was questionable at best. There was no justification to require an 83-year-old to use his liquid assets, which he needed for his own future, to invest in an illiquid investment. In addition there was a risk of losing his principal and the policies subject to forfeitures if the future premium obligations were not paid. Mr. Douglass, at age 83, needed liquidity for future medical needs. Mr. Douglass, or his heirs, were not appropriate candidates to be saddled with sizable future premium obligations to safeguard the principal in the investment. Again, reputable investment advisors would not recommend this investment to a person such as Mr. Douglass. The real odds of how well a person will do in Defendants' investment are not properly conveyed to the investors by Defendants, nor are the problems inherent in the program.

104.   In the Baeza investments, Plaintiff Investor Ed Baeza only met with Defendants TUPLER and SANSOUCY, not Defendant BOVINO, yet BOVINO filled out and signed several Agent of Certification of Records, Exhibit 128, claiming to be agent to have personally made a full disclosure to Plaintiff Baeza regarding "I have fully explained the potential impact to the client of any premium calls should the insured live past the premium reserve period." " I made sure the above -referenced Investor understood and agreed to the terms in the Reliant Lief Shares' This is completely fabricated because Plaintiff Ed Baeza never met or talked with any another person besides TUPLER and SANSOUCY before buying the Life settlement investments for

himself or his companies YEYO or GAMAN. Also, no serious discussion of the possibility of future premiums took place nor was there any discussion on how big a premium call might be.  See Exhibit B.

105.  DEFENDANTS GRADY, SANSOUCY, MURPHY, KLEINFELD, TUPLER, and BORCHERT, and the companies themselves Reliant Life Shares, LLC aka Reliant Capital, RLS Financial Services Inc., PFSI, and Does 1-10. engaged in ratifying the salesperson and sales materials downplaying of the premium risk. In an email from TUPLER to Goodale dated March 23, 2016, TUPLER states, "There will be a "12% annual or more on your investments without market risk…I am going to give you a commitment from the bank for your exact payout." "make double digit returns, no matter if the markets or interest rates are up or down. Here is a proven way, to make $50,000 a year additional to your retirement income …for life…!!!" "this asset is safe, and secure." Exhibit 123. ROY wrote a similar email to Investor ORTIZ at Exhibit 111, on September 23, 2015, stating "You wanted to get 12% annual or more on your investments without market risk". "Here is a proven way to make $50,000 a year additional to your retirement income… For life…!!!." Exhibit 111, page 2. "This asset is safe and secure." "I'm going to give you a written commitment from a publicly traded, FDIC insured bank for your exact payout." Exhibit 111, page 3. "You know exactly how much you will make." Exhibit 111, page 3. At Exhibit 116, TUPLER uses the exact same quotes as above to Investor COLEMAN. Both RELIANT salesperson are using almost the same language in their emails to potential customers. Upon information and belief, these sales materials were ratified by GRADY, SANSOUCY, MURPHY, KLEINFELD, and BORCHERT and is the standard sales presentation made to all Plaintiffs by the DEFENDANT salespeople.

106.  PLAINTIFF ANSARY was told that RELIANT or associated companies used actuary services that were 96% to 99% accurate when it came to predicting life expectancy. Exhibit 129. It is alleged that most if not all Plaintiffs were told the same either verbally or through emails. That statement is deceptive because it is alleged upon

information and belief that RELIANT's own track record with these Plaintiff Investors is nothing like that. Plaintiff Investors herein have made cumulative investments between 2013 and 2020 of over $3.76 million in different transactions in these life settlement investments. See Exhibit B.  If we only consider those transactions that occurred 7-10 years ago, or between 2013 and 2016, then supposedly 96% - 99% of those policies that are 7 years old or older should have matured, or 9 out of 10 should have matured. However, 70 different transactions in 12 unique policies in these life settlement investments or $1,331,400 were invested between 2013 and 2016, which is 7-10 years ago. If the projections of 96% to 99% accuracy that the premium reserves were adequate, and that the policies would mature within the time span that the reserves covered, then some or 96% to 99% of Plaintiff Investors policies made between 2013 and 2016 should have matured by now, but this has not happened. Put another way, 11 of these policies invested in 7-10 years ago would have matured. Only 2 policies are known to have matured, so the accuracy of the actuaries is 16%, not 90%+. If these policies had matured, and the investors had received a return on their investment, the instant lawsuit would not be necessary. The true track record of RELIANT should have been fully disclosed to Plaintiff Investors, but was not. RELIANT accuracy rate in determining the premium reserves is not even close to 90%, DEFENDANTS knew it or are reckless in not knowing it.

107.   Just two examples of excessive premium calls are as follows. When Plaintiff Georgeta Masson, inherited her husband's Marc Weinstein life settlement investments that he purchased in 2016, she received an invoice for $30,132.81 on the $75,000 investment. See Exhibit 133, page 1 dated February 23, 2023. If she pays the invoice, there will be no profit in this investment at all. The projected maturity value of these policies is $109,500, Exhibit 133, page 5. Marc Weinstein had already paid $11,304.59 in premiums in 2019 (on life settlements purchased in 2016.) He had anticipated that the premium reserves would not have been depleted until at least 5 years, not within 3 years. If Plaintiff Masson were to pay the invoice of $30,132, along with the $11,304 already

**SECOND AMENDED COMPLAINT**

previously paid, there would be no future profit because according to RELIANT on Exhibit 133, page 5, this investment of $75,000 has a maturity value of $109,500. The math is as follows: $75,000 plus $11, 304 plus $30,132 equals $116,436 out of pocket in order to receive a potential maturity value at some time in the future of $109,500.  That is not a safe secure investment.

108.   Another Plaintiff ORTIZ invested $60,000 in 2016. ORTIZ started receiving and paying premium calls in 2017. On February 7, 2023, he received a premium invoice showing $16,604.65 due. See Exhibit 134, page 2. ORTIZ had already paid $4644.10 in premiums in 2021 alone. The maturity value of his $60,000 investment is $78,600. Again, if ORTIZ pays all premium calls, he will not profit at all from this investment. ORTIZ may have to forfeit these investments because it has become too expensive to maintain, and ORTIZ may be forced to suffer a big loss. Most if not all of the Plaintiff Investor have similar situations. It is easy to see how these excessive and unanticipated premium calls can eat up any potential profit from these investments. The premiums are also expected to go up dramatically each year, as the insureds age.

109.   Another part of the deception surrounds who DEFENDANTS are, who they work for, and the structure that allows different persons to be involved and interrelated when they are supposedly not working for the same company. It is believed that all DEFENDANTS are part of one organization even though they work through different companies. DEFENDANTS try to protect themselves and the companies they work for by claiming to be multiple entities, when they appear to be a joint venture, joint enterprise, or partnership. Again, in *Reliant Life Shares, LLC v. Cooper, supra*, the court found there was "substantial evidence, indeed admissions, that Michaels and Grady created shell companies ...as conduits through which they could funnel money from Reliant to other entities" It is also possible that DEFENDANTS originally worked for one entity, but they have split up and now work out of multiple entities, but Plaintiff Investors have not been told this. This is for discovery, but for now, either all the named DEFENDANTS are all one, or they are multiple companies or persons separately

responsible for their own wrongs. Because all DEFENDANTS and entities work closely together, it is only fair that this be disclosed. What we are talking about is RELIANT, appearing to be Reliant Life Shares, LLC, using the name Reliant Capital, and possibly using RLS Financial Services, PFSI, and RMS Trust. The term "RELIANT" in this complaint refers to all the aforesaid companies or trusts. It is illegal to pass one off as another or use names that are deceptive and misleading and confuse the consumer or the public. See Civil Code ¶1770 et. seq. Also conspiracy, aiding and abetting principles can make all parties liable for the acts of each other when they are embroiled in common wrongdoings, are concepts that are presented in the causes of action that follow. An example of the above is PLAINTIFF ED BAEZA thought he was purchasing Life Settlement Investments through RELIANT only. However, PLAINTIFF BAEZA met in the same office with the same persons, SANSOUCY and TUPLER, regarding PLAINTIFF BAEZA's GAMAN LLC and YEYO, LLC investments. The GAMAN LLC paperwork for the life settlement investment shows RELIANT and the YEYO, LLC paperwork indicated that PLAINTIFF BAEZA was investing through so-called SANSOUCY's company PFSI. It was not disclosed to PLAINTIFF BAEZA that he was investing through two different companies, PFSI and RELIANT. PLAINTIFF BAEZA only found out about allegedly two different companies after the YEYO, LLC investment was made, after he had to beg for all the complete executed paperwork to be given to him. Again, RELIANT/ PFSI personnel were negligent in responding to PLAINTIFF BAEZA's and other Investors' requests for paperwork, phone calls, and personal visits to obtain documents.

110.   There are other examples of misrepresentation. The following examples are representative of what RELIANT/ PFSI salespeople told to all Plaintiff Investors about their investments. ROY told Investor Ezequiel ORTIZ in an email dated April 2, 2018, that the RELIANT products had " fixed return (profit) … 42% of your principal, plus your principal back." Exhibit 122 ROY was confusing fixed rate of return with profit. This misstatement led ORTIZ to believe there was a fixed profit and ORTIZ was induced

to invest. This is false because anytime there are future premiums that can become due, (on these RELIANT investments), there is always the possibility there will be a loss. The cost of the future premiums can eat into any future profits which can result in a loss of investment. By RELIANT/ PFSI salespersons saying there are guaranteed profits, when there are not, is deceptive. The risk of future premiums are being totally ignored and, upon information and belief, the risk was ignored when the sales were made to all of the Plaintiff Investors herein. This confusion is a dirty trick, and a play on words to make the products seem better than they were. Salesperson made statements that gave Plaintiffs, as potential investors, the impression this was a sure thing when it most surely was not. Upon information and belief, phrases like the following were used to sell products to Plaintiffs. Other examples of similar deception going on and on by RELIANT/ PFSI salesmen who to sell these investment products to Plaintiff Investors herein include:

a. The investment " shows an average annual gain even with this premium call, is better than 11% annually." ROY in an April 2, 2018, email. Exhibit 122 to Plaintiff ORTIZ.

b. "We don't just buy any policy the comes across the desk. This is not "too good to be true" UNDERWOOD and ROY email to Plaintiff Leong dated August 24, 2015. Exhibit 110.

c. "This is a written invitation for you to start getting 9% to 12% with no market risk." UNDERWOOD and ROY email to Plaintiff LEONG dated August 24, 2015. Exhibit 110.

d. We suggest that 33%, 42% 68% of the 93% returns. We only have satisfied customers. UNDERWOOD and ROY email to Plaintiff LEONG dated August 24, 2015. Exhibit 110.

e.    "You know exactly (90%+ accuracy) how long you will wait." Email to Plaintiff Ortiz from ROY dated September 23, 2015. Exhibit 111, page 4.

**SECOND AMENDED COMPLAINT**

f. "The choice is simple… Be at the mercy of the markets or have financial freedom." Email to Plaintiff Ortiz from ROY dated September 23, 2015. Exhibit 111, page 7.

111. DEFENDANTS using deceptive and false statements purposely or recklessly to induce a sale is improper, misleading, or grossly negligent. This is especially true since RELIANT/ PFSI salespersons continually say the investment is safe and secure, with a fixed rate of return. RELIANT/ PFSI salespersons selling this as a double digit or 12% annual investment with no market risk is what is alleged upon information and belief that most salesmen told potential investors. There is a substantial risk of losing one's principal which is not disclosed to potential investors.

112. At Exhibit 108, UNDERWOOD wrote to Plaintiff Thorsell on July 24, 2014, "There is nothing else out these that can come close for Safety, Security of principal or return and these are IRA and 401 eligible. Mark, we have many clients that are protecting their assets by getting their money working for them…can easily create residual income for the rest of your life."

113. At Exhibit 137, CIRILE was told in 2013 that the investment "offers to preserve and grow wealth." That statement was a misrepresentation of what has transpired due allegedly to the purging of assets by the Reliant owners and controllers.

114. This investment is sold by MURPHY, GRADY, ROY, TUPLER, BAGBY, DAVENPORT, UNDERWOOD, BOVINO, SANSOUCY, BORCHERT AND KLEINFELD and DOES 1-10 as a guaranteed investment because everyone is guaranteed to die. It is true that everyone dies, but that does not guarantee this investment is secure or guaranteed. What was not disclosed to Plaintiff Investors, and what was obscured or omitted, is that the investment does not have a "guaranteed fixed rate of return" for a number of reasons including (1) RELIANT/RSL may not be solvent[1]

---

[1] Reliant's insolvency may be dependent on all the investors paying the premium amounts to Reliant so Reliant is able to pay the premiums on the policies. If Reliant depends on every investor to pay, Reliant may become insolvent if enough of the

41

**SECOND AMENDED COMPLAINT**

over time (2) RELIANT pays the premiums and if RELIANT becomes insolvent, the premiums will not be paid because the escrow companies have no further obligation to pay.(3)The longer the insured lives the more likely the premiums become so onerous that the Plaintiff Investors will not be able to afford the future premiums and thus the policy can be lost due to lack of payment of premiums because the premiums become unaffordable. Under those circumstances the policy is abandoned. Therefore, the RELIANT life settlement investment is not guaranteed.

115.  What is not conveyed to the prospective investor is that this investment requires an investor to have substantial assets and fortitude to be able to weather the real possibility that large premiums will have to be paid once the insured lives longer and the reserves become depleted. The premiums increase dramatically year after year as the insured gets older. It is believed and alleged upon information and belief that none of the salesmen disclosed this properly, most Plaintiff Investors were shocked when they got their first premium call, they had not been told about it, or were told that premium calls rarely occurred, as the actuaries data determined the premium reserves.

116.  DEFENDANTS certainly did not disclose that premiums increase dramatically year after year as the in.

117.  Defendants KLEINFELD; ROY; UNDERWOOD; SANSOUCY; MURPHY, BAGBY; GRADY; BORCHERT; TUPLER; BOVINO; and DOES 1-10 are clever enough to cover a lot of risks in their fine print written material and have investors sign a statement disavowing oral presentations of salespersons so that DEFENDANTS feel emboldened and immune from liability even when the salesforce states the opposite of the written disclosures in order to induce a sale. It is alleged that is what occurred herein with Plaintiff Investors. It was a regular course of action done on purpose with the intent to deceive Plaintiffs.

---

investors do not pay premiums when invoiced.

**SECOND AMENDED COMPLAINT**

118.   After Plaintiff Investors invest and want documents or answers to questions, RELIANT/ PFSI and the persons and entities that sold these life settlement investments do not answer phone calls and are unable to verify basic information, which causes Plaintiff Investors to become further disillusioned with the investment. Plaintiff Investors are looking for basic information (and not getting it) like:

a.   Proof that the premiums demanded were the correct amount of premiums associated with the life insurance policy in question,

b.   Proof that the reported medical problems associated with any insured were based on real medical records and a real medical evaluation. The information Plaintiff Investors receive mostly appear to be a copy paste of previous year's updates.

c.   Proof that the insured is still alive,

d.   Proof that the policy premiums are paid up,

e.   Backup accounting justifying the amount of the premium calls,

f.   Accounting of how the reserve account was depleted requiring a premium call.

119.  Most of the Plaintiffs are unsophisticated customers of modest means who are unable to pay substantial premium payments, or (1) were not properly prepared for such premiums as the likelihood of future premium calls was not fully disclosed and was downplayed by RELIANT salespersons, (2) were not properly qualified as suitable for the investment, there should have been a suitability analysis to determine if the Plaintiff Investor's total investment exceeded 10% of their net worth. Plaintiff ROEMER stated that UNDERWOOD did not ask Plaintiff ROEMER anything about Plaintiff ROEMER's other assets and allowed Plaintiff ROEMER to invest $130,000, which far exceeded 10% of his net worth(3) did not possess the fortitude and finances to be able to cover substantial and ongoing premium charges, or (4) were unable to obtain verification from DEFENDANTS (RELIANT, PFSI, and associated companies) that the interest in the policy or policies of insurance have not expired, that premiums are paid up, and that the premiums are fair and reasonable for their policy, that the insured is still alive and his or

**SECOND AMENDED COMPLAINT**

her status known, and that the investment still makes sense (that the outlay of premiums will not negate any future profit.).

120.  For this investment to make economic sense, it required that the insured had short life expectancies. Potential investors needed to be tantamount to gamblers on a speculative matter (another's life) for this to be suitable for this investment. The Reliant, PFSI, and associated companies' salespersons were remiss, grossly negligent, or purposefully deceptive because by creating the wrong impression about how sick these insureds were and how long they were going to live. The Reliant, PFSI, and associated companies' salespersons created a false impression by stating that the actuaries were 90%+ accurate (See Exhibit 111, page 4, ROY to Plaintiff ORTIZ in 2015). Defendants claim that their actuaries have 90%- 98% accuracy in predicting life expectancy that investors rarely have to pay a premium. It is believed this is false and deceptive. Also see Exhibit 7 and Exhibit 110, UNDERWOOD and ROY email to Plaintiff LEONG dated August 24, 2015.

121.  The facts are that once the premium becomes due, many investors cannot pay the premiums. They risk the forfeiture of their life settlement investments. Not telling investors the risk of forfeiture constitutes a material omission of material fact and actionable deceit.

122.  Many Plaintiff Investors were told only after they invested, that if they wanted to get out, that RELIANT would resell the policy to another investor. PLAINTIFF GOODALE wrote letters to the Consumer Financial Protection Bureau in December of 2016, the California Department of Insurance in January 2017 and to BORCHERT, as the Compliance Counsel for Reliant Life Shares in November 2016, stating that he was told by TUPLER that "you can cancel the policy(s) anytime without penalty." Exhibit 103, page 3. PLAINTIFF GOODALE wrote that when he had an emergency arise in November of 2016, and wanted his money back, then he was told that his policies had to be resold, and that he would have to wait until RELIANT found a buyer. This was a

complete surprise to PLAINTIFF GOODALE. As of 2023, PLAINTIFF GOODALE still has not received a refund.

123.   DEFENDANTS have a history of reneging on such promises of paybacks. For example, in the Gerald Frank case, he hired a lawyer to get his money back and DEFENDANTS agreed to give it back in a signed settlement agreement,  but Reliant reneged on it after firmly agreeing to do so. There are several Plaintiff Investor examples of DEFENDANTS reneging on such promises also. Exhibit 26 is a compilation of internet complaints against RELIANT.

124.   Plaintiff Investors request the Court's assistance to determine if all of these policies exist. Alleged on information and belief is that certain policies have matured for DEFENDANTS' benefit, and not for the Plaintiff Investors' benefit. DEFENDANTS have not properly disclosed this and it is alleged upon information and belief that Defendants have been using the policies for collateral or misappropriating the death benefit for themselves.  See *Reliant Life Shares, LLC v. Cooper, supra.*

125.   It is noted that Defendant companies, with the aid of GRADY, SANSOUCY, MURPHY, KLEINFELD, TUPLER, and BORCHERT, engaged in numerous re-sale attempts of the life settlement investment products for profit, which resale required licenses and registration that were not possessed by these DEFENDANTS. When disgruntled or desperate investors wanted out, DEFENDANTS would try to resell the life settlement investment interest to a new investor. These sales are referred to as resales or tails. These resale attempts are mentioned above in Exhibit 103 and Exhibit 102, wherein Plaintiff Investors were surprised that in order to "withdraw their money", they first had to wait for RELIANT to resell their policies to other investors.

126.   It is irrelevant that certain DEFENDANTS have gone their separate ways or have their own disputes between themselves. If a DEFENDANT was part of the mix that allowed this investment to be peddled illegally to Plaintiff Investors, all the alleged DEFENDANTS are at fault and responsible.

**SECOND AMENDED COMPLAINT**

127.  It is alleged that every day this investment continues, it is perpetrating a new wrongful act or breach of contract to the extent that Defendants are carrying on a deceptive program and are not allowing Plaintiff Investors to "withdraw their money any time without a penalty" as promised and to the extent that any premiums are still due means the purchase is still not a completed transaction.

128.  Upon information and belief, RELIANT does not purchase the insurance policies of very ill insured who want to cash out. Investor Marc Weinstein contacted an insured. The insured told Marc Weinstein that he was paid money to sign up for a life insurance policy. This is not how policies were described to Plaintiff Investors. They were told that the insured are people who do not want their policy anymore, not that the insured are solicited to become insured so that they can turn around and resell the death benefit. Obtaining a life insurance policy late in life comes with higher premiums. If people are solicited and then paid to become insured, this would be a different program. It is alleged that this is fraud.

129.  All Plaintiffs relied upon this product coming from existing insureds- not from trumped-up sales to create an insured just for the program. If that were the case Plaintiffs could buy their own life insurance policy directly from the insurance company, and obtain the cash value of the death benefit after the required short waiting period, and not go through a RELIANT middleman. Therefore, the full truth about who the insureds were in Plaintiffs investments and how the policies were procured was not properly and honestly disclosed. This constitutes a material omission of material fact or an outright lie. This is information that a reasonable investor needs to know to make an informed decision to invest in these RELIANT and associated companies life settlements. DEFENDANTS purposely did not disclose this with the intent to deceive, and/or this was negligent and/or a breach of Defendants' fiduciary duty.

130.  PLAINTIFFS are bringing this suit to obtain PLAINTIFFS' money back plus damages. PLAINTIFFS were told that this was a guaranteed investment, but the investment is not guaranteed to vest until the insured dies and that assumes RELIANT

remain viable and able to pay premiums. It does not vest if the premiums lapse, plus the return on investment can be diminished the longer the insured lives. Also, an insurance death benefit does not usually last beyond a certain date, typically it lapses if the insured reaches 100 years old. This was not properly disclosed. The rate of return of past investments was not disclosed accurately, and the creditworthiness of RELIANT or the companies behind the scenes supporting it were not disclosed.

131.  Also not disclosed were the companies and circumstances relating to investor buyouts. None of these risk factors were sufficiently communicated to Plaintiff Investors. Material facts were misrepresented, omitted, or concealed from Plaintiff Investors and would be material information needed for any decision to invest.

132.  The following DEFENDANTS participated in these additional omissions of material facts that directly affected all Plaintiff investment decisions:

a.  DEFENDANTS MURPHY, GRADY, ROY, BOVINO, UNDERWOOD, and TUPLER failed to describe the various aspects of this investment to Plaintiff Investors that made it unsuitable or not in their best interest such as the inability of heirs to inherit without having to cover the premium obligations, and that not paying all future undisclosed premium calls could result in the loss of the entire investment if the Plaintiff Investor or his/her heirs do not cover future premium calls.

b.  DEFENDANTS MURPHY, GRADY, ROY, BOVINO, UNDERWOOD, and TUPLER did not properly portray the statistics to Plaintiff Investors before entering a sale with them including information about pending suits, prior suits, prior investor returns, overall returns, a record of Investor complaints about the Premium calls, and any negative reviews. These are material omissions which would have assisted Plaintiff Investors in appreciating how inaccurate RELIANT had been in meeting its life expectancy estimates. Other statistics include how many other investors made money, how many investors bailed out when told they had to pay

**SECOND AMENDED COMPLAINT**

premiums, what was the average rate of return for all investments for the previous decade, and similar statistics.

c.     DEFENDANTS MURPHY, DAVENPORT, GRADY, ROY, BOVINO, UNDERWOOD, and TUPLER failed to advise they were, unlicensed securities salesmen or advisors unregistered with the federal government or the state. This is a material omission that Plaintiffs were not afforded the opportunity to evaluate. As a result, they did not know that they were victims of an unregulated sales force that could use hard sales tactics and could ignore concepts such as "knowing your customer" and the obligation of securities professionals to conduct themselves with high honor and observe just and equitable principles of trade.

d.     DEFENDANT RELIANT, with the input of DEFENDANTS MURPHY, GRADY, ROY, BOVINO,UNDERWOOD, and TUPLER, created a website or worked through or worked with a website that contained false information that Plaintiff Investors relied on. One such false information is that the life settlement policies offered by RELIANT gives the investor "the flexibility of this account allows investors to withdraw their money any time without penalty." Other Investors will testify they were told by MURPHY, GRADY, ROY, UNDERWOOD, and TUPLER that they could get their money back at any time albeit they would lose the upside of this investment. Plaintiffs tried to get the money back, to no avail. Therefore, the statement above is false and a misrepresentation.

e.     DEFENDANTS MURPHY, DAVENPORT, GRADY, ROY, UNDERWOOD, and TUPLER failed to disclose the directors, officers, partners, members, or trustees of the issuer of these investments, as required by law. This is another material omission that Plaintiffs were not provided, which they needed to make a reasonable investment decision.

f.     DEFENDANTS MURPHY, GRADY, ROY, BOVINO, UNDERWOOD, and TUPLER failed to advise Plaintiffs, as part of the sale, that the President of RELIANT or the person occupying an important role, GRADY, was a disbarred

**SECOND AMENDED COMPLAINT**

lawyer. This is depicted in a detailed declaration of Gloria Wolk, Exhibit A attached hereto, and incorporated by reference as though fully set forth hereat (which declaration RELIANT/RLS, GRADY and DEFENDANTS had in its possession in 2014 from prior litigation). GRADY's background in the industry is set forth in the Declaration from Exhibit A, page 19. None of this was disclosed to Plaintiff Investors, that according to Wolk's declaration, signed under penalty of perjury, GRADY "became of disbarred California attorney on July 10, 2009, when he was found to have violated probation conditions from earlier disciplinary orders. Grady had three prior disciplinary hearings, based on charges that included failure to pay court-ordered sanctions, failures to deposit client funds in a trust account." RELIANT and DEFENDANTS had a duty to disclose all material facts. Without disclosing the information contained in Wolk's declaration, RELIANT/RLS's self-serving version of its products is not fair and balanced or in compliance with securities law requiring a disclosure of all material facts. RELIANT also was involved in a series of litigation from 2014 – 2016 involving American General Insurance Policy PSH 20052L, which was a material fact not disclosed and amounts to concealment of material facts. In 2016, the case of *Reliant Life Shares, LLC v. Cooper*, No. B305544, 2023 Cal. App. LEXIS 260 (Ct. App. Apr. 4, 2023) was commenced. This 7 years long infighting among the partners was not disclosed to the Plaintiff investors. Failure to fully disclose all material facts that an investor needed to know constitutes intentional negligence or grossly negligent concealment of material facts. That concealment hindered Plaintiff Investors or any investors' ability to evaluate the program. If Plaintiff Investors had known the true background information of the industry, they would not have invested.

g. DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, and TUPLER failed to provide proper audited reports, as required by law, and needed to understand the investment.

h.   DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, and TUPLER failed to p fellow investors' names and contact information as required so that Plaintiff Investors could contact each other.

i.   DEFENDANTS ANDREW MURPHY, GRADY, ROY, UNDERWOOD, and TUPLER failed to advise Plaintiffs of the consequences of a limited and inadequate reserve fund to cover future premiums.

j.   DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, and TUPLER failed to advise that they allowed persons to invest that did not meet the minimum net worth requirements, which made the investment riskier, because if other investors did not have the net worth, they could put the investments at risk if they did not pay their fair share. This is another material omission that Plaintiffs were not provided, which they needed to make a reasonable investment decision.

k.   DEFENDANTS MURPHY, DAVENPORT, GRADY, ROY, UNDERWOOD, and TUPLER did not advise or disclose their policy of letting certain investors get out of the investment. DEFENDANTS allowed some investors out and refused to allow others to get out. This is another material omission that Plaintiffs were not provided, which they needed to make a reasonable investment decision.

l.   DEFENDANTS MURPHY, DAVENPORT, GRADY, ROY, UNDERWOOD, and TUPLER supplied Plaintiffs with materials. That stated, "The history of actual maturities of life settlement policies shows that, like a bell curve, approximately half of all policies mature before the estimated life expectancy date, and another half after".  See Exhibit 200. This statement applies to investors that RELIANT had the same performance when it did not. This was a misrepresentation that DEFENDANTS allowed to happen.

133.  Most Plaintiff Investors were influenced to invest after hearing several RELIANT radio advertisements, many played on KGO, KNX, KCBS and a Christian radio station. Many PLAINTIFFS assumed that hearing the advertisement on the Christian radio station meant that the station had vetted and endorsed RELIANT.

RELIANT played that up to their benefit in a way that was deceptive. These commercials are false, misleading, and deceptive under all the circumstances.

134.   RELIANT's radio ads and website claims its investors do better than Wall Street without statistics to back that up. RELIANT lures in potential investors without regard to their knowledge and sophistication about Life Settlement Investments, fractional and syndicated interests and without presenting a fair and balanced picture of this investment.

135.   This product is touted as the "Wall Street's best kept secret." Exhibit 2 is a page from RELIANT's website showing a video of Warren Buffett on the RELIANT website. However, this is a false statement, and there is no basis for it.

136.   DEFENDANTS failed to give all necessary, relevant, and material information about this product necessary for a reasonable investor to properly evaluate this investment including providing 1) overall rate of return historically, 2) the percentage of time RELIANT estimated the life expectancy (reserves) correctly, 3) the average age of death of an insured historically, 4) the number of these investments that have gone full circle, 5) the number of repeat customers, 6) the number and percentage of people and all their investment that made money, 7) the load on the investment, 8) the number of persons that put money in a RELIANT program or the fact that people did invest and took losses to get out of the program. DEFENDANTS failed to provide basic truthful statistics and information regarding how many customers had to pay premiums, or how RELIANT justifies using life expectancy more than social security life expectancy to create the false impression that the investment is better than it is. DEFENDANTS failed to provide information as to how many insureds exceeded RELIANT's disclosed life expectancy, which is a basic fact it should know and disclose. A reasonable investor needs to know information like this.

137.   DEFENDANTS failed to disclose that fractional life settlement programs, are an aberration and not allowed in many other states because premium can and does cause forfeiture of investors' principal at a rate that can put strain on anyone's orders and risk

averse. This constitutes a material omission of material fact and actionable deceit. Plaintiffs or any reasonable investor needed to know this information which Defendants purposely did not disclose. Plaintiffs would not have invested had they known the truth. The following Defendants participated in these omissions that directly affected all Plaintiff investment decisions: MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, DAVENPORT, and BAGBY.

138.   The RELIANT investment program fails to meet all of the provisions of the Corporate Code §25102(q) and other provisions of California law, therefore RELIANT cannot claim an exemption for registration. DEFENDANTS wrongfully claim an exemption for all syndications, in violation of registration and qualification laws of the State of California, and which is contrary to law and practice.

139.   Corporate Code §25102(q)(F) requires that the issuer adequately describe the issue and fully disclose the directors, officers, partners, members, or trustees of the issuer. This was not done. It is also believed that the failure to disclose GRADY'S disbarment violates security provisions of full disclosure and the requirement of full and balanced disclosure.

140.   Code §25102(q)(3)(E) requires that if the issuer retains ownership or becomes the beneficiary of the insurance policy, the following must be provided to investors: an audit report of an independent certified public accountant together with a balance sheet and related statements of income, retained earnings, cashflow sheets that reflect the issuer's financial position, the documents that show the results of the issuer's operations, and the issuer's cashflows as of a date within 15 months before the date of the initial issuance of the securities. This was not done even though RELIANT or its personnel and or agents (vendors) took over policies and effectively became owners or arranged for others to do it, which it alleged on information and belief also allowed them to profit at the expense of investors.

141.   Corporate Code §25102(q)(3)(Q) requires that Defendants provide the names, addresses, telephone numbers of the persons who will be the insurance policy owners

and/or the persons who will be responsible for the premiums. Defendants failed to do so. It has interfered with any investors' ability to obtain information from each other, advocate for themselves, organize, and have access to their rights available by law.

142.  RELIANT also violated the provisions of Corporate Code §25102(q)(3)(O) which requires that the insurance policy premiums and terms of premium payments be disclosed. Potential future premium payments were not adequately disclosed, or were disclosed in a fashion that was misleading, inaccurate, sloppy, or dishonest.

143.  Corporate Code §25102(q)(3)(L) requires that Defendants advise investors of the rate of increased premiums as the insureds become older. This was not disclosed or adequately addressed and constitutes misrepresentation and deception. This also violates Corporate Code §25102(q)(U) because the commissioner requires full disclosure. The omission of these material facts becomes a form of deceit and violated the suitability requirement and the requirement that the investment be in the best of PLAINTIFFS. Even though this was not originally a group policy, it became one when investors were signed up.

144.  Upon information and belief, several investors were told that RELIANT does not check the net worth of its investors. Corporate Code §25102(q)(1) requires that the sales of securities should be made only to qualified purchasers, and that the issuer must make a reasonable inquiry as to qualifications of the purchaser, including net worth, and the percentage of net worth these investments would constitute to their total net worth. RELIANT in doing the above has failed to properly qualify purchasers to the program, which is reflective of RELIANT'S failure to comply with securities laws or "knowing one's customer." A failure to follow the above makes the whole program vulnerable to failure and is deceitful on all investors and was a deceit as to these investors being allowed to purchase these investments without having a high enough net worth.

145.  Upon information and belief, Defendants failed to take reasonable steps to verify if PLAINTIFFS were qualified purchasers and or had knowledge and experience

**SECOND AMENDED COMPLAINT**

in financial and business matters and that PLAINTIFFS were capable of evaluating the merits and risks of the prospective investment.

146.  DEFENDANTS did not verify whether or not PLAINTIFFS had a large enough portfolio so that PLAINTIFFS' total investments in these policies did not exceed 10% of their portfolio. It is alleged upon information and belief that RELIANT allowed people to invest who were not accredited or made purchases of these investments which constituted more than 10% of their net worth. No one at RELIANT did a suitability analysis to determine if this investment was suitable for INVESTOR BRIAN BONACUM, therefore he invested more than 10% of his net worth in this one asset class, which is a violation of securities laws. GRADY, SANSOUCY, ROY, and UNDERWOOD allowed BONACUM and others in the program without ascertaining net worth and suitability.

147.  DEFENDANTS, particularly RELIANT, PFSI, and related and associated companies, failed to have appropriate backup plans if and when any investor failed to make premiums. The program's success and financial viability depended upon each investor paying their share of premiums, but Defendants did not have a plan, making their viability tenuous. If they had a backup plan, it needed to be disclosed but was not. The plan also involved a conflict of interest to the extent that it allowed RELIANT associates or affiliates to profit when an investor quits the program or allowed RELIANT to favor some investors over others by letting some investors out and not others. It also makes the entire program vulnerable when investors exit the program; it means someone has to cover another person's pro rata premium obligation. How this is handled when someone drops out or dies was not disclosed. This is a materially important fact that all investors need to know because it affects the viability and staying power of the program.

148.  This investment hails from a tortured history where dishonesty is part of its culture. This is depicted in the attached declaration of Gloria Wolk. See Exhibit A. Failure to fully disclose all material facts that investors needed to know constitutes intentional negligence or gross negligence and concealment of material facts.

149.   PLAINTIFFS were induced into this program by manipulated reviews that did not represent a true status of RELIANT's situation. This is an additional deception where DEFENDANTS Reliant, PFSI, GRADY, and KLEINFELD used deceptive reviews or purged bad reviews. This deprives and did deprive these Plaintiff investors from obtaining all material information. This constitutes material omission of material fact and/or actionable deceit. Plaintiffs (or any reasonable investor) needed to know this information to invest in these Reliant life settlements, and which Defendants purposely, in deceit or in gross negligence, did not disclose. Plaintiffs would not have invested had they known the truth that was deprived them here. This constitutes intent to deceive as well as being a regulatory violation, negligence, and breach of fiduciary duty. It was deceitful to manipulate these reviews.

150.   The sale of this product by Reliant, PFSI/ PFSI, ROY, DAVENPORT, UNDERWOOD, SANSOUCY, MURPHY, BAGBY, TUPLER, and BOVINO and Does 1-10 violates securities laws that require full disclosure. Full disclosure cannot be given or was not given because the names of the insureds were not given to the investors, ostensibly to protect the identity of the insured. In addition, DEFENDANTS used "privacy concerns" as an excuse not to give out insured medical records. This is per se a violation of security laws which requires full disclosure. By withholding the insureds' names from the investors, RELIANT violated the first principle of securities law which is full disclosure.

151.   PLAINTIFFS were influenced by the "fixed"  rate of return that RELIANT promised, but this rate turned out to be a misrepresentation of a material fact and not true.

152.   Reputable securities salespeople and securities professionals would not sell these investments to Plaintiff Investors, most investors were not suitable for this investment and did not possess the risk tolerance for this kind of investment.

153.  PLAINTIFFS put DEFENDANTS to their proof to prove that RELIANT is a legitimate organization, that they actually have life insurance policies behind these

investments and the life insurance policies are not being manipulated by or for the life settlement industry. It is believed this whole program is fraud and Defendants do not have the policies or records to back up what was sold to these Plaintiff investors.

154.  PLAINTIFFS were influenced to invest by hearing that RELIANT's investments were not correlated to the stock market, so PLAINTIFFS were led to believe that an investment in RELIANT's product would be a way to diversify their investment portfolio. Not disclosed is that RELIANT had its lack of diversity issues that was not explained nor properly disclosed. An Investor would have to buy a hundred life settlement investments to have proper diversity with this product. This constitutes material omission of material fact and/or actionable deceit. Plaintiffs (or any reasonable investor) needed to know this information to invest in these Reliant life settlements, and which Defendants purposely, in deceit or in gross negligence, did not disclose. Plaintiffs would not have invested had they known the truth that was deprived them here. This constitutes intent to deceive as well as being a regulatory violation, negligence, and breach of fiduciary duty.

155.  Between 2015-2018, PLAINTIFF INVESTOR RAYMOND E. DOUGLASS was sold 11 life settlement investments by UNDERWOOD, ROY, SANSOUCY, and MURPHY.

156.  PLAINTIFF INVESTOR RAYMOND E. DOUGLASS was 81 years old when he first invested in 2015.

157.  PLAINTIFF INVESTOR RAYMOND E. DOUGLASS originally purchased $1,056,000 of Life Settlement Investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled or allowed him and the other investors to be swindled.

158.  INVESTOR RAYMOND E. DOUGLASS should never have been sold this or any RELIANT investment.

159.  INVESTOR DOUGLASS was 82 and 83 years of age when he was buying the majority of these policies. It was negligent and/or fraudulent for the salesmen

UNDERWOOD, ROY, SANSOUCY, and MURPHY, to suggest that a sick elderly person purchase so many of these policies so late in his life out of money needed for his retirement needs. RELIANT/RLS and the above persons knew it was not in INVESTOR DOUGLASS' best interest to buy these policies, but they still sold them to him. INVESTOR DOUGLASS was suffering from dementia, diabetes, and other health issues and vulnerable and susceptible.

160.  On or about June 12-13, 2017, one of Mr. Douglass' daughters was visiting her father when ROY arrived at the house, bringing RELIANT/ RLS informational brochures and lunch to her father. She asked for and received one of ROY's business card, (Exhibit 5, page 3). Mr. Douglass was in no shape to buy investments. Mr. Douglass was taking medications at the time, and in the presence of a RELIANT/RLS salesman ROY, Mr. Douglass pulled down his pants past his knees, and injected himself with medication. He left his pants pulled down until his daughter told him several minutes later to pull his pants back up. She saw her dad writing a check for ROY.

161.  In 2020, PLAINTIFF INVESTORS ED BAEZA and CONCEPCION BAEZA were sold 15 life settlement investments by TUPLER and BOVINO.

162.  PLAINTIFFS INVESTORS ED BAEZA and CONCEPCION BAEZA were 67 and 61 years old respectively when they first invested in 2020.

163.  PLAINTIFF INVESTORS ED BAEZA and CONCEPCION BAEZA originally purchased $982,138 of Life Settlement Investments each individually and through companies, PLAINTIFF INVESTOR GAMAN, LLC, and PLAINTIFF INVESTOR YEYO, LLC through DEFENDANTS TUPLER, MARK SANSOUCY, BOVINO, and Reliant Life Shares, LLC, Reliant Capital, and RLS Financial Services. DEFENDANTS engaged in a course of conduct as described above that swindled and/or was not appropriate for INVESTORS ED BAEZA and CONCEPCION BAEZA. Later, Plaintiff Investors BAEZAS increased the total amount of investment to $1,032, 000.

164.  INVESTORS ED BAEZA and CONCEPCION BAEZA should never have been sold this or any RELIANT investment. TUPLER and BOVINO sold INVESTORS

ED BAEZA and CONCEPCION BAEZA this investment under the auspices, management, and supervision of GRADY, BOVINO, KLEINFELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, PFSI.

165.   INVESTORS ED BAEZA and CONCEPCION BAEZA individually and through their companies invested in life settlement investments.

166.   On October 10, 2016, PLAINTIFF INVESTOR PAUL BUGLER was sold five policies.

167.   PLAINTIFF INVESTOR PAUL BUGLER was influenced, in addition to the allegations above and below in this Complaint, to invest by being told that RELIANT's investments were not correlated to the stock market. PLAINTIFF BUGLER was led to believe that an investment in RELIANT's product would be a way to diversify his investment portfolio. But the investment arranged by RELIANT had issues that were not explained as described above. This PLAINTIFF INVESTOR PAUL BUGLER (as well as the other PLAINTIFFS herein) was led to believe that this RELIANT investment had less risk than the stock market. This turned out not to be true and his investment in RELIANT left him undiversified.

168.   PLAINTIFF INVESTOR PAUL BUGLER originally purchased $50,000 of Life Settlement Investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled or allowed him and the other investors to be swindled.

169.   PLAINTIFF INVESTOR PAUL BUGLER should never have been sold this or any RELIANT investment. UNDERWOOD and SANSOUCY sold INVESTOR PAUL BUGLER this investment under the auspices, management, and supervision of GRADY, KLEINFELD, MURPHY; RELIANT, RELIANT CAPITAL, and RLS FINANCIAL SERVICES who supervised the salesmen's conduct allowing them to use false sales information that was contrary to what is written materials.

170.   As to all of the following Plaintiff Investors, these Plaintiff Investors would never have invested had they been told the truth by their salespersons. The Plaintiff

Investors' salespersons sold these Life Settlement Investments under the auspices, management, and supervision of GRADY, KLEINFELD, MURPHY; RELIANT, RELIANT CAPITAL, and RLS FINANCIAL SERVICES and/or PFSI. The above Defendants supervised the salesmen's conduct allowing the salesmen to use false sales information to induce a sale of the Life Settlement Investments, which false sales information was contrary to what is written materials.

171.  PLAINTIFF PAUL BUGLER was 49 years old when he first invested in life settlement investments in RELIANT in 2016.

172.  <u>PLAINTIFF INVESTOR WALTER BUGLER originally purchased $50,000 of Life Settlement Investments</u> through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled and/or was not appropriate for INVESTOR WALTER BUGLER.

173.  INVESTOR WALTER BUGLER should never have been sold this or any RELIANT investment. UNDERWOOD sold INVESTOR WALTER BUGLER this investment under the auspices, management, and supervision of GRADY, MURPHY, KLEINFELD, RELIANT, RELIANT CAPITAL, and RLS FINANCIAL SERVICES.

174.  PLAINTIFF WALTER BUGLER was 50 years old when he first invested in RELIANT in 2016.

175.  INVESTOR WALTER BUGLER invested in 5 life settlement investments.

176.  In 2017, PLAINTIFF INVESTOR BASSIR ANSARY was sold five life settlement investments by ROY and UNDERWOOD who were operating under the auspices, management, and supervision of GRADY, MURPHY, KLEINFELD, RELIANT, RELIANT CAPITAL, and RLS FINANCIAL SERVICES.

177.  INVESTOR BASSIR ANSARY should never have been sold this or any RELIANT investment.

178.  PLAINTIFF INVESTOR BASSIR ANSARY originally purchased $50,000 of Life Settlement Investments through DEFENDANTS. His salesman was ROY and

DAVENPORT. DEFENDANTS engaged in a course of conduct as described throughout this complaint that swindled INVESTOR BASSIR ANSARY.

179.  <u>PLAINTIFF INVESTOR JAMES CIRILE originally purchased $40,000 of life settlement investments</u> through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled and/or was not appropriate for INVESTOR JAMES CIRILE. At Exhibit 137, CIRILE was told that the investment "offers to preserve and grow wealth."  That statement was a misrepresentation of what has transpired.

180.  INVESTOR JAMES CIRILE should never have been sold this or any RELIANT investment. SANSOUCY and BORCHERT sold INVESTOR JAMES CIRILE this investment under the auspices, management, and supervision of GRADY, KLEINFELD, MURPHY, RELIANT, RELIANT CAPITAL, and RLS FINANCIAL SERVICES. In the alternative, the contract as against CIRILE was unsigned so it is invalid and justifies the return of INVESTOR JAMES CIRILE's money back.

181.  INVESTOR JAMES CIRILE invested in two life settlement investments.

182.  PLAINTIFF JAMES CIRILE was 47 years old when he first invested in RELIANT in 2013.

183.  In 2017, PLAINTIFF INVESTOR NATHAN COLEMAN was sold six life settlement investments by TUPLER and ROY acting under the auspices, management, and supervision of GRADY, KLEINFELD, MURPHY, RELIANT, RELIANT CAPITAL, and RLS FINANCIAL SERVICES.

184.  PLAINTIFF INVESTOR NATHAN COLEMAN should never have been sold this or any RELIANT investment.

185.  PLAINTIFF COLEMAN was 57 years old when he invested in RELIANT in 2017.

186.  <u>PLAINTIFF INVESTOR NATHAN COLEMAN originally purchased $60,000 of life settlement investments</u> through DEFENDANTS and his salesman TUPLER.

187.  DEFENDANTS engaged in a course of conduct as described above that swindled and/or was not appropriate for INVESTOR NATHAN COLEMAN.

188.  In 2018, PLAINTIFF INVESTOR GENE GOLDEN was sold eleven life settlement investments by TUPLER under the auspices, management, and supervision of GRADY, KLEINFELD, MURPHY, RELIANT, RELIANT CAPITAL, and RLS FINANCIAL SERVICES.

189.  PLAINTIFF GOLDEN eleven investments ranged from $3000 to $14,000 for a total of $103,000 invested.

190.  INVESTOR GENE GOLDEN should never have been sold this or any RELIANT investment.

191.  PLAINTIFF GOLDEN was 69 years old when he invested in RELIANT in 2018.

192.  DEFENDANTS represented that this investment was beneficial for retirement accounts. PLAINTIFF GOLDEN was induced to liquidate his American Standard IRA account to invest in RELIANT'S product. RELIANT Defendants recommending this risky life settlement investment for PLAINTIFF GOLDEN's retirement account, and allowing and inducing him to liquidate his conservatively invested IRA account was improvident or at least negligent on the part of RELIANT and associate persons and entities.

193.  PLAINTIFF GOLDEN was influenced by RELIANT salesperson TUPLER who stated several times that the investments were so sound and predictable that premium calls were very rare. This turned out not to be true. TUPLER also assured PLAINTIFF GOLDEN that if there were premiums due, the premiums would only amount to a few hundred dollars per year.

194.  When PLAINTIFF GOLDEN received a premium call, he was completely surprised. PLAINTIFF GOLDEN then asked for his money back because of a family emergency. PLAINTIFF GOLDEN had seen on the website and told by TUPLER that investors can "withdraw their money any time without a penalty." See Exhibit 1.

195.   PLAINTIFF GOLDEN wrote a series of letters, always getting a different response depending on who he talked to at RELIANT. One letter to GRADY is at Exhibit 124. PLAINTIFF GOLDEN, a retiree, living on social security, was told by SANSOUCY that he had to pay a premium of $1700 on one of his Life Settlement Investments. After weeks of leaving voicemail messages, TUPLER finally responded to PLAINTIFF GOLDEN and told him the premiums would be less than $1700, but did not tell PLAINTIFF GOLDEN what the premiums would actually be. PLAINTIFF GOLDEN's letters and phone calls to GRADY finally resulted in a false promise by GRADY (See Exhibit 125), that GRADY had arranged for another party to pay for PLAINTIFF GOLDEN's premiums and that the party, National American Capital, Inc. would not only pay the premiums but would also purchase through a Transfer, Release and Promissory Note, all of PLAINTIFF GOLDEN's Life Settlement Investments. The transfer and purchase never happened; this was a false promise. PLAINTIFF GOLDEN has not paid all premiums as they come due because he has lost confidence that these are legitimate investments.

196.   RELIANT salesperson TUPLER guaranteed PLAINTIFF GOLDEN that there was a theoretical risk that the policies PLAINTIFF invested in would extend beyond the reserve date, but it would actually never happen. However, there have been premium "calls" for more money since the reserves have run out in most of the insurance policies in this matter. This was a serious misrepresentation of material fact. TUPLER also told PLAINTIFF GOLDEN that PLAINTIFF GOLDEN can get his money back if requested at any time.

197.   PLAINTIFF GOLDEN was influenced to invest by RELIANT's Agent TUPLER who assured him that the investments always pay out.

198.   As it has later turned out, no Plaintiff Investor has actually gotten paid out without huge excessive premiums being deducted from the minimal payout, and almost all Plaintiff Investors are continuing to get premium calls. It is believed that it is a misrepresentation or a deceit to say there is a guaranteed fixed rate of return when there

is a possibility that the Plaintiff Investor will pay more in premiums than they will receive from this investment when it matures.

199.  Defendant SANSOUCY was also present for several of the discussions with PLAINTIFF GOLDEN and SANSOUCY facilitated or assisted and was aware or should have been aware of the inappropriate and deceitful sales tactics.

200.  <u>PLAINTIFF INVESTOR GENE GOLDEN originally purchased $103,000 of life settlement investments</u> through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled and/or was not appropriate for INVESTOR GENE GOLDEN.

201.  In 2016, PLAINTIFFS INVESTORS JOSEPH GOODALE and RACHEL GILA were sold two life settlement investments by TUPLER.

202.  INVESTORS JOSEPH GOODALE and RACHEL GILA should never have been sold this or any RELIANT investment.

203.  PLAINTIFFS were pressured and harassed by Defendant TUPLER and Defendant MARK SANSOUCY. Plaintiff Investors were coerced into investing in RELIANT. Defendant TUPLER even guaranteed Plaintiff Investors that insureds usually die in the first two years of their life settlement investments and the return of this investment is guaranteed. This is another example of how RELIANT's salespeople manipulate the truth or say favorable things whether they are true or not to induce a sale.

204.  <u>PLAINTIFFS INVESTORS JOSEPH GOODALE and RACHEL GILA originally purchased $30,000 of life investments</u> through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled and/or was not appropriate for INVESTORS JOSEPH GOODALE and RACHEL GILA. TUPLER was acting under the auspices, management, and supervision of GRADY, KLEINFELD, MURPHY, RELIANT, RELIANT CAPITAL, and RLS FINANCIAL SERVICES.

205.  In 2015, PLAINTIFF INVESTOR TRUDY BELINDA JOHNSON was sold four life settlement investments by SHAWN DAVENPORT, who was acting under the

auspices, management, and supervision of GRADY, KLEINFELD, MURPHY, RELIANT, RELIANT CAPITAL, and RLS FINANCIAL SERVICES.

206.  INVESTOR TRUDY BELINDA JOHNSON should never have been sold this or any RELIANT investment.

207.  INVESTOR TRUDY BELINDA JOHNSON invested in 4 life settlement investments.

208.  PLAINTIFF JOHNSON was 53 years old when she first invested in RELIANT in 2015.

209.  PLAINTIFF INVESTOR TRUDY BELINDA JOHNSON originally purchased $38,000 of life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled and/or was not appropriate for INVESTOR TRUDY BELINDA JOHNSON.

210.  In 2016, PLAINTIFF INVESTOR CHARLES LAWRENCE was sold five life settlement investments by TUPLER and SANSOUCY under the auspices, management, and supervision of GRADY, KLEINFELD, MURPHY, RELIANT, MICHAELS, RELIANT CAPITAL, and RLS FINANCIAL SERVICES.

211.  INVESTOR CHARLES LAWRENCE should never have been sold this or any RELIANT investment.

212.  PLAINTIFF LAWRENCE was 59 years old when he first invested in RELIANT in 2016. When the company where PLAINTIFF LAWRENCE's was employed closed its 401K program, PLAINTIFF LAWRENCE needed to find a safe place to roll his 401K, consisting of $249,400. TUPLER and others from RELIANT assured PLAINTIFF LAWRENCE that the investment was safe and authorized by the State of California as appropriate for retirement funds, and that there was minimal risk. All of PLAINTIFF LAWRENCE's 401K consisting of $249,400 was rolled over and invested in RELIANT.

213.  DEFENDANTS represented that this investment was beneficial for retirement accounts. PLAINTIFF reasonably relied on this representation but was not aware that the

**SECOND AMENDED COMPLAINT**

premiums would be continually escalating and difficult to pay on a fixed retirement income. PLAINTIFF LAWRENCE  has now been forced to postpone his retirement because of the lack of performance of these investment products and because of the premium calls he was receiving that he could not pay on a fixed retirement income.

214.  DEFENDANTS misrepresented that this investment would have little to no risk as the insured would eventually pass away and the policy would pay off. DEFENDANTS stated that there would be little to no risk of the investor not receiving a return on their investment, it would only be a matter of when. PLAINTIFF LAWRENCE (as well as all PLAINTIFFS) reasonably relied on this misrepresentation, not realizing that the premium payments would escalate in a way that could take any profit from the investment. If there is not profit, then the concept behind this investment makes no sense, which makes this investment a deception.

215.  PLAINTIFF LAWRENCE was further influenced by the fact that the investment qualified for use of 401K money. That gave PLAINTIFF LAWRENCE a false sense of security. He was wrongly encouraged, against prudent investment advice and the law, to roll over his 401K account.

216.  PLAINTIFF INVESTOR CHARLES LAWRENCE originally purchased $249,400 of life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled and/or was not appropriate for INVESTOR CHARLES LAWRENCE.

217.  In 2015, PLAINTIFF INVESTOR ORSON K. LEONG was sold four life settlement investments by ROY and UNDERWOOD who was operating under the auspices, management, and supervision of GRADY, KLEINFELD, MURPHY, RELIANT, RELIANT CAPITAL, and RLS FINANCIAL SERVICES.

218.  INVESTOR ORSON K. LEONG should never have been sold this or any RELIANT investment.

219.  ORSON K. LEONG was 60 years old when he first invested in RELIANT in 2015.

**SECOND AMENDED COMPLAINT**

220.  PLAINTIFF was influenced by DEFENDANTS UNDERWOOD, SANSOUCY, and ROY to invest in this scheme and claimed that these policies have a 90% statistical chance of paying within the time before the reserves ran out.

221.  <u>PLAINTIFF INVESTOR ORSON K. LEONG originally purchased $80,000 of life settlement investments through</u> DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled and/or was not appropriate for INVESTOR ORSON K. LEONG.

222.  In 2016, PLAINTIFF INVESTOR PETER J. LOWE was sold five life settlement investments by TUPLER and SANSOUCY who were operating under the auspices, management, and supervision of GRADY, KLEINFELD, MURPHY, RELIANT, RELIANT CAPITAL, and RLS FINANCIAL SERVICES.

223.  INVESTOR PETER J. LOWE should never have been sold this or any RELIANT investment.

224.  PETER J. LOWE was 79 years old when he first invested in RELIANT in 2016.

225.  PLAINTIFF was influenced by DEFENDANT TUPLER and SANSOUCY to invest in this scheme. DEFENDANT TUPLER claimed that these policies have a 90% statistical chance of paying within the time before the reserves ran out and premiums would be modest thereafter.

226.  <u>PLAINTIFF INVESTOR PETER J. LOWE originally purchased $100,000 in five life investments</u> through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled and/or was not appropriate for INVESTOR PETER J. LOWE.

227.  Between 2014 and 2015, PLAINTIFFS INVESTORS MARK THORSELL and BARBARA THORSELL were sold four life settlement investments by UNDERWOOD who was acting under the auspices, management, and supervision of GRADY, KLEINFELD, MURPHY, MICHAELS, RELIANT, RELIANT CAPITAL, and RLS FINANCIAL SERVICES.

**SECOND AMENDED COMPLAINT**

228.  INVESTORS MARK THORSELL and BARBARA THORSELL should never have been sold this or any RELIANT investment.

229.  PLAINTIFFS BARBARA THORSELL and MARK THORSELL first invested in RELIANT in 2014.

230.  PLAINTIFFS INVESTORS MARK THORSELL and BARBARA THORSELL originally purchased a total of $60,000 of life settlement investments through DEFENDANTS. PLAINTIFF INVESTOR MARK THORSELL invested $40,000 while PLAINTIFF INVESTOR BARBARA THORSELL invested $20,000. DEFENDANTS engaged in a course of conduct as described above that swindled and/or was not appropriate for INVESTORS MARK THORSELL and BARBARA THORSELL.

231.  In 2016, PLAINTIFF INVESTOR CLIFFORD RITZ was sold five life settlement investments by BAGBY who was acting under the auspices, management, and supervision of GRADY, KLEINFELD, MURPHY, MICHAELS, RELIANT, RELIANT CAPITAL, and RLS FINANCIAL SERVICES.

232.  INVESTOR CLIFFORD RITZ should never have been sold this or any RELIANT investment.

233.  PLAINTIFF RITZ was 55 years old when he first invested in RELIANT in 2016.

234.  PLAINTIFF INVESTOR CLIFFORD RITZ originally purchased $150,000 of life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled and/or was not appropriate for INVESTOR CLIFFORD RITZ out of PLAINTIFF's money.

235.  When PLAINTIFF RITZ received a premium call in April 2019, BAGBY wrote an email to PLAINTIFF RITZ stating that, "See attached statement $20,000 is guaranteed to turn into $26,600 and if he passes as expected would be a 33% return. You are paying your portion of the next year's premium. If he passes away in that year you will get a portion of the premium back. We talked about a 12% rate of return overall."

See Exhibit 113. This guarantee is not only illegal under securities laws, but also is false. BAGBY wrote another email to PLAINTIFF RITZ in October 2019, asking PLAINTIFF RITZ for further investment purchases, stating that, "I promise to not let you down and this would be a lifesaver to me and my family right now." See Exhibit 106.

236.  In September and October of 2015, PLAINTIFF INVESTOR STEVEN C. ROEMER was sold four Life Settlement Investments.

237.  INVESTOR STEVEN C. ROEMER should never have been sold this or any RELIANT investment by UNDERWOOD and SANSOUCY who were acting under the auspices, management, and supervision of GRADY, KLEINFELD, MURPHY, RELIANT, RELIANT CAPITAL, and RLS FINANCIAL SERVICES.

238.  PLAINTIFF ROEMER was 59 years old when he first invested $130,000 in RELIANT in 2015.

239.  PLAINTIFF was influenced by Defendant UNDERWOOD by stating that UNDERWOOD himself invested in RELIANT and assured PLAINTIFF ROEMER that the Life Settlement Investments were almost certain to mature within 4 to 5 years and if not, premiums were modest.

240.  Defendant UNDERWOOD had assured PLAINTIFF ROEMER that premium calls are highly improbable to happen and further claimed that in his seven years with RELIANT, Defendant UNDERWOOD only experienced 2 premium calls. Upon information that statement is not true and was deceptive.

241.  DEFENDANTS failed to disclose in a prominent, clear, and concise manner that if premiums were not continually paid, that Plaintiff Investors could lose their entire investment, and that premiums can increase at an alarming rate each year thereafter. Instead, Plaintiff Investors were led to believe that the actuaries who predicted the insured's lifespan were 90%+ accurate (See Exhibit 111, page 4, ROY to Plaintiff ORTIZ in 2015 and Exhibit 123, email from TUPLER to Plaintiff GOODALE in 2016) so the premium reserves would be more than enough to keep the policy enforced. These emails from TUPLER to Plaintiff GOODALE in 2016 and ROY to Plaintiff ORTIZ in

2015 have huge sections of sales material that are a copy paste of each other indicating that the RELIANT salesforce had similar tactics and used the same promotional sales materials to induce investments.

242.   In 2015, PLAINTIFF INVESTOR STEVEN C. ROEMER originally purchased $130,000 of life settlement investments through DEFENDANTS with UNDERWOOD who was acting under the auspices, management, and supervision of GRADY, KLEINFELD, MURPHY, MICHAELS, RELIANT, RELIANT CAPITAL, and RLS FINANCIAL SERVICES.

243.   DEFENDANTS engaged in a course of conduct as described above that swindled and/or was not appropriate for INVESTOR STEVEN C. ROEMER.

244.   In 2015 and 2016, INVESTOR GREGORY SCHMITT was sold five Life Settlement Investments by UNDERWOOD who was acting under the auspices, management, and supervision of GRADY, KLEINFELD, MURPHY, MICHAELS, RELIANT, RELIANT CAPITAL, and RLS FINANCIAL SERVICES.

245.   INVESTOR GREGORY SCHMITT should never have been sold this or any RELIANT investment.

246.   PLAINTIFF SCHMITT was 49 years old when he first invested in RELIANT.

247.   PLAINTIFF SCHMITT was influenced by Defendant UNDERWOOD to invest in these Life Settlement Investments after being assured that these investments were very low risk with a guaranteed 12% fixed rate of return. Upon information and belief, this is not a true statement.

248.   PLAINTIFF INVESTOR GREGORY SCHMITT originally purchased $100,000 of life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled and/or was not appropriate for INVESTOR GREGORY SCHMITT.

249.   In 2016, PLAINTIFF INVESTOR JOHN STOCKSDALE was sold five Life Settlement Investments by UNDERWOOD and ROY who were acting under the

auspices, management, and supervision of GRADY, KLEINFELD, MICHAELS, MURPHY, RELIANT, RELIANT CAPITAL, and RLS FINANCIAL SERVICES.

250.  INVESTOR JOHN STOCKSDALE should never have been sold this or any RELIANT investment.

251.  PLAINTIFF STOCKSDALE was 68 years old when he invested in RELIANT in 2016.

252.  PLAINTIFF STOCKSDALE was influenced to invest after hearing several RELIANT radio advertisements played on the San Francisco Giants' radio station. PLAINTIFF assumed that hearing the advertisement on the radio station meant that the product had been vetted. The radio ads stated the Life Settlement Investments would yield 10-12% guaranteed.

253.  DEFENDANTS UNDERWOOD and ROY told PLAINTIFF STOCKSDALE that premium payments would be between $300 to $500 per year. This was misleading, as premiums on one of PLAINTIFF STOCKSDALE $12,000 Life Settlement Investments have been as high as $2300 per year.

254.  PLAINTIFF INVESTOR JOHN STOCKSDALE originally purchased $60,000 of life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled and/or was not appropriate for INVESTOR JOHN STOCKSDALE.

255.  In 2016, PLAINTIFF INVESTOR JENNIFER VANCE was sold three Life Settlement Investments by UNDERWOOD.

256.  INVESTOR JENNIFER VANCE should never have been sold this or any RELIANT investment.

257.  PLAINTIFF VANCE was 55 years old when she first invested in RELIANT in 2016.

258.  PLAINTIFF INVESTOR JENNIFER VANCE originally purchased $30,000 of life investments through DEFENDANTS. DEFENDANTS engaged in a course of

**SECOND AMENDED COMPLAINT**

conduct as described above that swindled and/or was not appropriate for INVESTOR JENNIFER VANCE.

259.  In 2016, PLAINTIFF INVESTOR BRIAN BONACUM was sold three life settlement investments by SANCOUCY and UNDERWOOD who were operating under the auspices of GRADY, MICHAELS, MURPHY, KLEINFIELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

260.  INVESTOR BRIAN BONACUM should never have been sold this or any RELIANT investment. No one at RELIANT did a suitability analysis to determine if this investment was suitable for INVESTOR BRIAN BONACUM, therefore he invested more than 10% of his net worth in this one asset class, which is a violation of securities laws. This lack of suitability analysis created a hardship for BRIAN BONACUM when he began receiving premium calls that he did not anticipate.

261.  PLAINTIFF INVESTOR BRIAN BONACUM originally purchased $30,000 of life settlement investments through DEFENDANTS. DEFENDANTS SANSOUCY and UNDERWOOD and engaged in a course of conduct as described above that swindled INVESTOR BRIAN BONACUM. He was never told that there would be any future premium calls. He heard radio ads that this was a guaranteed double-digit return.

262.  In 2016, PLAINTIFF INVESTOR GEORGETA MASSON'S husband Marc Weinstein was sold three life settlement investments by TUPLER, ROY and BORCHERT who were operating under the auspices of GRADY, KLEINFIELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST. Marc Weinstein invested $75,000 in April of 2016. Marc Weinstein heard radio ads that there was a guaranteed 10-12% return on these investments. The radio ads induced him to invest. Investor Marc Weinstein received an email from ROY stating, "there is nothing out there that can come close for safety, security of principal or return, and these are eligible for IRA and 401k rollovers. We have many clients that are protecting their assets by getting their money working for them through investing in life settlements, and I hope we can do the same for you."

71

**SECOND AMENDED COMPLAINT**

263.  INVESTOR Marc Weinstein, and GEORGETA MASSON, an individual; as the surviving spouse and Successor-in-interest pursuant to CCP 377.11 et seq. on behalf of her husband Marc Weinstein who should never have been sold this or any RELIANT investment because the investment was not what it was represented to be.

264.  In 2017, PLAINTIFF INVESTOR EZEQUIEL ORTIZ was sold six life settlement investments by TUPLER who was operating under the auspices of GRADY, KLEINFIELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

265.  INVESTOR EZEQUIEL ORTIZ should never have been sold this or any RELIANT investment using his IRA retirement money.

266.  PLAINTIFF INVESTOR EZEQUIEL ORTIZ originally purchased $60,000 of life settlement investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR EZEQUIEL ORTIZ, ROY wrote an email to EZEQUIEL ORTIZ at Exhibit 111, on September 23, 2015, that "I can promise you that this is a good fit." "You wanted to get 12% annual or more on your investments without market risk". "Me keeping my word is important to me and to you." "Here is a proven way to make $50,000 a year additional to your retirement income… For life…!!!." Exhibit 111, page 2. "This asset is safe and secure." "I'm going to give you a written commitment from a publicly traded, FDIC insured bank for your exact payout." Exhibit 111, page 3. "You know exactly how much you will make." Exhibit 111, page 3. "You know exactly (90%+ accuracy) how long you will wait." Exhibit 111, page 4. "The choice is simple… Be at the mercy of the markets or have financial freedom." Exhibit 111, page 7.

267.  It is alleged upon information and belief that this investment, in the way it was procured and sold and had Ponzi-like characteristics.

268.  Civil Code §1770(a)(19) prohibits inserting an unconscionable provision in the contract. Many unconscionable provisions constituted this investment.

269.  Civil Code §1770(a)(26) prohibits advertising, offering for sale, or selling a financial product that is illegal under state or federal law. Defendants' companies violated this provision

270.  Defendants, especially ROY, KLEINFELD, GRADY, SANSOUCY, and the Defendant companies say they did not just buy any policy. See ROY's email to ORTIZ drafted on June 8, 2016, or Exhibit 112. In fact, it is alleged that Defendants cherry picked policies and sent the better policies elsewhere rather than into the kind of fractional interest investments that became part of this program. What happens is Plaintiff Investors only get the left-over policies. Defendants manipulated the selection of policies for their advantage to the disadvantage of these Plaintiff Investors. All this is fraud, abuse of trust, and at the very least, lack of disclosure.

271.  There was omissions of material facts regarding past relevant litigation. In one L.A. Superior Court case involving the Duffy policy, Judge Frank Johnson stated in the statement of decision that, "The sale of the Duffy policy was also accompanied by an attempt to withhold hundreds of thousands of dollars in the form of continued legal bills or used investor money as a set aside fund for future legal defense, none of which was warranted or allowed under the trust or purchase agreement and was tantamount to an outright theft." See statement of decision in the case known as Reliant Life Shares, LLC vs. Brad Lawrence (hereinafter referred to as the Duffy case), Court file number LC098847, Superior Court State of California, County of LA (consolidated with other cases and an unsuccessful countersuit).

272.  The Securities and Exchange Commission (SEC) filed a similar case against Andrew Calhoun and Pacific West Capital Group, (US Dist. Ct of the Central District of California, (case 2:15: -cv-02563(FMO) (FFM). This case put Defendants on notice that they must conduct appropriate oversight over their sales force and monitor sales representations carefully.

273.  Exhibit 25 exemplifies what happened in the case of Gerald Frank. Frank invested about $40,000 in a series trust known as Trust MW8350, Account CH145206-0,

**SECOND AMENDED COMPLAINT**

and Policy number VF51798350, which closed on or about May 12, 2015. Frank lost it all to these Defendants based upon false pretenses. This Frank case along with the Duffy case, are examples that show that some of the Reliant Defendants, including MURPHY, SANSOUCY and GRADY, have been continually engaged in deceptive practices over time.

274.  Since Duffy, Calhoun, and Frank matters, the Reliant Defendants enterprise was on notice that investors were surprised about future premium calls, and that unanticipated ever increasing premium calls were a particular hardship for the elderly. This should have been a red flag, but RELIANT did not change its sales methods.

275.  In addition to inaccurately depicting the risk that the insured would live past the life expectancy reserve period that RELIANT/RLS set, RELIANT/RLS failed to advise how large those premiums could get per year. It is nothing short of sticker shock. No reasonable investor would accept this. Not disclosing the extent of the potential premium increases is a misrepresentation or omission of material fact. Investors needed to have the correct information before investing in these Reliant life settlements, and which defendants purposely, or in gross negligence, did not disclose or explain truthfully. Plaintiff Investors would not have invested had he known the truth. DEFENDANTS made the above false statements with the intent to deceive. It constituted regulatory violations, negligence, deceit, and breach of fiduciary duty.

276.  It was not appropriate or within the standard of the industry or the standard of care for a salesperson or their supervisors, bosses, or managers to sell the assignment investments to INVESTOR DOUGLASS based upon his age, health status, dementia, inability to comprehend, state of mind or what was suitable or in his best interest. As a result, INVESTOR DOUGLASS's heirs became saddled with something that they should not have been saddled with because INVESTOR DOUGLASS was sold something not suitable or in his best interest. As a result, Mr. Douglass' heirs and or beneficiaries are left holding these investments and seek to reverse said sales and or obtain reimbursement and compensation from DEFENDANTS. Plaintiff Trustee G.

Douglass also seeks all other remedies and damages allowed by law. On at least three occasions, INVESTOR DOUGLASS was sold assignments from other RELIANT customers who wanted out, in other words, INVESTOR DOUGLASS became a repurchaser. It is believed there will be more "assignments" discovered during the discovery stage of this suit.

277.   Plaintiff ED BAEZA outlined in a letter at Exhibit 16, how  TUPLER had told him, "that I could get out of these plans at any time" and get his money back plus the earned interest. This turned out to not be true.

278.   It turns out this was another ploy and deceit to lure someone into the investment. Investors are cheated and continue to be cheated each day by DEFENDANTS suggesting there is a buyout potential when there is no way to implement it. The facts alleged herein reflect the intentional and willful acts surrounding Defendants' continuing attempt to bait and switch. The bait and switch is conducted by convincing one to invest, and not fulfilling any of the oral promises made to the investors. This constitutes material omission of material fact and/or actionable deceit. Plaintiffs (or any reasonable investor) needed to know this information before investing in these Reliant life settlements, and which Defendants purposely, in deceit or in gross negligence, did not disclose. Plaintiffs would not have invested had they known the truth that was deprived them here that they could not get their money back at any time. This constitutes intent to deceive as well as being a regulatory violation, negligence, and breach of fiduciary duty.

279.   SANSOUCY is or was one of the higher-level administrator of the Reliant-PFSI enterprise. GRADY and KLEINFELD are believed to be unlicensed point men and control persons for the enterprise. They are fully aware of what is happening, and all the things alleged above. They are continuing to carry out the deception and without them, the enterprise could not continue. They are involved in all activities of the enterprise since nearly the beginning of its existence and are fully aware of all allegations set forth in this complaint.

**SECOND AMENDED COMPLAINT**

280.  BORCHERT masquerades as a compliance officer for Reliant Life Shares, LLC but in reality, he is providing protection and cover for all of Reliance wrongful and deceptive activity. He has full knowledge of all the ongoing deception, but continues to operate and assist the RELIANT enterprise carry on the above deceit.

281.  KLEINFELD was the founder of the enterprise or a funder who provided funding and assistance knowing all the wrongful and deceitful conduct that went on as alleged above. He is therefore a perpetrator of the alleged false pretenses and wrongful conduct. Upon information and belief, he has profited off RELIANT. He works behind the scenes for the enterprise. It is alleged upon information and believe that he is not licensed to sell life settlements or securities, but he had been active behind the scenes.

282.  MURPHY has had his hand in all aspects of the above activities. He is alleged to have been a higher level operative and salesperson. In this capacity, he has set policy for Reliant-wide operations and assisted in personally making sales based on false pre-tenses or persons unsuitable for these investments. It is alleged upon information and belief that he is not licensed to sell life settlements but sells them anyway. He was part of the following sales to Plaintiffs, particularly COLEMAN,  GOLDEN and DOUGLASS.

283.  Each act of wrongdoing, fraud, or negligence noted above, and which makes up the causes of actions could not be discovered with reasonable diligence by Plaintiff Investors prior to investing, nor was it even possible or capable of being discoverable under the circumstances whereby, Defendants hid these things as they did. Equity applies to any possible running of the statute of limitations in cases such as this where Defendants keep acting as if they will "make it right" or make good on their promises. That is a guise and only continues the course of deceit. This gave investors the false impression that something was happening when it was not. In addition, the parties entered into negotiations with each other through their attorneys, or attorneys that represented their interest, such that at the time the suit was filed, the statute of limitations was tolled by agreement or implied agreement of the parties. By reason of equity and fairness, the court should declare and /or permit this action to proceed. Of course,

because of the continuing nature of this case and because the company continues to operate, and there was a business relationship right up to the filing of this suit as between Plaintiffs and Defendants, the Court should find no statute of limitation issue. Also, because this is a program that needs to be shut down as it continues every day, injunctive relief is not affected by any statute of limitation. Nor does the statute of limitations apply to matters where breaches of contracts and violations are continuing.

284.  Part of the deceit is that many of the high-level persons who are creating, administering, conducting oversight of the sale of the investment to Plaintiffs were not licensed as life agents, and none of them are registered as having security licenses. Also, the Reliant Defendant entities that are creating and syndicating the life settlements set forth herein and sold to Plaintiffs were and are not properly registered or licensed with the Department of Insurance. Therefore, all sales are not authorized and therefore must be set aside. This is another reason why there is a breach of contract, why rescission is appropriate, why these investments should not have been sold, and why the companies associated with them should be shut down or enjoined from further activity. It is a deceit and fraud to characterize or even imply that these insurance policies became owned by Plaintiff investors, which is what Plaintiff Investors were led to believe.

285.  If any of the named parties in this cause of action are not considered sellers, they are nonetheless liable pursuant to California Corporations Code sections 25504 and 25504.1.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

286.  This is a class action on behalf of persons or entities who purchased or otherwise acquired investments (also called securities) from Defendants (the "class."). Plaintiff Investors seek to recover comprehensive damages caused by Defendants' violation of all causes of action especially the violations of Civil Code 1770 et seq.

287.  Plaintiff brings this action as a class action. The class includes persons, trusts, or entities who purchased a life settlement investment (also called securities) from any Defendant named herein (the "class."). It is believed and alleged that all the Defendants

named herein are in some way related to "Reliant" or purposely pawned off from Reliant or came from its formal or informal network, but it will take discovery to obtain the full details. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest. Excluded also are any entities or persons not associated or identified with "Reliant" or its network or came from "Reliant" or its network.

288.  The members of the Class are so numerous that joinder of all members is impracticable. The exact number of Class members is unknown to Plaintiff at this time. They can be ascertained only through appropriate discovery. Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

289.  Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of laws and causes of action set forth herein.

290.  The Representative Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

291.  Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.  Whether Defendants' acts as alleged against the law;

b.  Whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

c.    Whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

d.    Whether the Individual Defendants caused the Company to issue false and misleading statements during the Class Period;

e.    Whether Defendants acted knowingly or recklessly in issuing false and misleading statements during the Class Period;

f.    Where the money went and what assets are viable

g.    Whether the members of the Class have sustained damages and, if so, what is the proper measure of damages?

h.    Whether injunctive relief is necessary for the benefit of all and the public.

292.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be little difficulty in the management of this action as a class action.

**FIRST CAUSE OF ACTION**
**VIOLATION OF CORPORATE CODE §§ 25401 & 25501**
**(AGAINST RELIANT LIFE SHARES LLC aka RELIANT CAPITAL.;**
**PRINCIPLE FINANCIAL SERVICES, INC.; RLS FINANCIAL SERVICES,**
**INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN**
**DAVENPORT; LARRY BAGBY; MARK SANSOUCY; LARRY TUPLER;**
**VINCENT BOVINO; ANDREW MURPHY)**

293.   PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

**SECOND AMENDED COMPLAINT**

294.  This cause of action refers to the above-named DEFENDANTS listed in the title to this cause of action.

295.  DEFENDANTS, by reason of the of above mentioned facts as set forth in the General Allegations and contained in allegations subsequently helped sell, are selling, or sold PLAINTIFFS securities in violation of Corp. Code § 25401, which prohibits offers or sales of securities including investment opportunities by means of a written or oral communication that contain: "Untrue statement[s] of a material fact or omits to state a material fact necessary in order to make the statement[s] made, in light of the circumstances under which they were made, not misleading."

296.  Since the investment requires premium payment in which there is still an obligation that alleviates any statute of limitation problem, the sale is not final.

297.  The areas of untrue statements, concealment and or violations that also go to the elements of fraud, breach of fiduciary duty, and wrongdoing, include all the items set forth in all the paragraphs up to this one, incorporated by reference as though full set forth hereat and at the following:

    a.  DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, BOVINO, SANSOUCY, and DAVENPORT failed to describe the various aspects of this investment to Plaintiffs that made it unsuitable or not in his best interest like continuing premium calls, the possibility the insured may live longer than Plaintiffs, and the inability of heirs to inherit without the premium obligations that could render the entire investment worthless or lost.

    b.  DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, BOVINO, SANSOUCY, and DAVENPORT represented to Plaintiffs that the above-mentioned RELIANT investments were equivalent to the viatical investments that Warren Buffett and Bill Gates have bought or buy on the open market. This is further explained in the General allegations of the complaint but it is even more deceptive and false when DEFENDANTS failed to describe some of the horrors of similar investments like this that failed namely the

**SECOND AMENDED COMPLAINT**

Oxford Financial and Pacific West ones, and further by not describing defendant's involvement in shady activities and a shadow industry as set forth in the Gloria Wolk's declaration attached hereto.

c. DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, BOVINO, SANSOUCY, and DAVENPORT, as part of the sale to Plaintiffs, represented that RELIANT investments were better than a stock market in order to convince Plaintiff Investors to invest.

d. DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, BOVINO, SANSOUCY, and DAVENPORT did not properly portray the statistics to Plaintiffs before entering a sale with him. This would be information about pending suits, prior suits, prior investor returns, overall returns, a record of complaints about the Premium, and reviews. These statistics are a material omission, which would have assisted Plaintiffs in appreciating how inaccurate RELIANT had been in meeting its life expectancy estimates. Other statistics include how many other investors made money, how many investors bailed out before having to pay premiums, what was the average rate of return for all investments for the previous decade, and similar statistics.

e. DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, BOVINO, SANSOUCY, and DAVENPORT failed to advise they were untrained, inexperienced, incompetent, unlicensed and unregistered with the federal government or the state. This is a material omission that Plaintiffs were not afforded the opportunity to evaluate. As a result, they did not know that he was a victim of an unregulated sales force that could use hard sales tactics and could ignore concepts such as "knowing your customer" and the obligation of securities professionals to conduct themselves with high honor and observe just and equitable principles of trade.

f. DEFENDANT RELIANT, with the input of DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, BOVINO, SANSOUCY, and

**SECOND AMENDED COMPLAINT**

DAVENPORT created a website which contained false information that Plaintiffs relied on. One such false information is that the l life settlement investments offered by RELIANT gives the investor "the flexibility of this account allows investors to withdraw their money any time without penalty." Other Investors will testify they were told by MURPHY, GRADY, ROY, UNDERWOOD, and TUPLER that they could get their money back at any time albeit they would lose the upside of this investment. Plaintiffs tried to get the money back, to no avail. Therefore, the statement above is false and a misrepresentation.

g.   DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, and TUPLER, in making the sale to Plaintiffs, failed to give them the specific rate of return likely based upon RELIANT's previous ten-year history and other things and otherwise glossing over the rate of return and glossing over the fact that their investments lacked liquidity and diversity (being captive to only RELIANT selected life settlements). Failure to give this information is a material omission of a material fact that is necessary for an investor to make a decision to invest in these products.

h.   DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, BOVINO, SANSOUCY, and DAVENPORT failed to disclose the directors, officers, partners, members, or trustees of the issuer of these investments, as required by law. This is another material omission that Plaintiffs were not provided, which they needed to make a reasonable investment decision.

i.   DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, BOVINO, SANSOUCY, and DAVENPORT failed to advise Plaintiffs, as part of the sale, that the President of RELIANT or the person occupying an important role, GRADY, was a disbarred lawyer.

j.   DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, BOVINO, SANSOUCY, and DAVENPORT failed to provide proper audited

reports, as required by law, and needed to understand the investment. This is another material omission that Plaintiffs were not provided, which they needed to make a reasonable investment decision.

k. DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, BOVINO, SANSOUCY, and DAVENPORT failed to advise of fellow investors' names and contact information as required.

l. DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, BOVINO, SANSOUCY, and DAVENPORT failed to advise Plaintiffs of terms of how the insurance premiums operated and when they would likely go into effect and the consequences of a limited reserve fund.

m. DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, BOVINO, SANSOUCY, and DAVENPORT failed to advise that they allowed persons to invest that did not meet the minimum net worth requirements, which made the investment riskier, because if other investors did not have the net worth, they could put the investments at risk if they did not pay their fair share. This is another material omission that Plaintiffs were not provided, which they needed to make a reasonable investment decision.

n. DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, TUPLE, BOVINO, SANSOUCY, and DAVENPORT covered up important details, even though these details were requested through the filing of this complaint. This is another material omission that Plaintiffs were not provided, which they needed to make a reasonable investment decision.

o. DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, BOVINO, SANSOUCY, and DAVENPORT orchestrated and manipulating false, deceptive, or less than complete reviews and ratings on their website. This is another material omission that Plaintiffs were not provided, which they needed to make a reasonable investment decision.

**SECOND AMENDED COMPLAINT**

p.  DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, and TUPLER failed to disclose their policy of preventing investors knowledge of each other and thwarting transparency. This is another material omission that Plaintiffs were not provided, which they needed to make a reasonable investment decision.

q.  DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, and TUPLER did not advise or disclose their policy of letting people get out of the investment. They allowed some out and refused others to get out. This is another material omission that Plaintiffs were not provided, which they needed to make a reasonable investment decision.

r.  DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, BOVINO, SANSOUCY, and DAVENPORT told Plaintiff Investors words to the effect that the risk of a premium call was close to zero or just about nil and that a very high percentage of the policies pay out on time. This is another material omission that Plaintiffs were not provided, which they needed to make a reasonable investment decision.

s.  DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, BOVINO, SANSOUCY, and DAVENPORT supplied Plaintiffs with materials. One of the materials stated, "The history of actual maturities of life settlement policies shows that, like a bell curve, approximately half of all policies mature before the estimated life expectancy date, and another half after". This statement applies to investors that RELIANT had the same performance when it did not. This was a misrepresentation that DEFENDANTS allowed to happen.

298.  DEFENDANTS sold fractional life settlements by making false and misleading statements as set forth above and subsequently. DEFENDANTS knew or should have known that the statements were false and/or that they were concealing material facts. DEFENDANTS knew or should have known that there were important facts that needed to be known to make a proper informed decision on the investments. As a result, the

investments were portrayed in a false light and Plaintiffs did not have sufficient material facts to make an informed decision.

299.  DEFENDANTS intentionally failed to describe the investment truthfully especially when describing how debilitating the premiums can become as the insured ages, and how the rising premiums affects the rate of return, and that premiums are still required if the investment is passed to the heirs. Also, the history, culture, and illegal nature of the sales force and the unregistered, unqualified nature of the stock are all things that needed to be disclosed that were not.

300.  Selling securities and/or an investment opportunity like this under these false pretenses or while omitting material facts is a deception and involved misrepresentation of material facts in violation of the law and as describe in the general allegations of this complaint. PLAINTIFFS contributed money to DEFENDANTS thinking they had made an investment that would perform better as explained but it did not because it was falsified due to DEFENDANTS' misstatements, deceit, and/or the unsupervised deceit of the salesforce.

301.  All DEFENDANTS listed above knew that they were part of an organization which sold PLAINTIFFS the product while knowing all the above deficiencies and nuances which they did not disclose or explain fully. They were all acting in the course and scope of their employment with RELIANT or PFSI. All the above and more from the general allegations constitutes material omissions of material fact sand/or actionable deceit perpetrated by all of the named Defendants in the title of this cause to action. Plaintiffs (or any reasonable investor) needed to know this information to invest in these Reliant life settlements, and which Defendants purposely, in deceit or in gross negligence, did not disclose. Each new premium payment is a new investment which required the same full disclosure, registration, and care which was not provided, making the deceit and violations continue year after year, and are still continuing at this time Plaintiffs would not have invested had they known the truth that was deprived them here.

This constitutes intent to deceive as well as being a regulatory violation, negligence, and breach of fiduciary duty.

302.  PLAINTIFFS relied upon the above to make these investments. The reliance was reasonable and justified based upon their circumstances.

303.  By reason of the above, PLAINTIFFS are entitled to rescission and damages, and or the damages set forth in Civil Codes sections 25501 or 25501.5, or according to all remedies available by law.

304.  If any of the named parties in this cause of action are not considered sellers, they are nonetheless liable pursuant to California Corporations Code Sections 25403, 25504 and 25504.1, by reason of them being controlling broker dealers or materially assisting in the above violations.

305.  DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFF and constitutes oppression, fraud, and malice such that punitive damages are appropriate, and hereby requested under either Civil Code 3294 or 3345 or both.

306.  PLAINTIFFS seek all damages allowed by law for the above-described wrongdoing including costs of suit, investigation, and attorneys' fees.

307.  PLAINTIFFS seek attorney fees as it is provided by the parties' contract and also by statute.

### SECOND CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY
**(AGAINST RELIANT LIFE SHARES LLC aka RELIANT CAPITAL; PRINCIPLE FINANCIAL SERVICES, INC.; RLS FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY; ANDREW MURPHY, LARRY TUPLER; JOEL KLEINFELD; VINCENT BOVINO; DOES 1-10)**

308.  PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

309.  This cause of action refers to the above-named DEFENDANTS listed in the title to this cause of action.

310.  DEFENDANTS, above listed, had a fiduciary duty as the operators of RELIANT or PFSI, which were in charge of an ongoing operation, which RELIANT and PFSI took on, represented it would provide top quality reservices and run the company efficiently for the investors' benefit. ROY, TUPLER, UNDERWOOD, DAVENPORT, BOVINO, BAGBY, BORCHERT, and SANSOUCY had a fiduciary duty to PLAINTIFFS as sellers of a security product as PLAINTIFFS were retail investors. California makes it clear that sellers of securities have fiduciary duties. The leading case is *Duffy v. Cavalier*. Also, RELIANT and PFSI have fiduciary duties as sellers and operators as well.

311.  This product was not suitable for these PLAINTIFF INVESTORS. It was a violation of DEFENDANTS' fiduciary duty to put their own economic interest to make money over the best interest of the customers. There was an over concentration of PLAINTIFFS' assets in RELIANT products based on PLAINTIFFS' net worth. This eliminated proper diversity or the ability of the investor to have money set aside to pay premiums. This eventually became a hardship for PLAINTIFFS, a matter that the PLAINTIFFS should have been better informed of. DEFENDANTS were also in a conflict-of-interest situation that was not fully advised.

312.  Under the circumstances the DEFENDANTS wrongfully took PLAINTIFFS' money. The money became illiquid. PLAINTIFFS would not have consented to their money being taken had they known all the facts and the full truth about this investment. PLAINTIFFS were tricked and became the subject of undue influence by DEFENDANTS. DEFENDANTS did not obtain sufficient informed consent because they did not make full disclosures. Fiduciaries have a duty not to make a sale when the situation presents as stated above. DEFENDANTS did so anyway because it served their own financial interests.

313.  Selling securities and/or an investment opportunity like this under these false pretenses or while omitting material facts is a deception and involved misrepresentation

of material facts in violation of the law. PLAINTIFFS contributed money to DEFENDANTS thinking they had made an investment that would perform better than it was capable of performing because of DEFENDANTS' misstatements, concealment, deceit, and/or unsupervised negligence which all violate fiduciary duties. DEFENDANTS are less than candid not to explain how monies are distributed from paid out death benefits when one investor loses the investment when that investor's premiums were not paid. This portion of the payout does not appear to go to the other investors. Not explaining this is a lack of material disclosure and if this portion of the payout goes to benefit the DEFENDANTS, or RELIANT, that is a conflict of interest. Not explaining this is a lack of material disclosure and is a further breach of its fiduciary duty and a conflict of interest.

314.  Defendant KLEINFELD held a fiduciary duty because he operated and owned the entire organization.

315.  Incorporated by reference as though fully set forth herein are many of the untrue statements, concealments, and violations that have been alleged before and may be alleged after, which include but are not limited to the following:

   a.  DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, BOVINO, SANSOUCY, and DAVENPORT failed to describe the various aspects of this investment to Plaintiffs that made it unsuitable or not in his best interest like continuing premium calls, the possibility the insured may live longer than Plaintiffs, and the inability of heirs to inherit without the premium obligations that could render the entire investment worthless or lost.

   b.  DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, BOVINO, SANSOUCY, and DAVENPORT did not properly portray the background information to Plaintiffs before entering a sale with them. This would be information about pending suits, prior suits, prior investor returns, overall returns, a record of complaints about the Premium calls, and any negative reviews. This is a omission of material facts, which would have assisted Plaintiffs

88

**SECOND AMENDED COMPLAINT**

in appreciating how inaccurate RELIANT had been in meeting its life expectancy estimates. Other statistics not provided to Plaintiff Investors include how many other investors made money, how many investors bailed out before having to pay premiums, what was the average rate of return for all investments for the previous decade, and similar statistics.

c. DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, TUPLER BOVINO, SANSOUCY, and DAVENPORT failed to advise they were unlicensed and unregistered with the federal government or the state. This is a material omission that Plaintiffs were not afforded the opportunity to evaluate. As a result, they did not know that he was a victim of an unregulated sales force that could use hard sales tactics and could ignore concepts such as "knowing your customer" and the obligation of securities professionals to conduct themselves with high honor and observe just and equitable principles of trade.

d. DEFENDANT RELIANT, with the input of DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, BOVINO, SANSOUCY, and DAVENPORT created a website which contained false information that Plaintiffs relied on. One such false information is that the life settlement policies offered by RELIANT gives the investor "the flexibility of this account allows investors to withdraw their money any time without penalty." Other Investors will testify they were told by MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, BOVINO, SANSOUCY, and DAVENPORT that they could get their money back at any time albeit they would lose the upside of this investment. Plaintiffs tried to get the money back, to no avail. Therefore, the statement above is false and a misrepresentation.

e. DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, BOVINO, SANSOUCY, and DAVENPORT in making the sale to Plaintiffs, failed to give them the specific rate of return likely based upon RELIANT's previous ten-year history and other things and otherwise glossing over the rate of

return and glossing over the fact that their investments lacked liquidity and diversity (being captive to only RELIANT selected life settlements). Failure to give this information is a material omission of a material fact that is necessary for an investor to make a decision to invest in these products.

f. DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, BOVINO, SANSOUCY, and DAVENPORT failed to disclose the directors, officers, partners, members, or trustees of the issuer of these investments, as required by law. This is another material omission that Plaintiffs were not provided, which they needed to make a reasonable investment decision.

g. DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, BOVINO, SANSOUCY, and DAVENPORT failed to advise Plaintiff Investors, as part of the sale, that the President of RELIANT or the person occupying an important role, GRADY, was a disbarred lawyer.

h. DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, BOVINO, SANSOUCY, and DAVENPORT failed to provide proper audited reports, as required by law, and needed to understand the investment. This is another material omission that Plaintiffs were not provided, which they needed to make a reasonable investment decision.

i. DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, BOVINO, SANSOUCY, and DAVENPORT failed to advise of fellow investors' names and contact information as required, so Plaintiff Investors could contact each other.

j. DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, BOVINO, SANSOUCY, and DAVENPORT failed to advise Plaintiffs of terms of how the insurance premiums operated and when they would likely go into effect and the consequences of a limited reserve fund.

k. DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, BOVINO, SANSOUCY, and DAVENPORT failed to advise that they allowed

persons to invest that did not meet the minimum net worth requirements, which made the investment riskier because if other investors did not have the net worth, they could put the investments at risk if they did not pay their fair share. This is another material omission that Plaintiff Investors were not provided, which they needed to make a reasonable informed investment decision.

l.  DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, TUPLER, BOVINO, SANSOUCY, and DAVENPORT covered up important details, even though these details were requested through the filing of this complaint. This is another material omission that Plaintiffs were not provided, which they needed to make a reasonable investment decision.

m.  DEFENDANTS MURPHY, GRADY, ROY, UNDERWOOD, BOVINO, SANSOUCY, and DAVENPORT did not advise or disclose their policy of letting certain investors get out of the investment and not allowing others to get out. This is another material omission that was Plaintiff Investors were not provided, which they needed to make a reasonable investment decision.

316.  All DEFENDANTS listed above knew that they were part of an organization which sold PLAINTIFFS the product all while knowing the above deficiencies and nuances which they did not disclose or explain fully. They were all acting in the course and scope of their employment with RELIANT or PFSI. All the above and more from the general allegations constitutes material omissions of material fact sand/or actionable deceit perpetrated by all of the named Defendants in the title of this cause to action.

317.  PLAINTIFFS were harmed because of the above-mentioned reasons as set forth in the General Allegations section of this complaint and in subsequent allegations. PLAINTIFFS investments are now illiquid and Plaintiff Investors are forced to sell at a distressed sale or lose their investment. By reason of the above-described breach of fiduciary duty, DEFENDANTS have caused substantial harm to PLAINTIFFS INVESTOR. Each new premium payment is a new investment which required the same

full disclosure, registration, and care which was not provided, making the deceit and violations continue year after year, and are still continuing at this time.

318.  PLAINTIFFS suffered from pain, suffering, and mental anguish for which reimbursement is sought.

319.  DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFFS, and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested under either Civil Code 3294 or 3345 or both.

320.  PLAINTIFFS seek all other damages allowed by law for the above-mentioned wrongdoing including costs of suit, investigation, and attorneys' fees.

321.  PLAINTIFFS seek attorney fees as it is provided by the parties' contract and also by statue.

### THIRD CAUSE OF ACTION
### CONVERSION
**(AGAINST RELIANT LIFE SHARES LLC aka RELIANT CAPITAL; PRINCIPLE FINANCIAL SERVICES, INC.; RLS FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; ANDREW MURPHY, MARK SANSOUCY; LARRY TUPLER; VINCENT BOVINO; DOES 1-10)**

322.  PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

323.  This cause of action refers to the above-named DEFENDANTS listed in the title to this cause of action.

324.  DEFENDANTS, listed above, engaged in a course of conduct as described above that swindled and/or was not appropriate for INVESTORS out of their money. Presently, PLAINTIFFS' investments are lost to their immediate use for all of the reasons above and subsequently alleged.

325.  PLAINTIFFS were told by DEFENDANTS that PLAINTIFFS could get a total refund of their investment, including fees and surrender charges. TUPLER told some

PLAINTIFFS he could not do it in two weeks' time, but thirty days' time would not be a problem. TUPLER was asked to put that in writing, he did put it in writing, but did not perform on his promise. PLAINTIFFS have demanded the money back to no avail. Several PLAINTIFFS have never received any money back pursuant to this promise by TUPLER.

326.   MURPHY and ROY are stealing from Plaintiff as exemplified in the Douglass case where he is asked to give hundreds of thousands of dollars while he is in a demented state. He needs the money to live on when this money becomes immediately unavailable and subject to total loss of premiums not paid and/or Reliant goes under. He is giving money to RELIANT as well as other investors who do not want to pay their premiums or cannot afford to pay their premiums. This is tantamount to theft. Like the other Plaintiff investments, this is taking of property without permission or consent. There cannot be consent when the truth is not revealed and full disclosure is not made.

327.   In addition, if premiums are not paid by one or more parties, it puts stress on the investment. No one has disclosed how the premium situation is handled if a person cannot make their payment. This is tantamount to theft by swindle, and conversion.

328.   PLAINTIFFS seek all other damages allowed by law and/or the return of the money.

329.   DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFFS, and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested.

**FOURTH CAUSE OF ACTION**
**NEGLIGENCE/GROSS NEGLIGENCE**
**(AGAINST RELIANT LIFE SHARES LLC aka RELIANT CAPITAL; PRINCIPLE FINANCIAL SERVICES, INC.; RLS FINANCIAL SERVICES, INC.; RLS FINANCIAL SERVICES, INC.; SCOTT GRADY; BRENT BORCHERT; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; MARK SANSOUCY; LARRY TUPLER; LARRY BAGBY; JOEL KLEINFELD; ANDREW MURPHY; VINCENT BOVINO; DOES 1-10)**

SECOND AMENDED COMPLAINT

330.  PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

331.  This cause of action refers to the above-named DEFENDANTS listed in the title to this cause of action. Each Defendant above was either a salesmen who committed negligence by giving out incomplete, false, or inaccurate information about this investment or is a person or entity in charge of training, supervising, and training salespersons how to sell even if it means committing wrongful conduct and making false promises. The latter would include BORCHERT who was a compliance officer in charge of seeing that rules, regulations, and proper communication and information is made to investors. GRADY also fits into this category as he was in charge of BORCHERT and others and made training and marketing decisions that included incomplete, deceptive, and improper material and information so people could make false statements if encouraged a sale. The same is true with MARK SANSOUCY, who was an executive officer who oversaw and ratified the above and Reliant's and PFSI's business model as explained in the General Allegations of this Complaint. The same is said again with JOEL KLEINFELD who had ownership in Reliant. The same is said once again with ANDREW MURPHY who was the president and CEO of the company who was an executive officer who oversaw and ratified the above and Reliant's and PFSI's business model as explained in the General Allegations of this Complaint

332.  DEFENDANTS, listed above, were negligent for the reasons mentioned above because they failed to engage in conduct up to industry standards while selling securities to PLAINTIFFS. In fact, what was done was so extreme that it constitutes gross negligence. This investment should not have been sold to these PLAINTIFFS for all of the reasons set forth subsequently and for all of the reasons set forth in the general allegation section of this complaint. The cumulative violations contribute to making this a negligent or grossly negligent operation, activity, and endeavor. DEFENDANTS

94

**SECOND AMENDED COMPLAINT**

carried out their negligence in association with each other, compounding the negligence. Each new premium payment is a new investment which required the same full disclosure, registration, and care which was negligently not provided and deprived Plaintiff of sufficient knowledge.

333.  The first part of the brief includes numerous incidents of negligence on the part of the sales force, conveying inaccurate information. This is repeated because it is incorporated by reference.

334.  In addition as to GRADY, BORCHERT, ROY, UNDERWOOD, DAVENPORT, SANSOUCY, TUPLER, BAGBY, KLEINFELD, MURPHY, and BOVINO committed acts of negligence pertaining to them and their higher role, including the failure to supervise the false information but also engaging in a course of conduct to hide reviews, hide history of the company, the innerworkings of the company, the fact that GRADY was a disbarred attorney, the fact that GRADY and MICHAELS were using Reliant as their personal piggy bank, and the fact that Reliant and PFSI were taking advantage of investors. These are incorporated by reference from allegations throughout this Complaint.

335.  GRADY, BORCHERT, ROY, UNDERWOOD, DAVENPORT, SANSOUCY, TUPLER, BAGBY, KLEINFELD, MURPHY, and BOVINO were negligent in seeing that suitability standards were not developed and/or enforced. Suitability is a State and Federal requirement in the sale of securities and consistent with California Corporate Code 25102(q)(3)(B). These people were further negligent in failing to file audit reports and otherwise followings laws cited earlier in this complaint and contained in Corp. Code §25102(q).

336.  As a result of the abovementioned acts of the DEFENDANTS, PLAINTIFFS bought this investment when they would not have had they had the correct knowledge and information. They would not have suffered the losses of their investments, property, money, and expenses necessary to get this money back.

337.  As a result of the above acts, PLAINTIFFS claim general damages for mental and emotional distress, pain, and suffering, caused by DEFENDANTS subject to proof at the time of trial.

338.  DEFENDANTS' conduct was a substantial factor in causing PLAINTIFFS harm as described above. PLAINTIFFS seek reimbursement for the costs and expenses of having to handle, figure out and recover these investments, including legal fees incurred for having to do so.

339.  PLAINTIFFS seek all other damages allowed by law for the above-mentioned wrongdoing including costs of suit, investigation, attorneys' fees, and especially the value of the loss of their investments.

340.  Plaintiffs seek attorney fees as it is provided by the parties' contract and also by statue.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF CORPORATE CODE § 25503**
**(AGAINST RELIANT LIFE SHARES LLC aka RELIANT CAPITAL; ANDREW MURPHY; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY; LARRY TUPLER; VINCENT BOVINO; DOES 1-10)**

341.  PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

342.  This cause of action refers to the above-named DEFENDANTS listed in the title to this cause of action.

343.  The above- mentioned facts show that DEFENDANTS, above listed, have not met all of the conditions of Corporations Code 25102(q) and/or were in violation of other provisions of state and federal law requiring registration of securities. DEFENDANTS claim exemptions that are not applicable because they never provided investors, among other things, the audit as required by Corporations Code § 25102(q)(3)(e), and failed to

96

adequately disclose the premium payments pursuant to Corporations Code § 25102(q)(3(o) and other provisions such as Corporate Code § 25102(q) as alleged in the General Allegations of this complaint. This makes Defendants liable under Corporate Code § 25503. Each new premium payment is a new investment, which requires the same full disclosure, registration, and care that was not provided, making the deceit and violations continue year after year, which is still continuing at this time.

344.  For it was below the standard of care for a seller to sell unregistered securities in this manner. When an unregistered security is sold, the transaction must be unwound, and rescission be mandated and or damages allowed.

345.  By reason of the above, DEFENDANTS are liable to PLAINTFF INVESTORS and PLAINTFF INVESTORS are entitled to rescission or damages for violating the allegations of this cause of action pursuant to Corporate Code Section 25503 and/or related sections and provisions of the law.

346.  PLAINTIFFS seek attorney fees as it is provided by the parties' contract and also by statute.

**SIXTH CAUSE OF ACTION**
**VIOLATIONS OF CORPORATIONS CODE; and C.C.P. § 1029.8**
**(AGAINST DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY)**

347.  PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

348.  DEFENDANT GRADY holds himself out as the face of RELIANT and is in charge of the investment and salesforce for RELIANT. The Salesforce reports to GRADY, and as such, GRADY is the primary or actual seller of investment products sold to PLAINTIFFS. The salesmen who sold these investments to PLAINTIFFS acted as agents for GRADY, and GRADY had a personal financial interest in each sale. By reason of the above and general duties of GRADY, it is alleged that the activities and

97

interrelationship with sales and the downline salesforce made GRADY engaged in activity considered, "enter[ing] into broker[ing] or soliciting life settlements," which requires a person to have an insurance license. See Insurance Code § 1013.2. Grady was unlicensed not only as a securities person or a broker-dealer but also not a licensed insurance agent. Therefore he was not able to sell the life settlement products like the products sold to Plaintiffs. Grady was behind every sale as previously alleged and prepared the marketing materials, trained the sales staff, and was in charge of supervision. He was touted as the head salesperson by the sales staff to the customer, known as the head salesperson among the sales staff, and would talk to customers from time to time. He would set the terms of each sale. For all of these reasons, he was the head salesman of the entire Reliant and PFSI organizations. Unfortunately, he was doing this without any proper license. The above is a violation of California Code of Civil Procedure §1029.8, not only for not having a security license but also for not having an insurance license.

349.  California Code of Civil Procedure §1029.8 states, "unlicensed persons who cause injury or damage... as a result of providing goods or services for which a license is required... shall be liable to the injured person for treble the amount of damages..." Had Plaintiffs dealt with a licensed person instead of unlicensed individuals such as Defendants, Plaintiffs would have been provided with investor protections and full disclosures of material facts, or Plaintiffs would not have invested. Also, reputable licensed persons are trained to not put people in risky securities and investments. Even if that were not the case, sales by unlicensed persons render sales void according to the above-quoted law and therefore justify rescission.

350.  GRADY sold the above-mentioned products to Plaintiffs which he would not have done if licensed. He also was not permitted to sell this product under the methods of sale used by him bot being licensed. Either way, GRADY caused the loss to Plaintiff by allowing these sales that should not have happened.

351.  By reason of the above, the remedy is rescission of all monies paid.

**SECOND AMENDED COMPLAINT**

352.  In the alternative, Plaintiffs seek all damages allowed by law by reason of Defendants acting as brokers, being unregistered, and selling in the way mentioned above.

353.  Plaintiffs seek treble damages, which is requested for each sale made without a license.

354.  Defendants' conduct was in reckless disregard for the rights and safety of Plaintiffs and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested under either Civil Code 3294 or 3345 or both.

355.  Plaintiffs seek all damages allowed by law.

## SEVENTH CAUSE OF ACTION
## FRAUD
**(AGAINST RELIANT LIFE SHARES LLC aka RELIANT CAPITAL; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; ANDREW MURPHY; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; DOES 1-10)**

356.  PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

357.  This cause of action refers to the above-named DEFENDANTS listed in the title to this cause of action.

358.  DEFENDANTS', above-listed, conduct was fraudulent because not all the necessary information was provided, and what was provided was not truthful or complete. All this has been outlined before. There was omission of material facts and misrepresentation of material facts. There was material concealment as well. All the allegations set forth earlier are re-alleged as though fully set forth hereat. DEFENDANTS sold PLAINTIFFS a product that was inappropriate for these investors, Plaintiffs based upon misrepresentation.

359.  DEFENDANTS also provided and sold these products to PLAINTIFFS as investments that DEFENDANTS knew could not do what was claimed and was less attractive than represented especially as set forth in the General Allegation where DEFENDANTS represented these fractionalized life settlements as the same or equivalent to the kind of viatical investments Warren Buffett and Bill Gates bought and provided a guaranteed profit. See Exhibit 2. This amounts to intentional misrepresentation and based on this and other matters set forth in the general allegations constitutes a false promise. DEFENDANTS did not intend that the product they were providing would meet PLAINTIFFS' needs or was suitable for them, yet DEFENDANTS sold the product as if it would with knowledge that it was inadequate.

360.  These DEFENDANTS also failed to advise this was a poor vehicle for a retirement investment because it placed a burden on retirees, or their heirs to pay the continuing premium something that would make the investment expensive to carry for PLAINTIFF Investors or their heirs. It is also a purposeful deception and lack of disclosure not to be able to quantify the inadequacy of the life expectancy reserves. Not to be able to provide personal health information of the insured and not to have provided other essential information like information of the policy and the legitimacy of the premiums.

361.  Each new premium payment is a new investment which required the same full disclosure, registration, and care which was not provided, making the deceit and violations continue year after year, and are still continuing at this time

362.  PLAINTIFFS reasonably relied upon DEFENDANTS' promises and representation.

363.  DEFENDANTS did not keep their promises. DEFENDANTS gave PLAINTIFFS a sub-standard product and sub-standard service. In fact, DEFENDANTS sold what they knew was inappropriate, unsuitable, onerous, and deceptive to PLAINTIFFS.

364.  PLAINTIFF INVESTORS were harmed.

**SECOND AMENDED COMPLAINT**

365.  PLAINTIFF INVESTORS' reliance on DEFENDANTS' promise was a substantial factor in causing the present harm.

366.  PLAINTIFF INVESTORS suffered pain, and mental anguish as a result of the above.

367.  By reason of the above-mentioned conduct. PLAINTIFFS are entitled to treble damages and attorneys' fees and costs in the discretion of the Court, which they request.

368.  DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFFS and constitutes oppression, fraud, and malice and justifies punitive damages under either Civil Code 3294 or 3345 or both.

369.  PLAINTIFFS seek all damages available by law.

370.  PLAINTIFFS seek attorney fees as it is provided by the parties' contract and also by statute.

## EIGHTH CAUSE OF ACTION
## VIOLATION OF CIVIL CODE §3372
## (AGAINST PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; ANDREW MURPHY; LARRY TUPLER; LARRY BAGBY; MARK SANSOUCY)

371.  PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

372.  This cause of action refers to the above-named DEFENDANTS listed in the title to this cause of action who were all acting as salesmen and providing services covered by Civil Code § 3370.

373.  DEFENDANTS,' above listed, held themselves out as investment advisors, financial advisors, and related terms while selling this to them. DEFENDANTS held themselves out as persons engaged in the business of advising others for compensation and as experts with respect to investments, generally, and particularly in the life settlement space. DEFENDANTS did a poor job and allowed PLAINTIFFS to purchase

101

unsuitable products that were not properly vetted and did not do what they were supposed to do. In particular, DEFENDANTS represented themselves to be an expert with respect to the investment decisions in such life settlement space and implied that they were acting in the capacity of the terms listed in Civil Code §3372 such as financial adviser, financial counselor, or investment adviser. As a result, DEFENDANTS are liable to PLAINTIFFS under that law.

374.   DEFENDANTS obtained compensation as a result of the financial advice rendered to PLAINTIFFS, but they failed to render the financial advice with due care and skill reasonably expected of a person who is an expert as defined by and required by Civil Code §3372. DEFENDANTS were not properly licensed and/or registered to act as an expert, as defined in Civil Code §3372, or as they represented or implied. This is further against the law for which DEFENDANTS are liable.

375.   PLAINTIFFS relied on DEFENDANTS' services and advice to be at a level reasonable expected and set forth in Civil Code §3372. PLAINTIFFS were damaged by reason of PLAINTIFFS' reliance on DEFENDANTS' services in the form of losing his entire principal invested.

376.   DEFENDANTS' services were not rendered with due care as reasonably expected because of the expertise they professed to possess. DEFENDANTS' services were instead rendered through fraud, deceit, dishonesty, ignorance, and/or lack of due diligence. PLAINTIFFS expected DEFENDANTS to render sound financial advice. DEFENDANTS did not.

377.   PLAINTIFFS were to be the recipient of DEFENDANTS' advisory services as defined above by reason of the above-mentioned statue. DEFENDANTS are liable to PLAINTIFFS for the damages caused to PLAINTIFFS to the tune of $5,000,000 or to be determined according to proof at trial.

378.   PLAINTIFFS also requests all damages afforded by law including disgorgement of fees covered by this statue and/or as allowed by law including attorney's fees and costs of suit.

**SECOND AMENDED COMPLAINT**

379.  DEFENDANTS' conduct was in reckless disregard for the rights and safety of Plaintiff and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested under either Civil Code 3294 or 3345 or both.

### NINTH CAUSE OF ACTION
### ACCOUNTING
### (AGAINST RELIANT LIFE SHARES LLC aka RELIANT CAPITAL; SCOTT GRADY; SEAN MICHAELS; DANIEL COOPER)

380.  PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

381.  The above-named DEFENDANTS are fiduciaries for the corporation/LLC Reliant, for all of the reasons set forth above and below.  As alleged above, GRADY and MICHAELS absconded with Corporate assets, and "used the corporate coffers of Reliant as their own personal piggy banks." See *Reliant Life Shares, LLC v. Cooper, supra*. The above-named parties also hold information critical to Plaintiffs' investments for their benefit.

382.  PLAINTIFFS request the full and complete accounting of all records to support the fact that misappropriation of money might explain the lack of services. Also, Plaintiffs request proof of current polices in effect validating and supporting each of the PLAINITFFS' Life Settlement Investments and/or the policy or policies have not lapsed and that RELIANT and UMB BANK and/or the appropriate escrow holders,  are in line to receive the death benefit to support each of the above investments. Plaintiff Investors seek all information maintained by UMB and/or the appropriate escrow holders.

383.  Plaintiff Investors are entitled to this information because the above-named Defendants are fiduciaries or in business as fiduciaries for the policies. As fiduciaries or associates with fiduciaries, they have an obligation to provide information that is only available through them. The right to have an accounting is available when an investor needs the information, when  it is crucial, and no one else possess it. That is this case as

against these Defendants. Accounting on the subject matter of their investment is a normal right of any investor where DEFENDANTS are holding a death benefit for the benefit of another.

384.  Plaintiffs seek an accounting also to obtain all information available including information about policies that have lapsed, payment time left till the next premium, the length of restatement periods, how many times a certain policy has gone into lapse, who paid premiums and when, the date a policy was taken out, prior owners of a policy, the date the insurance policy was converted from term if applicable, all agents of record for insurance, and how many times an insurance company dealt with other policies, for any of the Defendants who were involved in this case.

385.  PLAINTIFFS seek this Court's assistance to assure that there is no "withholding of essential accounting records of Reliant" in the instant case.  See *Reliant Life Shares, LLC v. Cooper, supra* wherein that Court found that Reliant withheld accounting records after being ordered to provide a complete accounting detail.

386.  PLAINTIFFS request the full and complete accounting of all records related to the programs as well as all PLAINTIFFS' transactions as this allows them to obtain the complete picture necessary to understanding their investments in real time and currently.

387.  PLAINTIFFS seek attorney's fees and costs in obtaining a full accounting.

## TENTH CAUSE OF ACTION
## BREACH OF CONTRACT/RESCISSION
### (AGAINST RELIANT LIFE SHARES LLC aka RELIANT CAPITAL; and PRINCIPLE FINANCIAL SERVICES, INC.)

388.  PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

**SECOND AMENDED COMPLAINT**

389.   Defendants RELIANT LIFE SHARES LLC aka RELIANT CAPITAL; and PFSI are refusing to honor various promises and commitments made. When Defendant, or RELIANT, is used in this cause of action it is also referring to PFSI.

390.   Plaintiffs were promised as additional consideration for doing business with RELIANT and PFSI that they would be provided top quality services with transparency and would be available as "maturity" to file a formal death claim with the INS company. See Exhibit 200, Page 12, 13, and 14, respectively.

391.   PLAINTIFFS were promised a guaranteed fixed rate of return (profit) in all of the above-mentioned contracts, but Defendants have not delivered such a product as offered.

392.   Plaintiffs, especially JOSEPH GOODALE as exemplified in Exhibit 30, entered into a contract return of the principle back at any time (without upside). It is also contained in Exhibit 1, Page 1, in writing.

393.   All the promises were common to all contracts given by ROY, UNDERWOOD, TUPLER, UNDERWOOD, BAGBY, and BOVINO, SANSOUCY AND MURPHY. It would be impractical and unnecessary to present each one of these contracts for this complaint so Exhibit 127 is a version of the contract representative of all and Exhibit 130 summarizes all of the different contracts. Exhibit 200 is a brochure of representations representative of all representations made by RELIANT and PFSI.

394.   It is alleged upon information and belief and herein alleged that Plaintiffs were promised the above as additional inducements to purchase their investment.

395.   Each Plaintiff Investor has contracts with RELIANT and PFSI. It is alleged that both are the same entity or use substantially similar contracts. An example of a contract from each entity is attached hereto as Exhibit 126 and 127. A careful review of both contracts show evidence of them being substantially similar contracts. Exhibit 30 is actually from PFSI that shows closing documents of PFSI's that use RELIANT's paperwork. A chart of all contracts between Plaintiffs and Defendants can be seen at

**SECOND AMENDED COMPLAINT**

Exhibit 130. It is not practical to attach every single signed contract entered into by Plaintiff Investors especially since they are substantially the same.

396.  For all the reasons, the details of which are already set forth in this Complaint, there has been a failure of consideration and breach of contract.

397.  DEFENDANTS also breached the contract by not providing the necessary support services to Plaintiff Investors to validate the policies before paying premiums, or to validate the premium amounts due so that Plaintiffs had enough confidence to in good faith pay the premiums allegedly "due."

398.  PLAINTIFFS have fully performed as much as they could and demanded performance from those Defendants to no avail. Therefore, Plaintiffs are excused from further performance. Defendants are not performing their end of the deal. PLAINTIFF requests rescission of each one of their contracts or damages in an amount equal to their investment. The DEFENDANTS who entered into the programs are RELIANT LIFE SHARES LLC aka RELIANT CAPITAL and PFSI.

399.  PLAINTIFFS seek all damages allowed by law for breach of contract. As another alternative, elects to void the contract and seek recission.

### ELEVENTH CAUSE OF ACTION
### BREACH OF APPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (AGAINST RELIANT LIFE SHARES LLC aka RELIANT CAPITAL; PRINCIPLE FINANCIAL SERVICES, INC.; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; MARK SANSOUCY; ANDREW MURPHY; LARRY TUPLER; DOES 1-10)

400.  PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

401.   Plaintiffs entered into contracts of investment to enumerable purchase agreement with RELIANT and PFSI. Exhibit 127 is a purchase agreement attached hereto as representative of the other purchase agreements (contracts) signed and entered into by Plaintiffs and RELIANT/PFSI under the auspices of the salesman that sold them it including but not limited to ROY, UNDERWOOD, TUPLER, UNDERWOOD, BAGBY, BOVINO, SANSOUCY, and MURPHY. It would be impractical and unnecessary to present each one of these contracts for this complaint. Exhibit 130 and Exhibit B are summaries of all the different contracts. The terms of the contract are more specifically set forth in the previous causes of action. As part of the contract, it was standard for RELIANT to orally tell customers, that Plaintiffs as part of the contract, could get their principal back at any time but would not obtain the upside that comes when someone dies. It is alleged upon information and belief and herein alleged that Plaintiffs were promised this as an inducement to purchase their investment bargained for the benefit of the contract. Other investors were promised this as part of their contracts during this same period. These are promised in emails so it is a matter promised in writing.

402.   Each Plaintiff Investor has contracts with RELIANT and PFSI. It is alleged that both are the same entity or PFSI is the alter ego of RELIANT. An example of a contract from each entity is attached hereto as Exhibit 126 and 127. A careful review of both contracts show evidence of them being substantially similar contracts.

403.   In every contract or purchase agreement, there is an implied promise of good faith and fair dealing. This means that each party will not do anything unfairly, will not interfere with another party to receive the benefits of the contract, and will do their part to make sure the other party gets everything they are entitled to receive under the contract.

404.   Plaintiffs were prepared to do everything obligated them under the contract but were excused because Defendants dropped the ball as far as providing information and services, rights, and opportunities required by the contract and necessary to instill the

**SECOND AMENDED COMPLAINT**

confidence necessary for Plaintiffs to pay more money. Failure to do this and provide basic documentation needed to validate the insured status and premium is a violation of the implied promise of good faith and fair dealing.

405.  As noted above, all conditions required for Plaintiffs to perform in the contracts that needed to be performed were performed by Plaintiffs or were excused.

406.  Plaintiffs were harmed by Defendants' conduct that resulted in the loss of Plaintiffs' investment. The contract between Plaintiffs and Defendants was consummated as each has been performed or were excused. However, Defendants did not perform their obligation to make the information known and provide the proper status report on the insured and on the premiums.

407.  The Defendants unfairly interfered with Plaintiffs' right to receive the benefits of the contract by not being available or sharing necessary information to instill confidence for Plaintiff to feel confident to pay additional monies.

408.  Plaintiffs were harmed by DEFENDANTS above-described actions because Plaintiffs deferred payments on premium calls, which in all probability this nonpayment of premiums will result in forfeiture of the investment.

409.  DEFENDANTS' conduct was in reckless disregard for the rights and safety of Plaintiffs and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested under either Civil Code 3294 or 3345 or both.

410.  Plaintiffs seek all damages available by law for this cause of action.

## TWELFTH CAUSE OF ACTION
## UNFAIR COMPETITION AND VIOLATION OF CODE SECTION 17200 et seq.
## (AGAINST RELIANT LIFE SHARES LLC aka RELIANT CAPITAL; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; MARK SANSOUCY; SEAN MICHAELS; DANIEL COOPER)

411.  PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already

alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

412.   This cause of action refers to the above-named DEFENDANTS listed in the title to this cause of action.

413.   DEFENDANTS,' above listed, acted unlawfully, unfairly, and fraudulently in their business and practice consisting of engaging in an unfair business practice. This is running an unregistered broker dealer and/or selling unregistered and unqualified securities without an exemption. Other business have to comply and be a registered broker dealer and sell registered security. It is unfair to let these Defendants fly under the radar that every other broker dealer or business must follow, be registered as a broker dealer when selling security and registering security before selling it at large. This and the other things set forth in this complaint, violates Business and Professions Code 17200 and constitutes unfair business practices.

414.   As a result of this practice, DEFENDANTS have benefited from the use of PLAINTIFFS' money unfairly, which is equivalent to receiving ill-gotten gains. It gives DEFENDANTS an unfair advantage in raising money compared to businesses that obey the law.

415.   It is unfair because it allows DEFENDANTS' businesses to reap the benefit of raising money unfairly from Plaintiffs. This is money that could have gone to legitimate businesses that registered to be a broker-dealer and registered the stock they sold. that could have truly benefited investors and provided a just return to PLAINTIFFS. Instead, PLAINTIFFS money is tied up or lost.

416.   It is further fraudulent because of the specific fraud allegations set forth above that surround the entire enterprise.

417.   There is a direct link between the alleged unfair competition including unlawful, unfair, or fraudulent business practices and being able to sell to Plaintiffs. Defendants' unethical, unfair conduct, and unfair competition tactics resulted to PLAINTIFFS' loss of use of their money and the diminishment of the value of that

money compared to if the money was invested or loaned elsewhere or to legitimate business that registered to be a broker-dealer and registered the stock they sold.

418.   As a further result, PLAINTIFFS have sustained harm due to the DEFENDANTS' actions as described throughout this complaint.

419.   Plaintiffs relied upon the legitimacy, identity, lawfulness, and truthfulness of Defendants' statements and activities to their detriment.

420.   PLAINTIFFS seek all other remedies allowed by law including restoration of lost monies or the value of the loss of monies or money lost including the loss of money PLAINTIFFS would have made if PLAINTIFFS's money was placed in a proper (legal and non-fraudulent) investment, security, or business.

421.   PLAINTIFFS seek restitution to be restored to the status as Plaintiff would have been had their money not been placed in DEFENDANTS' unfair business endeavor.

422.   PLAINTIFFS seek equitable and injunctive remedies including attorney fees necessary to force DEFENDANTS to follow the law or their closure.

423.   PLAINTIFFS seek all damages and relief allowed by law including punitive damages under either Civil Code 3294 or 3345 or both as allowed by law as DEFENDANTS action involved fraud, malice, and oppression.

424.    PLAINTIFFS also requests all damages afforded by law including attorney's fees.

## THIRTEENTH CAUSE OF ACTION
## FINANCIAL ELDER ABUSE (Welfare and Institutions Code § 15600 et seq.)
### (AGAINST RELIANT LIFE SHARES LLC aka RELIANT CAPITAL; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; ANDREW MURPHY; LARRY TUPLER; JOHN STOCKSDALE; GENE GOLDEN; JOSEPH GOODALE; ED BAEZA; PETER J. LOWE)

425.   PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already

alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

426.   As an "elder," within the meaning of Welfare & Institutions Code § 15610.27, JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA were entitled to the heightened rights and special statutory protections provided by California's Elder and Dependent Adult Civil Protection Act ("EADACPA"), set forth in Welfare & Institutions Code § 15600 et sec. Under Welfare & Institutions Code § 15610.30, a person is liable for financial elder abuse or for assisting financial elder abuse if they obtained the elder's property when they knew or should have known that the conduct is likely to be harmful to the elder, including: (1) hiding, taking, retaining, obtaining and/or misappropriating Plaintiff's property, which is what has been alleged, or (2) assisting in doing the above. DEFENDANTS did not limit the sale to just one sale and to one senior; they conducted multiple sales to multiple persons, including: JOHN STOCKSDALE, GENE GOLDEN, ED BAEZA, and PETER J. LOWE. These people did not need investments that might not materialize in their lifetime and would burden them or their beneficiaries or heirs to pay ongoing, multiple, and exorbitant ever rising premiums to keep the investments alive. JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA did not need a policy that would take so long to mature, possibly outliving them without the use of their money for retirement needs. This sale is based on fraud and deceit, wrongdoing, lack of disclosure, and use of undue influence as set forth in the general allegations and prior causes of action. Under the circumstances, it was unconscionable and in bad faith to sell this product to these seniors.

427.   DEFENDANTS RELIANT, GRADY, ROY, UNDERWOOD, MURPHY, and TUPLER's are responsible for selling to JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA. These DEFENDANTS used a predatory and unfair practice employed to take advantage of and unduly influence vulnerable elderly persons for their own financial gain. The above actions of these

DEFENDANTS were purposeful and designed to take advantage of these Plaintiffs instead of protecting them.

428.    The Center for Research at Boston College, Aging Brain, says that older people are particularly susceptible to deception and predatory practices. Many elderly adults (roughly half) suffer from cognitive decline, which impacts financial management skills, results in poor decision-making, leaving them particularly vulnerable to fraudulent marketing tactics.

429.    People who sell securities or investment products such as this one play a critical role in preventing financial abuse of elderly persons. Reputable broker-dealers or salespersons of securities or this kind of product need to follow the rules and regulations to prevent older people from buying investments that are not right for them or which might be onerous for them to maintain and deal with. It is believed that DEFENDANTS were negligent or intentional in not having such rules and regulations or not monitoring their sales force if they did or in preying upon these elderly gentlemen.

430.    DEFENDANTS also knew each sale was not suitable for JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA's based upon their age, financial sophistication, finances, and needs. DEFENDANTS persisted to continue to sell to older persons before and after the abuse DEFENDANTS continuing to extort money from JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA. DEFENDANTS, by billing them for the above-mentioned premiums, are a continuing violation that continues to this day. RELIANT is responsible for the acts of its employees because it had knowledge of the unfitness of the above individual DEFENDANTS and employed them with conscious disregard of the rights and safety of others. RELIANT authorized above individual DEFENDANTS wrongful acts and/or purposefully engaged in oppression, fraud, and/or malice.

431.    Despite being the only entity or persons in possession of the above facts, DEFENDANTS knowingly assisted and turned a blind eye and callous heart to the

outrageous pilfering of JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA's money. JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA's age should have been red flags to DEFENDANTS, but DEFENDANTS did not care and instead were happy to take advantage of them and condoned and contributed to these sales.

432. DEFENDANTS, including DOES 1-10, committed the above by knowingly assisting financial elder abuse.

433. DEFENDANTS' financial abuse has caused JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA harm including emotional stress and frustration because of the loss of all the money they spent on this product. This has deprived JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA or their beneficiaries or heirs of financial security.

434. DEFENDANTS knew or should have known that their conduct was likely harmful to JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA all in violation of the Laws particularly Welfare and Institutions Code. § 15600.30.

435. DEFENDANTS or DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFFS and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested.

436. Plaintiffs JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA seek all damages allowed by law including that damages be trebled, and attorney's fees allowed by statute and/or contract between the parties. Defendants' conduct was in reckless disregard for the rights and safety of Plaintiffs and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested under either Civil Code 3294 or 3345 or both.

### FOURTEENTH CAUSE OF ACTION
### AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

**(AGAINST ALL DEFENDANTS EXCEPT RELIANT and PFSI)**

437.   PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

438.   DEFENDANT RELIANT and PFSI did commit the above-mentioned breaches of fiduciary duty, as outlined in the General Allegations of this Complaint.

439.   The following other persons are considered aiders and abettors to the breach of fiduciary duty and commission of fraud and securities violations: GRADY, SANSOUCY, KLEINFELD; MURPHY; UNDERWOOD; and BORCHERT. They were in a supervisory or control position over RLS and PFSI. The other people who aided and abetted as salesmen were ROY; DAVENPORT; TUPLER; BAGBY; and BOVINO.

440.   DEFENDANTS knew that RELIANT and PFSI were engaged in reselling interests in policies (death benefits) by way of a syndication deceptively in violation of full disclosure as against regulatory authenticity. RELIANT and PFSI allowed sales to Plaintiffs without making sure true and honest information was imparted on Plaintiffs, and that the investments were in compliance with all laws and suitable for PLAINTIFF INVESTORS. This happened because there was a lack of adequate attempts to stop selling this product to everyone or anyone.

441.   DEFENDANTS named above gave substantial assistance or encouragement to RELIANT and PFSI. They continued selling this product to vulnerable people even after knowing there were complaints and issues of wrongdoing associated with the manner, method, integrity, honesty, and type of activity that RELIANT and PFSI were involved in. Instead of taking stock, the above-named DEFENDANTS continued to allow sales to go forward by contributing its efforts and activities to fraudulent endeavors that constituted breaches of fiduciary duties at all levels, including the duty of care and fidelity, as described in detail throughout this complaint and in the breach of

duty cause of action. The subsequent sales of the above-mentioned policies could not happen without these DEFENDANTS (GRADY, SANSOUCY, KLEINFELD; MURPHY; UNDERWOOD; and BORCHERT) participating and helping RELIANT and PFSI commit the sale atrocities that led to the defrauded investors because of the DEFENDANT'S breaches of fiduciary duties.

442.   The DEFENDANTS' conduct was a substantial factor in causing harm to PLAINTIFF INVESTORS.

443.   DEFENDANTS engaged in conduct that was in reckless disregard for the rights and safety of PLAINTIFF INVESTORS and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested.

444.   PLAINTIFFS seek all other damages allowed by law including as an alternative an accounting of all policies each Defendant associated with RLS.

### FIFTEENTH CAUSE OF ACTION
### AIDING AND ABETTING FRAUD AND SECURITIES VIOLATION
### (AGAINST JOEL KLEINFELD; PAUL ROY; DAVID UNDERWOOD; MARK SANSOUCY; ANDREW MURPHY, LARRY BAGBY; SCOTT GRADY; BRENT BORCHERT; LARRY TUPLER; VINCENT BOVINO; DOES 1-10)

445.   PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

446.   Defendant RELIANT, and Defendant RELIANT associated companies including the named individual DEFENDANTS committed fraud and intentional misrepresentation as set forth in the seventh cause of action, "FRAUD," of this complaint and the same activity constituted violation of California Security Laws (Corporate Code § 25401, alleged in the first cause of action). This includes DEFENDANTS KLEINFELD; ROY; UNDERWOOD; SANSOUCY; MURPHY, BAGBY; GRADY; BORCHERT; TUPLER; BOVINO. These people were either

### SECOND AMENDED COMPLAINT

supervisors or salespersons. They participated in the violation set forth in the first and seventh cause of action.

447.   The above DEFENDANTS are responsible as aiders and abettors because they:

a.   knew that RELIANT and PFSI and the other named individual DEFENDANTS were engaged in the reselling through syndicating fractional interest to investors of policies of insurance and knew that the alleged deception was continuing to be employed by RELIANT and PFSI and they allowed deception to continue to happen without adequate attempts to stop it.

b.   gave substantial assistance or encouragement to RELIANT and PFSI, as they continued selling this product to unsophisticated and vulnerable people even after knowing there were complaints and issues of wrongdoing associated with the manner, method, integrity, honesty, and type of activity that RELIANT and its people were engaged. Instead of taking stock, they continued to allow deception to be used at sales, presentations, and/or committed this deception themselves. The subsequent sales of the abovementioned policies could not happen without these DEFENDANTS, helping RELIANT and PFSI.

c.   That the above-mentioned individual DEFENDANTS' conduct was a substantial factor in causing harm to PLAINTIFFS.

448.   DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFFS and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested under either Civil Code 3294 or 3345 or both.

449.   Plaintiff Investors seek all other damages and remedies that Defendant companies are found liable under causes of action 1, 2, and 3.

### SIXTEENTH CAUSE OF ACTION
### CONSPIRACY TO COMMIT FRAUD
**(AGAINST JOEL KLEINFELD; PAUL ROY; DAVID UNDERWOOD; MARK SANSOUCY; ANDREW MURPHY, LARRY BAGBY; SCOTT GRADY; BRENT**

**BORCHERT; LARRY TUPLER; DOES 1-10)**

392.  PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

393.  This cause of action refers to the above-named DEFENDANTS listed in the title to this cause of action.

394.  DEFENDANTS listed above formed a combination of two or more individuals whose objective was to sell life shares even though it was against securities laws and based upon fraud.

395.  DEFENDANTS had a meeting of mind on the object to be accomplished and the means to which the parties would accomplish it.

396.  DEFENDANTS each helped RELIANT and PFSI engage in fraud.

397.  The agreement to help RELIANT and PFSI commit fraud and deceit was something the above Defendants agreed to do either orally, sometimes confirmed in writing, or implied by written material or their conduct.

398.  Each Defendant named above was aware of RELIANT and PFSI's plans and conduct to commit fraud and deceit. They received calls and letters from frantic investors overs the years yet still went ahead and employed more of the same deceit and misrepresentations.

399.  DEFENDANTS agreed with RELIANT and PFSI and intended the wrongful acts be committed. The above conspiracy can be inferred from circumstances including the nature of the acts done, the relationship between the parties, and the interest of the alleged conspirators.

400.  PLAINTIFFS need not prove that DEFENDANTS personally committed a wrongful act or that he or she knew all the details of the agreement or the identities of the participants. In this case, the DEFENDANTS did more than just become aware of what was going on. By agreeing to help RELIANT and PFSI commit fraud and deceit, these

Defendants engaged in wrongful acts constituting fraud and deceit. Further, Defendants supported it, which is not normally a required element of a conspiracy.

401.   Defendants' conduct was in reckless disregard for the rights and safety of Plaintiffs and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested under either Civil Code 3294 or 3345 or both.

**SEVENTEENTH CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT**
**(AGAINST DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, PRINCIPLE FINANCIAL SERVICES, INC.; RLS FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; LARRY BAGBY; BRENT BORCHERT; ANDREW MURPHY, MARK SANSOUCY; LARRY TUPLER; JOEL KLEINFELD; VINCENT BOVINO)**

402.  Plaintiff Investors incorporate by reference all paragraphs in this Complaint as though fully set forth herein.

403. This cause of action relates to the DEFENDANTS listed in the title of this Cause of Action.

404. By reason of the letter, attached as Exhibit 121, DEFENDANTS had a chance, pursuant to California Civil Code § 1770, to provide corrective action and/or remedies to pursuant to the Consumer Remedies Act. DEFENDANTS have not provided any corrective action. As a result of DEFENDANTS' inaction, Plaintiff Investors are entitled to the remedies set forth in California Civil Code §1780. PLAINTIFF INVESTORS therefore seeks all damages allowed by law.

405. DEFENDANTS RELIANT LIFE SHARES, RELIANT CAPITAL, and PFSI and RLS FINANCIAL SERVICES are names that DEFENDANTS use that violate Civil Code section 1770 et. seq., which makes it illegal to pass oneself off as another or someone they are not. In their radio commercials, RELIANT is referred to as RELIANT CAPITAL. This is particularly deceptive because RELIANT CAPITAL is a completely different unrelated company with a substantial net worth. It is alleged RELIANT purposefully passed themselves off to the public in their radio commercials in a

confusing and deceptive manner as RELIANT CAPITAL. This violates Civil Code § 1770(a)(1) thru (3), (5), (7), (13), (14), (19) and (26). It is deceptive to use the name RELIANT CAPITAL in radio commercials, when in fact RELIANT CAPITAL has no relation whatsoever to the RELIANT herein being sued. If a potential investor looks up RELIANT CAPITAL, they may mix it up with RELIANT as if the two companies are associated with each other.

406. Civil Code section 1770 (a)(19) prevents inserting an unconscionable provision in the contract. Many unconscionable provisions are inserted in the contracts between RELIANT/ PFSI and Plaintiff Investors, particularly in the purchase agreement, which details are covered in earlier provisions of this complaint and incorporated by reference as though fully set forth hereat.

407. The use of Warren Buffett as a "promoter" in the RELIANT/ PFSI website video and other marketing materials, as described in detail in previous paragraphs, is in violation of Civil Code section 1770(a)(5).

408. Scrubbing and manipulating bad reviews violates Civil Code section (a)(7) because using or allowing only good reviews to create the impression the investment has attributes it does not have creates a false impression and deprives customers of the right to know the good and bad experiences of other customers. This is a material omission.

409. By reason of the above-mentioned facts and all facts set forth in this compliant, activities of Defendants constitute a number of violations of the California Consumers Legal Remedies Act, particularly Civil Code 1770 et seq. and 1782 et seq.

410. Defendants RELIANT should not be able to get away with all the above deception when legitimate businesses are disadvantaged as a result of the above-described deception.

411. Further deception that violates Civil Code § 1770(a) is the way RELIANT claims to have obtained the insurance policies. RELIANT claims that the insured are persons with insurance who want to sell their policy for one reason or another. Upon information and belief, some of these insureds were solicited to purchase insurance, and paid money

119

**SECOND AMENDED COMPLAINT**

just to buy the insurance policy. Such insureds were never in the category of no longer needing their existing insurance policy, as there was not a prior existing policy. For these insured, the product is not what it was represent to Plaintiffs and potential investors and violates various provisions of the Consumer Remedies Act, particularly Civil Code § 1770(a) (2) (7).

412.RELIANT also violated Civil Code § 1770(a)(26) because they advertised and then sold the above-mentioned products to Plaintiff Investors through radio advertising and general solicitation. Securities laws and Corporate Code §§ 25110 and 25102 prohibit radio advertising and general solicitation that is not in compliance with the securities laws that could be considered misleading to the public.

413.PLAINTIFF INVESTORS relied on RELIANT and its personnel as being a reputable organization, it was not. The failure to fully disclose their reputational background was a purposeful deception by DEFENDANTS who made it seem that they were in the business of protecting and servicing investors, and they were transparent, open, candid, and accessible, when they were actually more in it for themselves and their profits over investors. This is false. Once a purchaser buys the product, it is virtually impossible to get a hold of anyone at RELIANT to get answers. Unfortunately, the DEFENDANTS were unable to provide basic information sufficient to allow Plaintiff Investors to justify paying premiums. This was due to the DEFENDANTS' deceit, followed by their incompetent performance causing the Plaintiff Investors to not feel comfortable paying premiums and thus risking the loss of the investment.

414.Plaintiffs relied on the investment the way they were led it was and would not have invested had they known the truth.

415. PLAINTIFF INVESTORS seek all damages allowed under Civil Code Section 1780, et seq., including actual and punitive damages and other reliefs the Court finds applicable, including attorney's fees.

416.DEFENDANTS' conduct was in reckless disregard for the rights and safety of and constitutes oppression, fraud, and malice such that punitive damages are appropriate,

and hereby requested under either Civil Code 3294 or 3345 or both.

## EIGHTEENTH CAUSE OF ACTION:
## CONSTRUCTIVE FRAUD
### (AGAINST RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; ANDREW MURPHY; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY; LARRY TUPLER; JOEL KLEINFELD; DOES 1-10

417. Plaintiff Investors incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

418. This cause of action relates to the DEFENDANTS listed in the title of this Cause of Action and incorporates previous statements and omissions outlined earlier in this complaint.

419. DEFENDANTS were fiduciaries who were supposed to be acting for the benefit of Plaintiff Investors. DEFENDANTS in this cause of action were fiduciaries as either the operators of a pending investment for the benefit of investors or they were fiduciaries as sellers of securities, which imposes fiduciary duties on sellers of all securities. They portrayed themselves as reputable when they were not.

420. The DEFENDANTS were also fiduciaries as the promoters, salesperson who were marketing, selling, and operating these security investment products to Plaintiff Investors.

421. DEFENDANTS engaged in and allowed concealment of material facts and intentional misrepresentations of disclosed facts covered in the general allegations and previous causes of action incorporated by reference as though fully set forth hereat. This includes the deceitful lack of disclosure regarding premium risk. DEFENDANTS failed to do a suitability analysis to assess Plaintiff Investors' risk tolerance. DEFENDANTS

misrepresented how the Life Settlement Investments previously performed or how they were projected to perform. DEFENDANTS misrepresented that investors have the right to a refund at any time. DEFENDANTS have not honored this, but instead attached conditions of having to resell the Life Settlement Investments to other buyers. This is not properly disclosed on their website. These misrepresentations and omission of material facts constitute constructive fraud as defined in Civil Code § 1573 and actionable even if actual fraud is not deemed present.

422. There were many concealments including not disclosing the real and true relationship of all the DEFENDANT parties and other entities working on the Life Settlement Investments, and how they are interrelated.

423. If the inner working including past history and insider conflicts of the investment was described, Plaintiff Investors would have never invested in these investments. It is believed that this concealment, and/or falsities and the other things referenced in the earlier paragraphs and in this cause of action were all done on purpose, and willfully.

424. DEFENDANTS were deceptive about Plaintiff Investors being suitable for these investments when they knew that this investment was not in the best interest of Plaintiff Investors, especially those Plaintiff Investors who used their retirement funds, or who were living on social security only, or who were allowed to invest more than 10% of their assets in these life settlement investments. That fact that Defendants knew this investment was not in the best interest of Plaintiff Investors means they are in violation of the laws, securities, rules, and regulations governing their product, in addition to their fiduciary obligations.

425. RELIANT and its controllers, KLEINFELD, GRADY, MURPHY and SANSOUCY, went to great lengths and continue to go to great lengths by hiring a reputational improvement company to scrub information about RELIANT and investors' negative reviews from the internet. They also manipulate or intimidate investors to change their mind about writing negative reviews. Anything deemed negative for sales is scrubbed from the internet by RELIANT/ PFSI. This is contrary to what is required,

which is full balanced disclosure where the investors have access to all the facts. This is an anathema to what should be allowed and is an indicator of a purposeful intent by RELIANT/ PFSI and its associated persons and entities to deceive and manipulate the public about this investment by controlling the information available to potential investors. Therefore, information available to Plaintiff Investors prior to investing was mischaracterized and not fully disclosed.

426. Plaintiff Investors relied upon what was told to them. Their reliance caused them to purchase these life settlement investments. Plaintiff Investors were not suitable candidates for these investments, nor did they have enough truthful information disclosed to make an informed decision whether this was a suitable investment for their portfolio. Had Plaintiff Investors known the truth, they would not have invested.

427. Plaintiff Investors were harmed for all the reasons and in all the ways stated above in other causes of action. The above was committed by Defendants to gain an advantage over Plaintiffs.

428. Defendant's actions were a substantial factor in causing Plaintiff Investors' present harm including the loss of these investments.

429. Plaintiff Investors justifiably and reasonably relied on the above to their detriment.

430. Plaintiff Investors were substantially harmed including from not only the loss of their investment but the suffering, pain, and mental anguish that followed the loss.

431. Defendants' conduct was in reckless disregard for the rights and safety of Plaintiff Investors and constitutes oppression, fraud, and malice and justify punitive damages under either Civil Code 3294 or 3345 or both.

432. Plaintiff Investors seek all damages available by law.

### NINETEENTH CAUSE OF ACTION
### VIOLATION OF CORPORATE §25504.1
### (AGAINST Defendants RELIANT LIFE SHARES LLC; PRINCIPLE FINANCIAL SERVICES, INC; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; ANDREW MURPHY; LARRY

123

**BAGBY; BRENT BORCHERT; LARRY TUPLER; JOEL KLEINFIELD; VINCENT BOVINO)**

433. Plaintiff Investors incorporate by reference all paragraphs in this Complaint as though fully set forth herein.

434. Plaintiff Investors are informed and believe and thereon alleges that RELIANT LIFE SHARES, PFSI, MURPHY, GRADY, UNDERWOOD; DAVENPORT; BAGBY; BORCHERT; TUPLER; ROY, BOVINO, KLEINFELD, and SANSOUCY materially assisted in the violations of California Corporate Code §§ 25401 and 25130, alleged herein with the intent of deceiving and defrauding plaintiff's and otherwise meet the requirements set forth in California Corporate Code § 25504.1.

435. As a result of the above, RELIANT LIFE SHARES, PFSI, MURPHY, GRADY, UNDERWOOD; SHAWN DAVENPORT; BAGBY; BORCHERT; TUPLER; ROY, BOVINO, KLEINFELD, and SANSOUCY are jointly and severally liable, pursuant to California corporations code § 25504.1, for the violations of California corporate code §§ 25401 and 25501 which are alleged herein.

436. By reason of the above, Plaintiffs are entitled to rescission and/or damages, against these Defendants for violations of California Corp. Code § 25401 and § 25501.

437. Defendants' conduct was in reckless disregard for the rights and safety of Plaintiffs and constitutes oppression, fraud, and malice such that punitive damages are appropriate, and hereby requested under either Civil Code 3294 or 3345 or both.

438. Plaintiffs seek all other damages allowed by law for the above-described wrongdoing including costs of suit, investigation, and attorneys' fees.

**TWENTIETH CAUSE OF ACTION**
**VIOLATION OF CORPORATE CODE § 25504**
**(AGAINST DEFENDANTS RELIANT LIFE SHARES LLC; PRINCIPLE FINANCIAL SERVICES, INC; SCOTT GRADY; DAVID UNDERWOOD; ANDREW MURPHY; LARRY BAGBY; BRENT BORCHERT; LARRY TUPLER; JOEL KLEINFIELD; SEAN MICHAELS; DANIEL COOPER)**

**SECOND AMENDED COMPLAINT**

439. Plaintiff Investors incorporate by reference all paragraphs in this Complaint as though fully set forth herein.

440. PLAINTIFFS are informed and therefore believe and thereon alleges that, MURPHY, GRADY, MICHAELS, COOPER, UNDERWOOD, BORCHERT, KLEINFELD, and SANSOUCY, qualify under Corporate Code §25504 as being either controllers, partners, principals, or executive officers or directors (or providing similar functions) of RELIANT LIFE SHARES, or PFSI are liable under Corporate Code §25504. Every broker dealer, or agent who materially aids in the act or transaction constituting the violation are also liable under Corporate Code §25504. If any of the above qualifications are applicable to any of the above-named persons, then said persons are jointly and severally liable for the violators actions and misconduct they caused that contributed to Corporate Code § Corporate Code §§ 25401 and 25501.

441. COOPER has been an owner, director, or partner of Reliant. See *Reliant Life Shares, LLC v. Cooper, supra.* "There was also substantial evidence, indeed admissions, that Michaels and  Grady created shell companies …as conduits through which they could funnel money from Reliant to other entities …for their own benefit. These shell companies were part of the fraud determined by the jury."  MICHAELS used the LLC's "as an extension of himself by disregarding corporate formalities, comingling money, and transferring assets without consideration, so much so that Reliant and the Michaels Entities are alter egos of Michaels." See *Reliant Life Shares, LLC v. Cooper, supra.*  This causes the corporate entity to fail and puts all the owners as partners liable under this provision assuming RELIANT and PFSI are liable.

442. MURPHY and BORCHERT are executive officers and are liable as such. They are also liable as employees who had knowledge and materially aided in the act or transactions constituting the buyout violation. GRADY and KLEINFELD are owners and partners or directors and are therefore liable.

443. By reason of the above, Plaintiffs are entitled to rescission and/or damages,

against these Defendants for violations of California Corp. Code § 25504.

444. Defendants' conduct was in reckless disregard for the rights and safety of Plaintiffs and constitutes oppression, fraud, and malice such that punitive damages are appropriate, and hereby requested under either Civil Code §§3294 or 3345 or both.

445. Plaintiffs seek all other damages allowed by law for the above-described wrongdoing including costs of suit, investigation, and attorneys' fees.

### TWENTY FIRST CAUSE OF ACTION
### VIOLATION OF CORPORATE CODE §25403
**(Against Defendants SCOTT GRADY; ANDREW MURPHY; BRENT BORCHERT; JOEL KLEINFELD; MARK SANSOUCY)**

446. Plaintiff Investors incorporate by reference all paragraphs in this Complaint as though fully set forth herein.

447. PLAINTIFFS are informed and therefore believe and thereon alleges that, RLS Financial Services, Inc. MURPHY, GRADY, BORCHERT, KLEINFELD, and SANSOUCY have engaged in conduct that make them liable under § 25403 for aiding and abetting violations performed by RELIANT and PFSI. MURPHY, GRADY, BORCHERT, KLEINFELD, and SANSOUCY participated with the violators, or committed or continued the violations that RELIANT and PFSI perpetuated.

448. GRADY had knowledge of the wrongdoing, as he was in the office receiving phone calls from disgruntled investors, yet he did not take corrective action. GRADY participated in dinner seminars with ROY and others and committed violations and induced the sales staff to make the same false statements that constitute fraud and breach of fiduciary duty. Kleinfeld had knowledge and supported the salesforces continuing violations. All the other named persons above are using Reliant Life Shares, LLC and/or PFSI to commit or continue violations as described in detail earlier in the complaint. PFSI hides under Reliant and lets Reliant take the limelight. If any of the above factors are applicable to any of the above-named persons, it is alleged they are jointly and severally liable for the violators actions and misconduct.

126

449.  By reason of the above, Plaintiffs are entitled to rescission and/or damages, against these Defendants for violations of California Corp. Code § 25403.

450.Defendants' conduct was in reckless disregard for the rights and safety of Plaintiffs and constitutes oppression, fraud, and malice such that punitive damages are appropriate, and hereby requested under either Civil Code §§3294 or 3345 or both.

451.  Plaintiffs seek all other damages allowed by law for the above-described wrongdoing including costs of suit, investigation, and attorneys' fees.

### TWENTY SECOND CAUSE OF ACTION
### TO DISREGARD THE CORPORATE (LLC) ENTITY AND IMPOSE PERSONAL LIABILITY ON SHAREHOLDERS AS PARTNERS AND/OR IMPOSE A CONSTRUCTIVE TRUST BECAUSE GRADY AND MICHAELS PILFERED RELIANT FOR PERSONAL USE AND BECAUSE RELIANT AND/OR PFSI/PRINCIPLE BECAME INSTRUMENTS OF FRAUD AGAINST THE INVESTORS
**(Against Defendants SCOTT GRADY; SEAN MICHAELS; DANIEL COOPER; DOES 1-10)**

452. PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegations in any previous cause of action.

453. For this cause of action when reference to corporation or corporate formalities is used, it is also interchangeable when referring to corporations and or limited liability companies' formalities or lack thereof (referred to as LLCs companies or corporations).

454. This cause of action refers to the above-named DEFENDANTS listed in the title to this cause of action, namely GRADY, MICHAELS, and COOPER.

455. DEFENDANTS, who were the operators or owners of Reliant and/or PFSI listed above, had a fiduciary duty to observe corporate formalities and to be sufficiently capitalized to carry out basic functions and to perform on their promises to investors. For example, each Plaintiff was promised that they would be provided top quality services by Reliant or PFSI. The promises were continually made at each sales session between

Plaintiffs and Reliant's or PFSI/ PFSI's representatives orally and in writing as further exemplified in Exhibit 200 incorporated by reference as fully set forth hereat, and which reads in relevant part as follows:

> "Reliant Life Shares places the client first [including providing] complete asset transparency for informed investment decisions.
>
> Reliant Life Shares focuses on providing top-quality service for investors. Reliant provides ongoing reports that include account details and transactions, relevant policy information, health status updates, policy premium status updates and comprehensive portfolio summaries."

456. Unfortunately, due to primarily Grady and Michaels using Reliant and its aforementioned corporate entities as their personal entities, they ceased to follow the necessary corporate formalities and instead utilized Reliant as a fraudulent operation akin to a scam. This has resulted in Defendants Reliant and PFSI being depleted of sufficient funds to provide the promised top-quality services and ongoing support, as detailed above. The depletion of funds and disregard for corporate formalities were initially committed by Grady and Michaels, See *Reliant Life Shares, LLC v. Cooper, supra*., which rulings are binding on Defendants and supported on appeal, and can be proven at trial if necessary. The facts, as adopted by the lower court and taken from the aforementioned appeal, are as follows:

> a. …Michaels utilized Reliant and his entities PB Consulting [1], LLC, PB Consulting 2, LLC, the 2007 Irrevocable Octopus Trust, the 2007 MMA Trust, the RLM Trust, and 18LS [Holdings], LLC (the 'Michaels Entities') as an extension of himself by disregarding corporate formalities, comingling money, and transferring assets without consideration, so much so that Reliant and the Michaels Entities are alter egos of Michaels.
>
> b. … Grady utilized Reliant and his entities LaForce Holdings, LLC, Tristan Capital, Inc., the RLS Trust, and the SLG Trust (the 'Grady Entities') as an extension of himself, by disregarding corporate formalities, comingling

**SECOND AMENDED COMPLAINT**

money, and transferring assets without consideration; so much so that Reliant and the Grady Entities are alter egos of Grady.

c. They both did this by "Michaels [and Grady] exert[ing] such a unity of ownership over Reliant by dictating when payments would be made and how they would be classified without any methodology for doing so, such that there was essentially no separation between Michaels [Grady] and Reliant. Michaels [Grady] also made decisions regarding Reliant without input from Cooper, despite the fact that Cooper was and is a one-third member of Reliant. Payments to Michaels [and Grady] were casually made without the use of a payroll company. Further, Michaels [and Grady] artificially manipulated Reliant's books and records by (among other things) reclassifying historical data to negatively impact the perceived profitability of Reliant, to the detriment of Cooper. Additionally, Michaels [and Grady] authorized transfers from Reliant to [themselves and their Entities] without regard for whether Reliant was properly capitalized to conduct business on an ongoing basis."

d. ….Money from Reliant was used to invest in and pay the premiums on the Friwat Policy." The court further found that 18LS Holdings, "an entity owned by Michaels, Grady, and Luke Walker, own[ed] forfeited and unsold portions (the 'Tails') of life insurance policies sold by Reliant"; and 18LS Holdings LLC "paid $1,000 for the entirety of Tails it received."  Tails in 18LS Holding LLC were valued at $880,22598.

457.   The following is taken directly from the above-mentioned appeal, *Reliant Life Shares, LLC v. Cooper*, No. B305544, 2023 Cal. App. LEXIS 260, at \*3 (Ct. App. Apr. 4, 2023):

> The trial court further found Michaels and Grady used the LLC (Reliant) and certain trusts and other entities they controlled as extensions of themselves, and concluded the LLC (Reliant) and the other entities and trusts were alter egos of Michaels and Grady. (The court later observed Michaels and Grady "used the corporate coffers of Reliant as their own personal piggy banks.")

129

**SECOND AMENDED COMPLAINT**

In addition, the above court affirmed the trial court saying:
The jury heard evidence of millions of dollars Michaels and Grady funneled
from Reliant to themselves and the entities they owned; evidence of Grady's
extravagant lifestyle, with purchases of luxury cars, expensive jewelry, renting
a mansion for $20,000 a month, and the like; evidence of Reliant's
multimillion dollar net income for 2017 and 2018; and evidence of Michaels
"withholding of essential accounting records of Reliant to reduce any chance
of determining Michaels' total income and liabilities."

458. Kleinfeld used his ownership in Reliant (which he shared with Grady) to
buttress Grady's irresponsible conduct. Kleinfeld facilitated  or allowed Grady and
Michaels to use  Reliant as a "personal piggy bank" and to allow Grady and Michaels to
continue to "disregard the corporate formalities." Kleinfeld facilitated their irresponsible
use of corporate assets in a way described above by the appellate Court.

459. It is alleged that the same factors that went into causing Grady, Kleinfeld and
Michaels to engage in the above conduct was the same motivation behind the formation
of Principle Financial Services ("PFSI"), which itself it is alleged (upon information and
belief) is owned and controlled by Grady and Michaels, and is just an extension of
RELIANT under a different name using the same RELIANT copyrighted and
trademarked system, the same staff, forms and modus operandi and with Reliant's
consent. Even standing alone, PFSI is liable for its conduct as a stand-alone entity to the
extent it carried out a sale to the BAEZA's and their companies,  GAMAN and YEYO.
PFSI was created to do Reliant's new business out of a new entity in case Grady lost the
appeal in the *Reliant Life Shares, LLC v. Cooper, supra* case and or to provide continuity
to conduct business  if needed in another entity because of the insider strife among the
owners.  Again, see *Reliant Life Shares, LLC v. Cooper, supra*  where *"*The jury heard
evidence Michaels formed a new company "to have an empty corporate shell that would
be ready to go to replace Reliant in the event . . . we couldn't use it as a business
anymore."

450.  Under the circumstances Grady and Michaels caused Reliant to be unable to
operate properly, and not be able to complete its function of providing top quality

**SECOND AMENDED COMPLAINT**

services, transparency, and updated information. Grady (and Michaels) became more concerned about generating personal wealth for themselves that minding the store and keeping its commits and the promises made to the investors for long-term top-quality services, transparency and assist in the payment of proceeds at the end of the investment. In addition, upon information and belief, this caused Reliant to divert the better policies for itself and its owners like the Friwat policy rather than use said policy for the syndication for the benefit of the general investors, like plaintiffs who relied upon Reliant to do what they claimed they would do. The good policies like the Friwat were kept for the insiders and it, in fact, returned $5,428,666.65 to Michaels alone upon Friwat's death. That policy was funded with Reliant money for the owners' benefit, namely for Grady and Michaels and their companies. They created companies to transfer Reliant assets to themselves secretly. Again, rank and file investors like Plaintiffs were only offered the less desirable policies. In effect there was and is in effect a conflict of interest between the owners of Reliant and now its successors, and Plaintiffs or any investor, because the best policies were siphoned off and become a perk for the owners, namely Grady and Michaels. None of this is disclosed or was disclosed to the investors and is a violation of securities law and the duty to fully disclose all material facts.

460. Defendants wrongfully took corporate money that was needed, and is still needed, to fulfill the promises that Reliant made to provide the necessary services when the insured died, in order to help the Plaintiffs obtain their money. In fact, Reliant's salespersons and its literature made oral promises during sales presentations and in its written materials. For example, in Reliant's materials, it specifically states, "At maturity, Reliant Life Shares works with the trustee to file a formal death claim with the insurance carrier." If Grady and Michaels squandered the operations of Reliant, as they appear to have done, they will not be able to provide top-quality services or work with the trustee to file a formal death claim with the insurance carrier, thus preventing the Plaintiffs from obtaining their money.

**SECOND AMENDED COMPLAINT**

461. Plaintiffs bought into Reliant's program and invested in their set of life shares based on oral and/or written representations made by each salesman, assuring Plaintiffs that a purchase in Reliant's or PFSI life settlement product would be safe and prudent. Andrew Murphy, signing as CEO, even stated to investors in a general newsletter dated January 1, 2022 (Exhibit 202), that each of them "could sleep at night knowing your money is working for you and protected against market risks." However, this has been the opposite for Plaintiffs, despite consistent assurances made to them and other investors. Plaintiffs were also told during all sales presentations that Reliant had invested the necessary capital to acquire the inventory, and offered Qualified Investors an excellent product that passed a "rigorous" underwriting process. This information is paraphrased from Exhibit 200, pages 3, 6, and 7. During oral presentations, each Plaintiff was also told that the Principals of Reliant had extensive or broad experience, as stated in a Reliant Brochure at Exhibit 200, page 12. Plaintiffs were led to believe that this experience would translate into products that would deliver the promised returns, which returns were all above 8% according to Exhibit 199, with some implying returns as high as 18% based on page 1 of Exhibit 200. Exhibit 200, page 8, also shows almost 10 examples with none lower than a 10% return. None of the Plaintiffs expected losses or having to endure ever-rising premiums to arise from this investment. They were not properly prepared for the sacrifices required to pay ever-increasing and often randomly assessed premiums on the policies, especially considering that many of the Plaintiffs live on lower or fixed retirement incomes.

462. Grady and Michaels knew that they were the owners or operators of an organization that was being mismanaged and used for personal greed, to the detriment of investors, and outside of any legal corporate formality. In fact, as a result of the affirmation on appeal of *Reliant Life Shares, LLC v. Cooper, supra* involving Grady, Michaels, and others, there is a possibility that Reliant will not be able to deliver what was promised and may not even be operational to provide top-quality services or assist in making claims for insurance proceeds upon death, as it now faces a multi-million-dollar

judgment. All the personal misconduct highlighted by the court of appeals above was also not reported, despite it being necessary for investors to know all aspects that might affect their investment, and it appears that it has been affecting this investment for a long time, since the underlying case of *Reliant Life Shares, LLC v. Cooper, supra* was filed in late 2015. All Plaintiffs have the same story - trying to contact Reliant, but no one answers or responds. If Plaintiffs happen to corner someone, their questions remain unanswered. This lack of top-quality service is one of the main reasons why Plaintiffs want out. They have no confidence that there will be a payout for them based on the poor service provided to date, and this has happened because Grady and Michaels have deprived the firm of resources to perform their job. All the above-mentioned transgressions and misuse of corporate assets, as described above, have put Plaintiffs' investments in jeopardy, as it is likely that Reliant will not be able to fulfill the promised functions.

463. It is alleged, upon information and belief, that PFSI is the successor of Reliant with Grady and Michaels having ownership interests,  and even if not on paper, it is an under the table, unwritten arrangement between themselves.

464. These are all breaches of fiduciary duties and violation of securities laws.

465. The above is also indicative of a unity of interest and ownership between Grady, Michaels and Reliant, and its successors on the other hand. The corporate entities should be pierced and the individuals found liable as partners as required by the leading cases including *Minnesota Mining & Manufacturing Co. v. Superior Court, supra*. Where the alter ego doctrine applies a corporation's or LLC's shareholders are treated as "partners" and are jointly and severally liable for his debts, that means even Cooper who was being ignored. Id. Even being ignored, Cooper remained a member and is therefore jointly and severally liable with Grady and Michaels, or whoever was in fact an LLC member of Reliant at any time during the period that these Plaintiff Investors invested, i.e. 2013-2020, see Exhibit B.  All causes of actions against RELIANT are hereby incorporated by reference as though fully set forth hereat.  If liability is found against

RELIANT on any of the causes of action against RELIANT, then COOPER, MICHAELS and GRADY are liable individually for the corporation if the corporate veil is disregarded.  In other words, COOPER, MICHAELS and GRADY  should be found personally responsible for RELIANT's liability.

466. It would be unfair not to hold the owners of RELIANT individually liable under the doctrine of alter ego for the acts of Reliant and PFSI for the reasons described above.

467. A request is also made to impose upon the above-mentioned individuals an accounting and for the placement of a constructive trust on the value of the assets that have been withdrawn from the company for personal use, such as using them as a personal piggy bank outside the formalities required of a corporation. This constitutes the "res" of the constructive trust. The "res" could also include the remaining proceeds of the Friwat policy or any similar policy held by anyone, which policy was paid for using Reliant funds. The Friwat policy is or was held in trust by the L.A. Superior Court. There may also be a bond on the appeal that is a "res" available for the constructive trust.

468. Plaintiffs have the right to a return of their money based on the aforementioned "res" or "reses".

469. As noted above, Defendants have wrongfully acquired the property referred to as any "res" noted above.

470.  DEFENDANTS, collectively, breached their fiduciary duty in association with each other as described above and are jointly and severally liable. For the aforementioned reasons, a constructive trust and an accounting are requested and warranted to determine the amount of the "res".

471. The allegations of untrue statements, concealment, and violations mentioned above are also incorporated by reference as though fully set forth herein.

472. Had PLAINTIFFS known all of the above, they would not have invested.

473. PLAINTIFFS have been harmed due to the reasons set forth in the General Allegations section of this complaint and subsequent allegations. PLAINTIFFS'

**SECOND AMENDED COMPLAINT**

investments are now illiquid, and Plaintiff Investors are forced to pay premiums or accept a distressed offer to sell or to risk losing their investment if they cannot pay premiums. Due to the above-described breach of fiduciary duty, DEFENDANTS have caused substantial harm to PLAINTIFF INVESTORS. Each new premium payment is considered a new investment that requires the same full disclosure, registration, and care which were not provided, resulting in the continuation of deceit and continued violations year after year, which are ongoing at this time.

474. PLAINTIFFS suffer from pain, suffering, and mental anguish for which reimbursement is sought.

475. DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFFS, and constitutes oppression, fraud, and malice, warranting punitive damages under Civil Code 3294 or 3345, or both.

476. PLAINTIFFS seek all other damages allowed by law for the aforementioned wrongdoing, including costs of suit and investigation.

477. PLAINTIFFS seek attorney fees as provided by the parties' contract and also by statute.

**TWENTY THIRD CAUSE OF ACTION**
**REQUEST FOR INJUNCTION AND EQUITABLE AND DECLARATORY**
**RELIEF**
**(AGAINST SCOTT GRADY, JOEL KLEINFELD; AND MARK SANSOUCY;**
**DOES 1-10)**

478. PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

479. It has already been alleged that Grady used the LLC (Reliant) and certain trusts and other entities he controlled as extensions of himself, and concluded that the LLC (Reliant) and the other entities and trusts were alter egos of Grady. (The court later observed that Grady "used the corporate coffers of Reliant as his own personal piggy

135

banks.") It is hereby realleged here.

480. It has been alleged above that Sansoucy has been an agent of Reliant by cooperating in starting a new company (PFSI) in the image of Reliant with a different name but using all the same systems, forms, staff, procedures, and processes, and with the blessings of Reliant and Grady. Therefore PFSI is the alter ego of Reliant. PFSI should be disregarded as an entity due to the alleged fraudulent intent when it was created, namely "to have an empty corporate shell that would be ready to go to replace Reliant in the event . . . we couldn't use it as a business anymore." *Reliant Life Shares, LLC v. Cooper, supra*   It is being used for a fraudulent purpose, among others, to be used as another company that Grady can jump to upon Reliant's potential failure in light of the longstanding internal conflict of its owners, (since 2015) and now the enforcement of a judgment by Cooper against Reliant. The court should declare Sansoucy, through PFSI, as taking over the expected soon-to-be-former Reliant using the name of PFSI going forward. Sansoucy as an agent of Grady and Reliant and must be enjoined as well and declared personally liable under the doctrine set forth in the case of *Minnesota Mining & Manufacturing Co. v. Superior Court, supra*.

481. During the litigation, to protect the status quo, the court should enjoin Reliant, PFSI, Grady, Sansoucy, Kleinfeld, from transferring out any monies not used in the regular course of business over to any of their companies, family, friends, including LaForce Holdings, LLC, Tristan Capital, Inc., the RLS Trust, and the SLG Trust (the "Grady Entities") as an extension of themselves.  They should be enjoined from disregarding corporate formalities, commingling money, and transferring assets without consideration; and treating Reliant or PFSI as their alter ego.

482. It is therefore requested that the court formulate a plan to do equity based upon the above which, in addition to an injunction, would involve declaratory relief making Grady, Sansoucy, and Kleinfeld personally liable to make things right. The court should also declare Sansoucy the alter ego of Reliant and PFSI, which he is. In addition, the court can order, using its equitable powers, the return of assets to Reliant and enjoin

**SECOND AMENDED COMPLAINT**

Principal/PFSI from operating as the alter ego of Reliant and Sansoucy operating as the alter ego of PFSI.

483. Plaintiffs seek all other relief available by law.

**TWENTY FOURTH CAUSE OF ACTION**
**VIOLATION OF CORP. CODE 25501.5 BY ACTING AS A BROKER-DEALER OR AGENT OR SAME WITHOUT REGISTRATION**
**(AGAINST RELIANT LIFE SHARES LLC aka RELIANT CAPITAL; PRINCIPLE FINANCIAL SERVICES, INC; SCOTT GRADY)**

484. PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

485. Defendants RELIANT LIFE SHARES LLC, PRINCIPAL FINANCIAL SERVICES, INC, and SCOTT GRADY were issuers of fractional interests in a life settlement pursuant to Corp Code §25010. As issuers, they can only sell securities if they are licensed as a broker-dealer. Neither RELIANT LIFE SHARES LLC, PRINCIPAL FINANCIAL SERVICES, INC, nor SCOTT GRADY are licensed or associated with anyone who is a licensed broker-dealer.

486. RELIANT LIFE SHARES LLC, PRINCIPAL FINANCIAL SERVICES, INC, and SCOTT GRADY operated a salesforce that sold the life share investment that Plaintiffs bought. They marketed their product as a broker-dealer using the salesforce as their agents or associates.

487. Neither RELIANT LIFE SHARES LLC, PRINCIPAL FINANCIAL SERVICES, INC, SCOTT GRADY, nor any of the agents that sold the products to Plaintiffs were licensed/registered as a broker-dealer under Section 15 of the Securities Exchange Act of 1933 or licensed as an agent or associate of a broker-dealer.

488. Neither RELIANT LIFE SHARES LLC, PRINCIPAL FINANCIAL SERVICES, INC, SCOTT GRADY, nor any of the salesforce were licensed/registered to act as a broker-dealer or agent of a broker-dealer. According to California law, at Corporate Code §25210, no broker-dealer shall effect any transaction in or induce or

137

**SECOND AMENDED COMPLAINT**

attempt to induce the purchase or sale of any security in the State unless the broker first applied for and secured from the commissioner a certificate then in effect authorizing the person to act in that capacity. The same is true at the federal level, and the same applies to the agents selling the life settlement, which is the subject of this suit. Sellers of securities must be securities licensed at the state or federal level.

489. Again, neither RELIANT LIFE SHARES LLC, PRINCIPAL FINANCIAL SERVICES, INC, SCOTT GRADY, nor anyone associated with Defendants or any of the salesforce had a license from the state of California required by Corp. Code 25200 et. seq. nor were RELIANT LIFE SHARES LLC, PRINCIPAL FINANCIAL SERVICES, INC, and/or SCOTT GRADY, or anyone else associated with the above registered under the SEC or FINRA.

490. The licensing requirements are intended to ensure that salespersons who sell securities are knowledgeable about the products they sell and knowledgeable  about the regulations that govern their sale. By requiring registration and ongoing compliance, regulators aim to protect investors from fraudulent or unethical practices.

491. What happened here is that unlicensed persons were not equipped to deal with a product that was not suitable for the class of persons Plaintiffs were. These unlicensed persons were not knowledgeable about what was necessary to protect the investors. As a result, improper and unsuitable sales transpired, which is the subject matter of this suit.

492. By reason of the above, Corporate Code 25501.5 applies to give the Plaintiff purchasers a right of statutory rescission. Therefore Defendants are liable for the remedies or damages set forth in Corporate Code 25501.5, which is the return of money Plaintiffs spent on the investments.

493. By reason of the above, the remedy is rescission of all monies paid and all remedies allowed by law, including attorney fees and costs.

494. Defendants' conduct was in reckless disregard for the rights and safety of Plaintiffs and constitutes oppression, fraud, and malice, such that punitive damages are appropriate and requested under either Civil Code 3294 or 3345, or both.

495. Plaintiffs seek all damages allowed by law.

### TWENTY FIFTH CAUSE OF ACTION
### VIOLATION OF SECTION 12(A)(1) OF THE 1933 SECURITIES
### (AGAINST RELIANT LIFE SHARES LLC aka RELIANT CAPITAL; PRINCIPLE FINANCIAL SERVICES, INC; SCOTT GRADY)

496. PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

497. By not registering the security, Defendants willfully violated Section 5 of the Securities Act (15 U.S. Code § 77(e) and 15 U.S. Code § 17), which states that "[unless] a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly, (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such securities or a medium of any perspective, or (2) to carry or cause to be carried through the mails for an interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for the delivery after sale." Defendants are also not entitled to the exemption claimed because they have not acted in good faith.  They have not complied with the necessary requirements to obtain such exemption, such as not engaging in general solicitation or not selling to unaccredited investors. Additionally, they are not in compliance with Corporate Code 25102 (q).

498.  By reason of the above Act, Plaintiffs are entitled to bring a civil action to rescind all transactions where registration is not perfected according to the above. Plaintiffs seek this remedy, as well as liability under Section 11. Plaintiffs hereby seek the available remedy, plus interest and damages, against Defendants. It is alleged that the individual Defendants are all issuers or controllers of the issuer and sold the security to Plaintiffs in violation of the law, and they are liable under Section 20 of the 1934 Securities Act (15 USC §78 t(a)).

**SECOND AMENDED COMPLAINT**

499. The remedy is rescission or disgorgement of all monies paid, which Plaintiffs seek, as well as all remedies allowed by law.

500. Defendants' conduct was in reckless disregard for the rights and safety of Plaintiffs and constitutes oppression, fraud, and malice, justifying punitive damages under either Civil Code 3294 or 3345 or both.

Wherefore, PLAINTIFFS pray for judgment against the DEFENDANTS as follows:

1. For general damages of no less than $5,000,000 or according to proof at trial;

2. For special damages according to proof at trial;

3. Damages for pain suffering and mental anguish;

4. Declaratory relief;

5. Rescission/return of all money plus pre-judgement interest;

6. Injunctive and equitable remedies;

7. Punitive damages as allowed by law;

8. For costs of suit incurred herein per judgment interest; and attorney fees as allowed by law;

9. For such other and further relief as this Court deems just and proper.

Dated: April 21, 2023                      MURRIN LAW FIRM

_____

J. Owen Murrin
Attorney for PLAINTIFF INVESTORS

**SECOND AMENDED COMPLAINT**

**SECOND AMENDED COMPLAINT**

**DECLARATION OF J. OWEN MURRIN PURSUANT TO CIVIL CODE §1780 (D):**

I, J. Owen Murrin, make the following declaration on behalf of Plaintiffs, particularly lead Plaintiff Ed Baeza, based upon my own knowledge, and believe the information set forth herein to be reliable and admissible and if called upon as a witness, I could and would testify competently thereto regarding the following:

1. At all times herein, all activities and contacts the subject of this matter occurred in California, and the class is California based.

2. The lead Plaintiff, Ed Baeza resided in Los Angeles County, in the city of Los Angeles when he bought his securities from the relevent Defendants. He therefore sustained all his losses in Los Angeles Country. He presently still lives in Los Angeles, Los Angeles, Country, California. A substantial number of other Plaintiffs in this action also reside or did business related to this matter in Los Angeles County, California.

3. The key Defendants reside in Los Angeles County where the corporate headquarters are.

4. Therefore, jurisdiction and venue is proper Los Angeles County. Civil Code § 1780 (d).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: April 21, 2023



_____

J. Owen Murrin

142

**SECOND AMENDED COMPLAINT**

**PROOF OF SERVICE**

UNITED STATES DISTRICT COURT , CENTRAL DISTRICT OF CALIFORNIA

*GWENDALYN DOUGLASS, as Trustee of RAYMOND E. DOUGLASS Revocable Trust v. RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC, et al.*

Case No.:  2:23-cv-00460-SB-AGR

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 7040 E. Los Santos Drive, Long Beach, CA 90815. On the date set forth below, I served a true and correct copy of the following document:

- **SECOND AMENDED COMPLAINT**

- **EXHIBITS AND EXHIBIT TABLE OF CONTENTS**

on the list of interested parties below:

| | |
|---|---|
| L. Rich Walton<br>rwalton@taxtriallawyers.com<br>Brian Kandel<br>bkandel@taxtriallawyers.com<br>Walton & Walton, LLP<br>4640 Admiralty Way, Fifth Floor<br>Marina del Rey, California 90292<br>ssalgado@taxtriallawyers.com<br>lwalton@taxtriallawyers.com<br>Christopher Stevens<br>cstevens@reliantlifeshares.com | Attorney for Defendants Reliant Life Shares, LLC; Scott Grady;  Bank of Utah, Trustee of the Reliant Life Shares Series Statutory Trust; Brent Borchert |
| Parag L. Amin, Esq.<br>parag@lawpla.com<br>Ronak Patel<br>Ronak.Patel@lawpla.com<br>Law Office of Parag L. Amin, P.C<br>5901 W Century Blvd, Ste 1518<br>Los Angeles, CA 90045-5437 | Attorney for Defendant Shawn Davenport |
| Peter Berlin<br>peter@labizlawyer.com<br>peter@berlinfirm.com<br>Law Office of Peter Berlin<br>18425 Burbank Blvd., Suite 719<br>Tarzana, CA 91356 | Attorney for Defendants Mark Sansoucy; RLS Financial Services; Principal Financial Services |
| David Beitcham Esq.<br>dbeitchman@bzlegal.com<br>Andre Boniadi<br>aboniadi@bzlegal.com<br>Beitchman & Zekian, PC<br>16130 Ventura Blvd #570<br>Encino, Ca. 91436<br>sdepelyan@bzlegal.com | Attorney for Vincent Bovino, Larry Tupler and Paul Roy |
| Maxim Vayenerov<br>Barnhill & Vaynerov LLP | Attorney for Joel K. Kleinfeld |

1

PROOF OF SERVICE

| | |
|---|---|
| 12100 Wilshire Blvd, Ste 800<br>Los Angeles, CA 90025-7140<br> vaynerov@bv-llp.com | |
| David Underwood<br>10153 1/2 Riverside Dr, #535<br> Toluca Lake, CA 91602 | DEFENDANT |
| RMS Trust<br>15260 Ventura Blvd., Suite 1200<br>Sherman Oaks, CA 91403 | DEFENDANT |
| Andrew Murphy<br>412 SW 6TH AVE<br>BOCA RATON, FL 33486-4623 | DEFENDANT |

☒ **By United States Mail** (CCP §§1013a, et seq.): I enclosed said document(s) in a sealed envelope or package to each addressee. I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, with postage fully prepaid.

☐ **By Overnight Delivery** (CCP §§1013, et seq.): I enclosed said document(s) in a sealed envelope or package to each addressee. I placed the envelope for express delivery, following our ordinary business practices. I am readily familiar with the firm's practice for collecting and processing correspondence for express delivery. On the same day that correspondence is placed for express delivery, it is deposited in the ordinary course of business with the express service carrier, with fees fully prepaid.

☐ **By Messenger Service:** I enclosed said document(s) in a sealed envelope or package to each addressee. I provided them to a professional messenger service (Signal Attorney Service) for service. An original proof of service by messenger will be filed pursuant to CRC, Rule 3.1300(c).

☒ **Electronic Mail** (CCP § 1010.6(d), CRC Rule 2.251(b)(1)(B) & (c)(3), Rule 2.253(b)(1)(B), and mandatory efiling for attorneys by local court order is your consent requiring you to accept electronic service from us.) I served via email to the electronic address shown above. Our electronic service address is:  jmurrin@murrinlawfirm.com

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 21, 2023 at Long Beach, California.

*Cameron R. Kleinberger*
Cameron R. Kleinberger